NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
BOSTON
HOUSTON
DALLAS
FORT WORTH
AUSTIN



*FIRM and AFFILIATE OFFICES*

HANOI
HO CHI MINH CITY
SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NORTH JERSEY
LAS VEGAS
SOUTH JERSEY
SYDNEY
MYANMAR

ALLIANCES IN MEXICO

ERIC R. BRESLIN
PARTNER
DIRECT DIAL: +1 973 424 2063
PERSONAL FAX: +1 973 556 1552
*E-MAIL:* ERBreslin@duanemorris.com

*www.duanemorris.com*

September 21, 2025

**VIA ECF**

Honorable George B. Daniels
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: United States v. Bond, 1:24-cr-00494-GBD: Opposition to Government <u>Application for Subpoena and Motion to Quash</u>**

Dear Judge Daniels

We are the attorneys for Michelle Bond.. We write in response to the government's untimely letter and application filed Friday, September 19, 2025 at 5:44 p.m. By way of its letter, the government requests: (1) the issuance of a Rule 17(c) subpoena to Mayer Brown LLP, Ms. Bond's former attorneys, to produce privileged documents directly *to the government* by 10:00 a.m. this Wednesday, (2) apparently for an order barring Ms. Bond from testifying, and (3) advising that it intends to cross examine Ms. Bond on the subject of the underlying criminal case. We further note that the government sent us a subpoena at 5:20 p.m. on Friday commanding the testimony of Ms. Bond and demanding the production of documents at the hearing on Thursday. (Exhibit A). The government did not seek a meet and confer prior to issuing either the subpoena or the application to the Court.

The defense thus writes to request the following relief from the Court: (1) that the Court deny the government's request for the issuance of a subpoena to Mayer Brown, (2) quash the subpoena issued to Ms. Bond, and (3) deny the government's application to bar Ms. Bond from testifying. Ms. Bond will address the government's application to examine Ms. Bond on the underlying indictment under separate cover.





If the Court is inclined to grant the government's demand for documents, Ms. Bond respectfully submits that the hearing should be adjourned at least two weeks, as the document demands cannot be fully answered in the time remaining before the hearing.

Further, should the Court grant the government's demand for documents, the defense respectfully requests that the government, in turn, be ordered to produce discovery in response to Ms. Bond's *timely* demand, first served on August 11, 2025. Finally, the defense requests an order compelling the testimony of former AUSA Danielle Sassoon, who the government has refused to produce absent onerous conditions.

**A. The government's request for a subpoena to Mayer Brown invades Ms. Bond's attorney-client privilege and should be denied**

The government's proposed subpoena requires Mayer Brown to produce an unknown number of privileged documents *directly to the government's case team*. This is improper and invades Ms. Bond's attorney client privilege. The privilege belongs to Ms. Bond and only she can waive it. *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987); *c.f., In re Hyde*, 235 B.R. 539, 542-43 (S.D.N.Y. 1999) (reversing denial of motion to quash subpoena to attorneys because the act of providing documents to attorneys may itself be protected by the Fifth Amendment). As established at our hearing in July, Ms. Bond has waived privilege over a certain narrow class of documents, but Mayer Brown lacks both the authority and the context to select which communications fall within the scope of the waiver. *See In re Grand Jury Subpoena Duces Tecum*, 391 F. Supp. 1029, 1034 (S.D.N.Y. 1975) (considering multiple, potentially conflicting privileges, and observing that "perhaps only [the defendant] could precisely define and delineate the differentiation" between the privileges).

The proper, and most efficient, procedure would be to demand documents of Ms. Bond. Ms. Bond then can collect documents from her prior attorneys, redact them as necessary, and provide a privilege waiver with any disputes being submitted to the Court for *in camera* inspection. The alternative is to provide all potentially privileged documents to the Court for *in camera* inspection, but we submit that is neither a reasonable nor efficient procedure under these facts. As described more fully below, Ms. Bond has no objection to the government's document demands in principle, but the government's late demand is both onerous and unduly burdensome.

**B. The government's untimely subpoena to Ms. Bond should be quashed.**

The government's subpoena compelling Ms. Bond's attendance as a witness at the hearing on September 25th should be quashed. The Fifth Amendment gives Ms. Bond the absolute right to remain silent. The government cannot compel her testimony in criminal proceedings against her.

