

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

September 22, 2025

**BY ECF**

The Honorable George B. Daniels
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> **Re:    *United States v. Michelle Bond*, 24 Cr. 494 (GBD)**

Dear Judge Daniels:

The Government respectfully writes in response to the letter filed by defendant Michelle Bond dated yesterday, September 21, 2025 (Dkt. 58); the letter filed by Bond today (Dkt. 59); and the letter non-party Mayer Brown LLP submitted by email this evening. For the reasons that follow, each of Bond's requests is legally and factually baseless, and should be rejected. Mayer Brown's contentions are equally baseless and should be rejected. However, should Bond and Mayer Brown require more time to comply fully with one or both of the Government's pending Rule 17 subpoenas, as Bond's letter suggests, the Government would not oppose a brief adjournment of the hearing of no more than two weeks. If the Court is inclined to grant such an adjournment, the Government notes that it is available on October 6, 2025.

## I.    Background

### A.  The Rule 17 Subpoenas to Bond and Mayer Brown

By order dated July 28, 2025, this Court scheduled a hearing in the above-referenced matter for September 25, in connection with Bond's motion to dismiss the Indictment. (Dkt. 52).

On July 31, the Government requested from Bond—who bears the burden—a list of witnesses she intended to call at the hearing and the documents, if any, that she intended to rely upon at the hearing. The Government repeated that request multiple times over the ensuing weeks, including by email on August 11, by phone on August 19, and by email on September 12. But Bond declined to provide any documents or a list of witnesses, or indeed any information about the scope of evidence she intended to present at the hearing, in response to any of those requests.

More than two weeks later, on September 15, Bond provided the Government a witness list, consisting of two attorneys from Mayer Brown, Bond herself, and former U.S. Attorney Danielle Sassoon.

Three days later, on September 18, Bond produced what she characterized as some (but not all) of her exhibits for the hearing on September 18. That document production consisted of

Hon. George B. Daniels
September 22, 2025
Page 2

five documents over which attorney-client privilege would appear to have applied absent a waiver, and thus effectuated a subject-matter waiver with respect to the pertinent topics of these documents—*i.e.*, the purported promise not to investigate or prosecute Bond if Ryan Salame pled guilty.

The following day, on September 19, the Government served Rule 17 subpoenas on Bond and Mayer Brown seeking documents falling within that privilege waiver, as well as notes from the April 28, 2023 and May 25, 2023 virtual meetings between Mayer Brown and the Government, which have yet to be produced and are not conceivably privileged.

The same day, the Government asked this Court to order that Mayer Brown produce responsive materials at least one day prior to the hearing, pursuant to Rule 17(c). (Dkt. 57).

## B. The Defendant's *Touhy* Request

On August 25, 2025, defense counsel served *Touhy* requests on the Government, which included both requests for documents and for the testimony of five current and former Assistant U.S. Attorneys ("AUSAs"). The subpoena *duces tecum* sought communications between Mayer Brown and the U.S. Attorney's Office for the Southern District of New York ("SDNY"), as well as internal SDNY documents related to the prosecutions of Salame and Bond. On August 28, the Government reached out to defense counsel and agreed that the Government would respond to the *Touhy* request by September 11 (two weeks before the scheduled hearing in this matter). On September 6, defense counsel reached out asking to schedule a call, and on September 9, the Government spoke with defense counsel and reiterated that it would be providing a response by September 11, as previously agreed.

On September 11, the Government served its *Touhy* response. In response to the subpoena *duces tecum*, the Department of Justice declined to authorize the production of documents, on the ground that the subpoena sought documents or information that are irrelevant, equally available from third parties, and/or internal Government documents and communications protected from disclosure by multiple privileges. In response to the subpoenas *ad testificandum*, the Department of Justice authorized the testimony of former AUSA and U.S. Attorney Danielle Sassoon if and only if: (1) the Court first receives documentary evidence in the form of contemporaneous notes or testimonial evidence from attorneys at Mayer Brown who were present on the April 28, 2023 and May 25, 2023 calls in question; *and* (2) that evidence creates a genuine issue of disputed material fact regarding the accuracy of the content of the Government's notes of those calls. Further, if the foregoing conditions are met, former U.S. Attorney Sassoon has been authorized to testify only as to non-privileged matters within her personal knowledge regarding discussions between the Government and Mayer Brown regarding the effect, if any, of Salame's guilty plea on whether Bond would be investigated or prosected.