As to the government's document demands, the government cites to no authority or rule that permits it to issue a subpoena duces tecum to Ms. Bond. Nevertheless, Ms. Bond does not





object to producing documents and fully expected she would do so in response to a timely document demand by the government. That document demand arrived only at the very last minute. As such, last week, before the government's subpoena arrived, the defense collected and produced all the documents it believed to be material to the issue at hand and has furnished them to the United States.[1] To date, Mayer Brown has not produced any documents in response to Ms. Bond's request, stating that it would take such requests "under advisement." Ms. Bond did not pursue the issue in litigation because we believe any documents in Mayer Brown's possession are likely cumulative to those documents already produced.

At this late date, the government serves a far broader demand for collection and production. It would necessitate that both Ms. Bond and Mayer Brown conduct a diligent search for all potentially responsive documents. Mayer Brown must necessarily conduct a review to screen for any documents protected by Ryan Salame's privilege, as Mayer Brown represented both he and Ms. Bond. Ms. Bond must then review Mayer Brown's collection and redact all privileged material not waived. The collections alone would require at least a day. The necessarily robust privilege log at least half a day. Any disputes must be worked out prior to the hearing. The government afforded Mayer Brown just 48 hours and the defense just 72 hours during the week to accomplish these tasks. It is likely an impossible task, particularly as the defense would simultaneously be preparing for the hearing. That is the definition of an unreasonable and oppressive subpoena. *See* Fed. R. Crim. P. 17(c)(2). The work could probably be done in a week and a half to two weeks, but not in two to three days.

The government can offer no excuse for its' inexcusably late demands. The parties argued before the Court on July 22, 2025. The defense stated that it waived privilege with regard to the inducement by the government and expressly represented that it intended to produce and rely on previously privileged documents. Tr. 17:4-11 ("No. Anything relevant or pertinent to this issue, we will waive.").; Tr. 56:21-25 ("Well, [Mayer Brown communications] are privileged communications. . .that we will waive in advance of the hearing and will submit to Your Honor."). On August 11, 2025, the government requested information on when the documents on which the defense intended to rely, including previously privileged documents, would be produced, but made no further demands. The government can make no claim that it is surprised by Ms. Bond's production of previously privileged documents.

It is simply not humanly possible absent astronomical resources (and maybe not even then) to fully reply to the subpoenas and fully produce with a complete privilege log while

[1] In an abundance of caution, last week the defense has produced to the government documents both on which it intends to rely and which it deems directly pertinent to the question of the inducement, whether or not helpful to the defense. This was a deadline agreed to by the United States. Five short documents remain outstanding because, although they are in Ms. Bond's possession, they implicate Mr. Salame's privilege. Mayer Brown rejected Mr. Salame's first written waiver of privilege and we are in the process of working with his independent counsel to obtain a revised waiver. As the Court is aware, Mr. Salame is incarcerated and communications are delayed. We anticipate the waiver and production imminently.





simultaneously preparing for hearings, protecting Mr. Salame's privilege, and protecting Ms. Bond's remaining privilege. The government created this situation by not preparing for this hearing in a timely fashion. It cannot now prejudice the defense by imposing onerous and impossible production burdens just days before a hearing.

Ms. Bond submits that the government's inexcusably late demands for production to both Mayer Brown and Ms. Bond should be quashed. If the Court is inclined to grant the government's request, Ms. Bond submits that the hearing must be adjourned at least two weeks to provide sufficient time to collect, review, produce documents, and resolve any disputes.

**C. The government's attempt to bar Ms. Bond from testifying should be rejected.**

The government has no grounds to pre-emptively bar Ms. Bond from testifying because her testimony is neither redundant nor irrelevant. Ms. Bond's and her husband's state of mind in entering into the plea agreement are directly relevant to the issues before the Court, including, the belief of her attorneys at the time of plea negotiations, Ms. Bond and Mr. Salame's intentions and belief as the actual parties in interest, her third-party beneficiary status, and the prejudice she suffered as a result of the government's behavior. Thus, any testimony from Ms. Bond is not offered for the truth of the matter asserted, and, even if it was, it falls within a hearsay exception. *See* F.R.E. 801; 803(3). In any event, such evidentiary objections are rarely justiciable in a vacuum, and thus not appropriate for rulings in advance of testimony.