Hon. George B. Daniels
September 22, 2025
Page 3

## II.    Discussion

### A.  The Subpoena to Mayer Brown Has Already Been Served and Is Proper

Bond purports to seek denial of the Government's alleged request to issue a subpoena to Mayer Brown. (Dkt. 58 at 2). But there is no pending request to issue a subpoena. Rather, the Government *already served* the subpoena on counsel for Mayer Brown, as it is entitled to do under the express language of Rule 17. *See* Fed. R. Crim. P. 17(c) (granting to both criminal defendants and the Government the right to subpoena documents and objects—that is, evidentiary materials). The Government merely asked the Court to direct Mayer Brown to respond by a particular date prior to the hearing, which Rule 17(c) permits, but which, unlike the issuance of a subpoena itself, requires court approval. (*See* Dkt. 57 & Ex. A).

Accordingly, the only legal avenue for Bond to pursue—assuming *arguendo* she has standing to do so—is to seek to quash the subpoena the Government served on Mayer Brown. But Bond has not moved to quash the subpoena to Mayer Brown. And even were she to seek to do so, neither Bond (nor Mayer Brown should it so request) can meet the high standard required to grant such a motion. Rule 17 provides that, "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). It is well-settled that "the burden is on the party seeking to quash a subpoena" on this ground, and that this burden cannot be met merely through an "assert[ion] that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance." *Kirschner v. Klemons*, No. 99 Civ. 4828, 2005 WL 1214330 (RCC), at *3 (S.D.N.Y. May 19, 2005) (citation omitted); *see also, e.g.*, *United States v. Stein*, 488 F. Supp. 2d 350, 369 (S.D.N.Y. 2007) ("a person or entity served with a subpoena or discovery request cannot evade its discovery responsibilities by simply intoning this familiar litany that the disclosure sought would be burdensome, oppressive or overly broad" (cleaned up)).

Bond does not acknowledge this standard—and she cannot meet it. Rather, she notes that the subpoena to Mayer Brown calls for documents that might be privileged, and then conclusorily states that, because this is so, the subpoena should be deemed "onerous and unduly burdensome." (Dkt. 58 at 2). That conclusion, devoid of any analysis whatsoever, does not come close to discharging her burden. The fact that a subpoena seeks documents that may implicate some privilege or work product protection plainly does not in and of itself make the subpoena burdensome, much less so burdensome that the subpoena should be quashed. Were the law otherwise, a litigant could do precisely what the law does not permit her to do: "use the privilege to prejudice h[er] opponent's case" by "disclos[ing] some selected communications for self-serving purposes." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); *see also, e.g.*, *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) ("[A] party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party.").

It appears that this outcome is precisely what Bond seeks. She has produced a narrow and facially incomplete set of documents—notably, not including notes of the two pertinent meetings, which are not privileged in any event—and now asks this Court to block the Government from

Hon. George B. Daniels
September 22, 2025
Page 4

obtaining a full set of materials from her former counsel. Nothing in the law or logic permits such an unfair approach. *See generally Williams v. Florida*, 399 U.S. 78, 82 (1970) ("The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played.").

To be sure, as Bond suggests, it may be that certain responsive documents contain both information covered by Bond's waiver, and materials that remain privileged (*e.g.*, on another subject). But that is not a basis to quash a valid subpoena seeking self-evidently relevant materials. Rather, to the extent any responsive documents implicates a privilege that has not been waived, Mayer Brown should redact or withhold the document and explain the basis for doing so on a privilege log, precisely as the subpoena itself says, while producing the remaining responsive materials.[1]

It also may be that, as Bond further suggests, this process may require more time than is presently available before the hearing. But that too is not a basis to quash a valid subpoena seeking self-evidently relevant materials, much less to provide Bond with the windfall that would result by permitting her to advance an inflammatory and meritless claim through selective use of otherwise-privileged materials. Rather, if Bond requires more time to assist Mayer Brown with its efforts to comply with the subpoena, the Government would not oppose a brief adjournment of the hearing of no more than two weeks.