D. **The Government should be compelled to produce documents.**

Should the Court adjourn for the review and production of documents, Ms. Bond moves for an order compelling the government to make a reciprocal disclosure. Unlike the government, Ms. Bond made a timely request to the government for documents. On August 11, 2025, the defense made a request to the government for documents connected to the inducement. In late August, the government advised us that it would produce no documents and not permit the testimony of any AUSA or former AUSA without a Touhy request.

The defense did not argue, although we dispute the necessity of a Touhy request when the agency at issue is an actual party to the litigation. *See* 28 C.F.R. § 16.22 (providing Touhy regulations apply only when the government is not a party); 28 C.F.R. § 16.23 (granting broad authority for government attorneys to respond to process in cases in which the government is a party); *Outlaw v. City of New York*, No. 22 CIV. 9288 (PAE), 2024 WL 4825955, at *1 (S.D.N.Y. Nov. 19, 2024) (stating the Touhy regulations apply when the government is not a party). On August 25, 2025, at the government's insistence, we submitted a formal Touhy request, requesting a response by September 2nd. (Exhibit B). On September 6, 2025, the defense, having not heard from the government, requested an update. On September 11, 2025, the government served its response.





The government denied all document requests, citing, among other things, privilege and Ms. Bond's supposed lack of standing to assert her claim. (Exhibit C). The government stated that it would permit only Danielle Sassoon to testify only if the defense produced "documentary evidence" of the inducement and the testimony creates a "genuine issue of material fact" (presumably in the government's estimation) of the existence of an inducement. (*See id.* at p. 6).

The government thus seeks to obtain discovery from Ms. Bond, while simultaneously refusing to produce discovery from its own files. This is a direct violation of the basic principle that "it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense." *United States v. Reynolds*, 345 U.S. 1, 12 (1953). In this case it is particularly egregious. The government's conduct is the source of the claimed violation of Ms. Bond's rights. Its intentions towards Mr. Salame, Ms. Bond, and their attorneys are directly relevant to the issue before the Court.

Furthermore, to the extent the government claims privilege (of a variety of types), the government waived all such privilege on this subject matter by filing otherwise privileged documents on public dockets in support of its argument. Like any other litigant, the government may not selectively apply the privilege to use it as both a sword and a shield. *Am. C.L. Union v. Nat'l Sec. Agency*, 925 F.3d 576, 591 (2d Cir. 2019).

Finally, the government's objections to the testimony of Danielle Sassoon should be overruled. The government filed a declaration by Ms. Sassoon on the public docket in opposition to Mr. Salame's coram nobis petition, and again in opposition to Ms. Bond's motion to dismiss. (ECF 50; *United States v. Salame*, No. 1:22-cr-00673-LAK, ECF 491). The government filed Sassoon's internal correspondence purporting to recount both the original inducement and a so-called "walk back" of the inducement. The Court already considered the government's argument that insufficient evidence of an inducement exists and ordered hearings anyway. Under any standard, the government's refusal to produce Ms. Sassoon for testimony is arbitrary and capricious and violative of basic discovery principles. We respectfully request that the Court order the government to produce Ms. Sassoon for testimony concerning any promise or inducement made to Mr. Salame to plead guilty.

**E. Conclusion**

The defense is prepared to go forward on the current record. We have diligently gathered what documents we could and made a production. The government apparently made no attempt to prepare until the last minute and now seeks to pressure the defense to complete an impossible collection and production mere days before the hearing. It also seeks to circumvent the attorney client privilege by demanding a production from Ms. Bond's prior attorneys directly to the government. These late-breaking demands are improper and nearly impossible to meet. Ms. Bond respectfully requests that the governments discovery demands be quashed and that the government be ordered to produce Ms. Sassoon for testimony on Thursday.





If the Court is inclined to grant the government's applications, we respectfully submit that the hearing must be adjourned to allow the defense time to collect, review, and redact the documents sought by the government, including documents from Mayer Brown.

We thank the Court for its courtesy.

Respectfully submitted,

/s/ *Eric R. Breslin*
Eric R. Breslin

Attachments

Cc: All counsel of record (via ECF)