Mayer Brown's additional objections to the subpoena, in a letter submitted by email this evening, are also immaterial. The fact that the subpoena calls for potentially privileged documents is not a basis for Mayer Brown to refuse to comply with the subpoena in its entirety, particularly given that Bond has effectuated a subject-matter waiver for communications that implicate the purported promise not to prosecute Bond if Salame pled guilty. Mayer Brown also asserts, without attribution, that the parties disagree about the scope of Bond's waiver, but that is both irrelevant to whether it must comply with a valid subpoena and, in any event, not the case. To the extent Bond wishes to review those otherwise-privileged documents before Mayer Brown produces them to the Government, the Government does not object to that process. The Government simply requests the production of the documents prior to the hearing.

Notably, Mayer Brown in its letter does not address the production of Mayer Brown attorney notes of April 28, 2023, and May 25, 2023 virtual meetings between Mayer Brown and the Government, which are squarely called for by the subpoena, indisputably relevant, and not conceivably burdensome to produce or privileged. Mayer Brown should be directed to produce those documents to the Government immediately.

---

[1] The Government would, of course, timely produce a copy of any privilege log or documents to Bond that it receives in response to the subpoena to Mayer Brown, consistent with its usual practice.

Hon. George B. Daniels
September 22, 2025
Page 5

### B.  The If/As/When Subpoena to Bond Is Proper

Separate from her conclusory and inapt challenge to the Rule 17 subpoena issued to Mayer Brown, Bond seeks to quash the Rule 17 subpoena issued to her, which seeks the production of three narrow categories of documents if, as, and when she determines that she will testify at the hearing (Dkt. 58 Ex. A). (Dkt. 58 at 2-3). The Government's narrow document subpoena to Bond is well within the scope of Rule 17(c) and should not be quashed. Indeed, the result of quashing would be to give Bond an unfair and unwarranted windfall.

Bond's assertion that the subpoena to her somehow infringes upon her Fifth Amendment rights (Dkt. 58 at 2) is frivolous. The Fifth Amendment states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty.*, 542 U.S. 177, 189 (2004). The subpoena to Bond does not seek to compel Bond to testify. To the contrary, Bond is included on the *defense* witness list and has repeatedly insisted—including in the letter filed only days ago, on September 21, 2025—that she intends to testify at the hearing. (Dkt. 53, 58). The subpoena to Bond merely requires Bond to produce a narrow category of documents only if, as, and when she determines that she will testify at the hearing. (*See* Dkt. 58 Ex. A). Should Bond ultimately elect not to testify at the hearing, she will be under no obligation to produce any documents at all. Such a subpoena is routine, completely appropriate, and could not even theoretically violate Bond's constitutional rights not to testify under Second Circuit precedent. *See, e.g.*, *United States v. Nguyen*, 507 F. App'x 64, 66 (2d Cir. 2013) (holding that if, as, and when subpoena did not violate defendant's constitutional rights and rejecting argument that "the district court impermissibly chilled [defendant's] right to testify in violation of the Sixth Amendment by ordering him to produce '[a]ny and all appointment books, calendars, and diaries from 2006 through 2010' in violation of the Fifth Amendment" because "'[w]hen a defendant takes the stand in his defense, he surrenders his Fifth Amendment privilege for proper cross-examination'" (quoting *United States v. Spinelli*, 551 F.3d 159, 167 (2d Cir. 2008)))).

Nor is there any merit to Bond's assertion that the subpoena to her—served the day after Bond waived the attorney-client privilege over the pertinent subject matter and nearly a week before the September 25 hearing—is untimely. (Dkt. 58 at 2-3). As recounted above, the Government sought documents from Bond multiple times, beginning immediately after the Court's order setting the hearing. But Bond refused to inform the Government of the witnesses whom she intended to call at the hearing until Monday, September 15, and refused to produce any documents until Thursday, September 18, when she produced what she has characterized as some (but not all) of her exhibits for the hearing. It was only once Bond produced those exhibits that it was clear that Bond had had in fact waived the attorney-client privilege over communications concerning the purported promise not to investigate or prosecute Bond if Salame pled guilty. *The very next day* the Government served its subpoena on Bond. Prior to that point, it would have been premature for the Government to serve a request for otherwise privileged communications, notwithstanding defense counsel's assertion that Bond *intended* to waive the attorney-client privilege as to certain documents (Dkt. 39 at 7, 14-15 & n.7; *see also* July 22, 2025 Oral Arg. Tr. 16-17), because Bond retained the right not to disclose privileged communications until the moment that privilege was

Hon. George B. Daniels
September 22, 2025
Page 6

waived, and the Government also did not know the scope of the waiver until it received Bond's document production. Further, the Government had no way of knowing prior to Bond's September 18 production that Bond would not produce notes of the April 28, 2023, and May 25, 2023 virtual meetings between Mayer Brown and the Government. The failure to produce those notes was entirely unexpected, and left the Government no choice but to serve a subpoena.

Bond also materially overstates the alleged burden associated with complying with the subpoena to her. (Dkt. 58 at 3). The subpoena seeks (1) communications with Mayer Brown concerning the purported not to prosecute Bond if Salame pled guilty; (2) documents reflecting legal advice about that promise; and (3) notes from the April 28, 2023, and May 25, 2023 virtual meetings between Mayer Brown and the Government, and any and all memoranda or other documents reflecting the contents of such meetings. (*See* Dkt. 58 Ex. A). Categories 1 and 2 are narrow and fall squarely within the subject-matter waiver Bond effectuated when she produced documents concerning that topic over which attorney-client privilege would appear to have applied absent a waiver. Category 3 is even narrower. The request for notes of the April 28 and May 25 virtual meetings is essentially a request for two documents that Bond has implicitly conceded exist. (*See* Dkt. 40, Ex. D at 1).

Further, the request for notes does not logically implicate the attorney-client privilege or work product protection at all, given that the notes are of meetings between Mayer Brown lawyers and the Government, and there is no legal advice or attorney mental impression communicated by a mere recitation of the contents of those meetings. As the Court knows, the Government long ago produced its notes from those calls without waiving the attorney-client privilege or work product protection, precisely because its notes implicated neither. The aspect of Category 3 of the subpoena seeking memoranda or other documents reflecting the contents of the April 28 and May 25 meetings is not materially broader.

To be sure, as noted above, it may be that the process Bond wishes to undertake to review and produce documents may require more time than is presently available before the hearing. But again, that is not a basis to quash a valid subpoena seeking self-evidently relevant materials, much less to provide Bond with the windfall that would result by granting her motion. Rather, if Bond would like more time to work with Mayer Brown, the Government would not oppose a brief adjournment of the hearing of no more than two weeks.

Accordingly, Bond's request to quash the Government's subpoena should be denied, and Bond should be ordered to produce any responsive documents sufficiently in advance of her direct testimony to permit the Government time to review the documents and prepare any appropriate cross-examination.

## C. Bond Should Be Precluded from Testifying, or in the Alternative the Government Should Be Permitted To Cross-Examine Her on Issues of Credibility

For the reasons explained in the Government's letter motion dated September 19, 2025, the Court should preclude Bond's testimony as both irrelevant and cumulative. (Dkt. 57). Bond's letter only reinforces that preclusion is warranted. She claims to seek to testify regarding (1) her

Hon. George B. Daniels
September 22, 2025
Page 7

and Salame's "state of mind in entering into the plea agreement"; (2) "the belief of her attorneys at the time of plea negotiations"; (3) her and Salame's "intentions and belief as the actual parties in interest"; (4) "her third-party beneficiary status"; and (5) "the prejudice she suffered as a result of the government's behavior." (Dkt. 58 at 4). But none of those topics is relevant to the sole factual question before the Court at this hearing—whether the Government made an enforceable promise not to prosecute Bond if Salame pled guilty.

The proposed categories of testimony also present numerous other issues, including that Bond cannot testify to Salame's state of mind upon entering the plea agreement, and Bond's own state of mind concerning that topic is doubly irrelevant as she is not a signatory to the agreement; that Bond cannot testify to her attorneys' "belief . . . at the time of plea negotiations" and testimony about what Bond's attorneys communicated to her about the substance of their conversations with the Government is far less probative than testimony about what was in fact said in the conversations between Mayer Brown and the Government (for which she was not present); and that the question of whether Bond is a third-party beneficiary of Salame's plea agreement is a pure question of law on which Bond could not offer proper testimony. Further, testimony regarding the alleged "prejudice" Bond suffered—such as with respect to her divorce and child custody proceeding—is completely collateral to the question of whether the Indictment should be dismissed, and is a transparent attempt to improperly invoke an emotional response on unrelated issues. For these reasons, even if the Court were inclined to permit hearsay testimony, Bond's testimony should be precluded, or at a minimum strictly confined to what her attorneys communicated to her about the substance of their conversations with the Government.

Should the Court instead permit Bond to testify, the Court should allow the Government to cross-examine Bond regarding aspects of the underlying case that bear on her credibility, for the reasons explained in the Government's letter motion dated September 19, 2025. (Dkt. 57). Bond attempts to distinguish the cases from the Courts of Appeals for the Second, Sixth, and Tenth Circuits cited by the Government (Dkt. 59 at 2) but fails to do so convincingly. In each of those cases, the defendant put his credibility at issue by testifying at a suppression hearing, and the Government was permitted to cross-examine the defendant on issues relating to credibility with respect to the facts of the underlying case. The same is true here—Bond's proffered testimony necessarily puts her credibility at issue and the Government should be permitted to cross-examine her accordingly.

### D. Bond is Not Entitled to Privileged Internal Government Materials or to Expand the Scope of Ms. Sassoon's Testimony

To the extent that Bond seeks an order for "discovery" from the Government based on the Government's *Touhy* authorization of nearly two weeks ago, that is improper. Bond cites no authority, and the Government is unaware of none, requiring "discovery" in aid of a claim such as hers, much less when what she appears to seek is internal, privileged materials.

Hon. George B. Daniels
September 22, 2025
Page 8

Under 5 U.S.C. § 301, the Department of Justice (the "Department" or "DOJ") has promulgated procedures known as "*Touhy*" regulations, *see* 28 C.F.R. §§ 16.21 to 16.2; *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (authorizing such regulations), which govern the Department's response to subpoenas and other requests for testimony of current and former DOJ employees or for the DOJ's documents. These regulations set forth the procedures both in proceedings in which the United States is not a party, 28 C.F.R. § 16.22, and those in which the United States is a party, *id.* § 16.23. The regulations outline the factors that are to be considered in deciding whether to authorize a disclosure, *id.* § 16.26, including whether "such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose," and "[w]hether [such] disclosure is appropriate under the relevant substantive law concerning privilege. *Id.* § 16.26(a). They further provide that "disclosure will not be made by any Department official" if, among other factors, it "would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigatory techniques and procedures the effectiveness of which would thereby be impaired." *Id.* § 16.26(b)(5). The Department considered those factors in issuing its *Touhy* response.

In reviewing DOJ's decision whether to authorize testimony or the production of documents, courts in this district generally review the denial of a *Touhy* request under the "arbitrary and capricious standard" of the Administrative Procedure Act. *See, e.g., Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, No. 19 Civ. 9193 (PGG) (SLC), 2023 WL 5498962, at *5 n.7 (S.D.N.Y. Aug. 25, 2023) (noting that while "the Second Circuit has not yet articulated the correct standard of review for a denial of a *Touhy* request, the weight of authority in this District has applied the "arbitrary and capricious" standard more often than that found in Federal Rule of Civil Procedure 45." (internal citations omitted)). Bond has not shown that in making the *Touhy* determination, the Department "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Adler v. United States Dep't of Just.*, No. 18 Civ. 2188 (PAC), 2018 WL 4571677, at *4 (S.D.N.Y. Sept. 24, 2018) (citations omitted).[2]

Indeed, Bond's letter does not actually challenge any of the bases for the *Touhy* decision, instead simply asserting that the Government should now be required to produce documents. Bond is wrong. As explained in the *Touhy* response, there was no "inducement/promise that Ms. Bond would not be prosecuted if Mr. Salame pled guilty." But to the extent Bond's *Touhy* request could have been read more broadly to encompass internal SDNY communications related to the subject matters discussed during the April 28, 2023, and May 25, 2023 virtual meetings, the Department explained such documents are protected from disclosure by multiple privileges. Bond does not and cannot disagree. Her requests sought AUSA "talking points," scripts, or prepared statements, and internal notes, emails, or memoranda between AUSAs and any other law enforcement officers—materials that are clearly protected by the attorney client privilege, work product doctrine, the deliberative process privilege, and the law enforcement privilege. Bond, who bears the burden on

---

[2] Even if the Court were to analyze the denial under the standard applicable to subpoenas under the Federal Rules of Criminal Procedure, the result would be the same.

Hon. George B. Daniels
September 22, 2025
Page 9

her claim, offers no cogent basis whatsoever to seek an order that would require the production of documents that implicate all of these privileges—particularly when the only notes produced by any party of what was discussed during the April 28, 2023 and May 25, 2023 virtual meetings squarely refute her claim.[3]

Contrary to Bond's assertions (Dkt. 58 at 5), that Bond, who bears the burden, has elected to waive privilege in an effort to meet her burden does not mean she is entitled to the Department of Justice's privileged documents, when the Department of Justice has not waived privilege (and indeed has consistently maintained that it would not waive privilege). Nor did the Government waive any privilege when it filed on the docket its notes from the April 28 and May 25 virtual meetings between the Government and Mayer Brown. For the reasons explained, such documents—which reflect a summary of communications among counterparties, not legal advice or attorney mental impressions—are plainly neither privileged nor work product.

Relatedly, Bond appears to suggest that the scope of the authorization for former U.S. Attorney Sassoon's testimony was somehow inappropriate. Bond could have so argued weeks ago when she received the Department's *Touhy* response, and then listed former U.S. Attorney Sassoon as a witness. In any event, Bond's claim is baseless. The Department has authorized former U.S. Attorney Sassoon to testify about "discussions between the SDNY and Mayer Brown regarding the effect of Mr. Salame's plea on whether Ms. Bond would be investigated or prosecuted" only if evidence was first received that would create a genuine issue of disputed material fact regarding SDNY's notes of those calls. In the absence of such evidence, the subpoena seeks irrelevant and purely cumulative evidence. To the extent Bond seeks former U.S. Attorney Sassoon's testimony as to internal SDNY deliberations or communications, as explained above, such deliberations or

---

[3] With respect to the portion of Bond's subpoena *duces tecum* that sought communications between Mayer Brown and SDNY, Bond does not dispute that such communications were (and remain) available to her from her own former attorneys, and under Rule 17(c), the request for such records from the Government is thus unreasonable and unnecessary. Indeed, the Government understands that Bond has served her own Rule 17 subpoena on Mayer Brown.

Hon. George B. Daniels
September 22, 2025
Page 10

communications are protected by privilege and the Department of Justice has not waived such privilege.

                                            Respectfully submitted,

                                            SEAN S. BUCKLEY
                                            Attorney for the United States, Acting Under
                                            Authority Conferred by 28 U.S.C. § 515

                                 By: s/ Stephanie Simon
                                     Stephanie Simon
                                     Daniel C. Richenthal
                                     Assistant United States Attorneys
                                     (212) 637-2581/2109

cc:

        (by ECF)

        All counsel of record

        (by email)

        Matthew D. Ingber, Esq.
        Counsel for Mayer Brown