| | **DuaneMorris®** | |
|---|---|---|
| NEW YORK | | HANOI |
| LONDON | | HO CHI MINH CITY |
| SINGAPORE | | SHANGHAI |
| PHILADELPHIA | *FIRM and AFFILIATE OFFICES* | ATLANTA |
| CHICAGO | | BALTIMORE |
| WASHINGTON, DC | | WILMINGTON |
| SAN FRANCISCO | ERIC R. BRESLIN | MIAMI |
| SILICON VALLEY | PARTNER | BOCA RATON |
| SAN DIEGO | DIRECT DIAL: +1 973 424 2063 | PITTSBURGH |
| LOS ANGELES | PERSONAL FAX: +1 973 556 1552 | NORTH JERSEY |
| BOSTON | *E-MAIL:* ERBreslin@duanemorris.com | LAS VEGAS |
| HOUSTON | | SOUTH JERSEY |
| DALLAS | *www.duanemorris.com* | SYDNEY |
| FORT WORTH | | MYANMAR |
| AUSTIN | | |
| | | ALLIANCES IN MEXICO |

September 29, 2025

VIA ECF

Honorable George B. Daniels
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

     Re:    <u>*United States v. Bond*, 1:24-cr-00494-GBD: Outstanding Issues</u>

Dear Judge Daniels,

     We the attorneys for Michelle Bond. In accordance with the Court's order of September 23, 2025 (ECF 62), we here submit Ms. Bond's arguments and objections to all outstanding issues still in dispute. All arguments are consolidated for the Court's convenience and ease of review.

     On July 28, 2025, the Court set a date for an evidentiary hearing into the question of whether the government induced Mr. Salame to plead guilty by promising not to continue to investigate Ms. Bond. Six days before the hearing, on the evening of Friday, September 19, 2025, the government filed a motion seeking to preclude Ms. Bond from testifying at the upcoming hearing (ECF 57). Also on September 29, the government served two subpoenas for documents: one on Ms. Bond and one on Ms. Bond's former counsel. On Monday, September 22, 2025, the government filed another motion (ostensibly a response to Ms. Bond's response to its motion), seeking to cross-examine Ms. Bond on the underlying offense if she takes the stand (ECF 60).

     On September 21, 2025, in response to the government's subpoena and in connection with other communications from the government, Ms. Bond moved to compel the government's compliance with document demands. (ECF 58). Ms. Bond also opposed the government's late-filed motions on September 21 and 22, respectively. (ECF 58, 59).

DUANE MORRIS LLP   *A DELAWARE LIMITED LIABILITY PARTNERSHIP*   DAVID A. SUSSMAN, RESIDENT PARTNER
200 CAMPUS DRIVE, SUITE 300   PHONE: +1 973 424 2000   FAX: +1 973 424 2001
FLORHAM PARK, NJ 07932-1007

DuaneMorris

Honorable George B. Daniels
September 29, 2025
Page 2

The Court adjourned the hearing to allow the parties to meet and confer and present the Court with any outstanding issues that require the Court's attention:

The following disputes require the Court's intervention:

- the government's motion to preclude Ms. Bond from testifying (ECF 57);

- the government's application to examine Ms. Bond on the underlying offense[1] (ECF 60) / Ms. Bond's motion to limit the scope of cross (ECF 59);

- Ms. Bond's motion to compel testimony by Ms. Sassoon (ECF 58); and

- Ms. Bond's motion to compel the production of documents by the government (ECF 58).

Ms. Bond sets forth her arguments and positions on outstanding areas of dispute below.

### A.    Ms. Bond should be permitted to testify at the upcoming hearing.

The government argues that Ms. Bond can offer no relevant or evidentiary testimony at the hearing and therefore should be precluded from testifying. The government further argues that any testimony by Ms. Bond about conversations with her attorneys is hearsay and "redundant." (ECF 57, at p. 1).[2]

First, the government raises evidentiary objections that are rarely justiciable in a vacuum, and thus not appropriate for rulings in advance of testimony. In any event, Ms. Bond's state of mind, what she was told by her attorneys, and the decision she and her husband made are not irrelevant. These are issues that go directly to the question of what Mr. Salame and his wife intended when Mr. Salame signed his plea agreement. Additionally, Ms. Bond is the witness best positioned to establish prejudice.

Second, Ms. Bond's testimony would not be "pure hearsay" because her testimony as to communications with her attorneys is not offered for the truth of the matter asserted. They go to show her attorneys' contemporaneous understanding. We note that the following categories of statements are not hearsay: statements of someone's belief or understanding at the time offered to impeach contradictory evidence; statements impeaching another witness' testimony;

---

[1] In the joint status letter, the government presented this application as "to the extent Ms. Bond puts her credibility at issue." However, as the government argued previously, Ms. Bond will put her credibility at issue simply by testifying. (ECF 60, p. 7).

[2] The previous filings are as follows: ECF 57 (government's initial application), ECF 58 (Ms. Bond's response), ECF 60 (government's additional argument).

omissions / the lack of a statement; and statements of intention. Even if this evidence were offered for the truth of the matter asserted, (i.e., a statement that someone was shocked offered to prove their shock), it is still admissible under the state of mind exception to the hearsay rule. F.R.E. 803(3) (providing an exception for statements of the declarant's state of mind, such as motive, intent, or plan, emotional, sensory, or physical condition).

Third, the government argues that Ms. Bond's testimony would be redundant to other witnesses better suited to testify. We disagree, but this argument misses the point. We are not required to select the witnesses the government deems "best" to each point. As of right now, no witness has offered any testimony. Any argument that Ms. Bond is "redundant" is premature.

### B. The government may not question Ms. Bond about the underlying offense.

If Ms. Bond testifies, the government seeks to cross-examine her as to the underlying offense on the theory that, by testifying, she puts her credibility at issue. (ECF 57). This would be improper unless Ms. Bond opens the door to her credibility specifically as concerns the underlying offense.[3] Ms. Bond's testimony will be confined to matters related solely to Mr. Salame's plea and her own dealings with the government post-offense conduct. The government's proposed cross-examination would be deeply improper.

Federal Rule of Evidence 104(d) provides:

> By testifying on a preliminary question, a defendant in a criminal case does not become subject to cross-examination on other issues in the case." Rule 608 further provides: By testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness' character for truthfulness.

The government cites to several cases, purportedly for the proposition that testimony by the defendant opens the door for any cross-examination on the theory that it puts the defendant's credibility in play. An exception this broad would swallow Rule 104(d) and write it out of existence. The cases cited by the government certainly do not support this proposition. All the government's citations concern cases in which the defendant's testimony directly touched on the underlying offense.

In *United States v. Jaswal*, the defendant testified in a suppression hearing that his confession was involuntary and manufactured by government agents. 47 F.3d 539, 543 (2d Cir. 1995). The court permitted cross examination into the underlying facts of the crime to

---

[3] Previous filings are as follows: ECF 57 (the government's stated intention to cross Ms. Bond on the underlying offense); ECF 59 (Ms. Bond's motion to limit cross); ECF 60 (government response).

DuaneMorris

Honorable George B. Daniels
September 29, 2025
Page 4

demonstrate the confession's accuracy, rebutting the claim that federal agents wrote the confession. *Id.* The Second Circuit held that the impeachment evidence was thus directly within the scope of the direct and therefore permissible. *Id.* The Second Circuit did not hold that the government could examine on the underlying offense where not directly relevant to the direct.

In *United States v. Roberts*, the defendant testified that his altered mental state rendered his confession involuntary. 14 F. 3d 502, 516-17 (10th Cir. 1993). The district court permitted the government to cross-examine on the underlying offense because the defendant's directing sales and collecting money showed the defendant's rational and functional state of mind. *Id.* The Tenth Circuit ruled the testimony was permissible because the defendant placed his state of mind at issue, and the government could impeach on that issue. In *United States v. Williams*, the cross-examination at issue directly related to the defendant's earlier testimony, namely the defendant's denial that he showed signs of nervousness at the time he was arrested. 754 F.2d 672, 676 (6th Cir. 1985).

In contrast, the court in *United States v. Roth* confronted a situation more on point with the one here. 854 F. Supp. 620, 622 (D. Neb. 1994). The defendant testified in a suppression hearing, confining his testimony to the circumstances surrounding the taking of his statement. *Id*. The court restricted the cross-examination as to the underlying offense, holding that the government's proffered topic of cross-examination, whether the defendant was involved with drugs, exceeded the scope of the direct and did not touch on credibility in any event. *Id*.

We anticipate that Ms. Bond will testify as to her understanding of the scope of Mr. Salame's plea, what she was told by her attorneys as to their understanding of the scope of the plea, and the prejudice she suffered as a result of the government's reneging on the agreement with she and her husband. We do not anticipate that Ms. Bond will testify as to the underlying election law offenses at all. Cross-examination into the underlying offense would thus be far outside the scope of the direct and a violation of Rule 104(d).

C. **Ms. Bond moves to compel the testimony of Danielle Sassoon.**

At the government's insistence, Ms. Bond served a Touhy demand for testimony by former Assistant United States Attorney Danielle Sassoon on August 25, 2025.[4] (*See* ECF 58-2 (Ms. Bond's Touhy request). The government agreed to permit Ms. Sassoon to testify only: (1) after the Court first receives documents or evidence from attorneys at Mayer Brown that calls Ms. Sassoon's notes into question, and (2) the evidence creates a "genuine issue of disputed material fact" regarding the accuracy of the government's notes of the call. (ECF 58-3). The

---

[4] Previous relevant filings are as follows: ECF 58-2 (Ms. Bond's Touhy Request), ECF 58-3 (the government's response; ECF 58 (Ms. Bond's motion to compel testimony); and ECF 60 (the government's response).

government has yet to advise who would make the determination of whether the evidentiary threshold has been met.

If Ms. Sassoon is permitted by the government to testify, the government states she will only be permitted to do so concerning her non-privileged, personal knowledge regarding discussions between the government and Mayer Brown concerning whether Michelle Bond would be investigated or prosecuted. The government now argues that Ms. Bond's request intrudes on the government's "deliberative" privilege and that Ms. Sassoon's testimony would be "purely cumulative. (ECF 60).

To the last point first, there can be no meritorious argument that Ms. Sassoon's testimony as to whether she made a promise to induce a plea agreement is irrelevant or cumulative. The government is relying exclusively on one page of her notes to refute Ms. Bond's claim. There is no world in which Ms. Sassoon's testimony could be deemed cumulative or irrelevant, particularly as the government has refused to permit any other government attorney involved in the case to testify. (*See* ECF 58).

Next, to be clear, it is not the *scope* of Ms. Sassoon's testimony to which the defense objects. It is the qualification that the defense must somehow make a pre-determined showing which the government will then evaluate and make a determination, in some unidentified individual's own mind, that Ms. Bond's argument has merit. The Court already considered the government's argument that insufficient evidence of an inducement exists and ordered a hearing anyway. And, it is the government, not Ms. Bond, that made Ms. Sassoon a central character in this drama. The government filed a Declaration by Ms. Sassoon on the public docket in opposition to Mr. Salame's coram nobis petition, and again in opposition to Ms. Bond's motion to dismiss. (ECF 50; *United States v. Salame*, No. 1:22-cr-00673-LAK, ECF 491). The government filed Sassoon's internal correspondence purporting to recount both the original inducement and a so-called "walk back" of the inducement. Under any standard, the government's refusal to produce Ms. Sassoon for testimony is arbitrary and capricious and violative of basic discovery principles. We respectfully request that the Court order the government to produce Ms. Sassoon for testimony concerning any promise or inducement made to Mr. Salame to plead guilty.

### D. The government should be required to produce documents.

The government should be required to make a reciprocal disclosure.[5]

On August 11, 2025, the defense made a request to the government for documents connected to the inducement. In late August, the government advised us that it would produce no

---

[5] Previous filings are: ECF 58-2 (the Touhy request); ECF 58-3 (the government response); ECF 58 (Ms. Bond's motion to compel; and ECF 60 (the government's response).

DuaneMorris

Honorable George B. Daniels
September 29, 2025
Page 6

documents The defense did not argue, although we dispute the necessity of a Touhy request when the agency at issue is an actual party to the litigation. *See* 28 C.F.R. § 16.22 (providing Touhy regulations apply only when the government is not a party); 28 C.F.R. § 16.23 (granting broad authority for government attorneys to respond to process in cases in which the government is a party); *Outlaw v. City of New York*, No. 22 CIV. 9288 (PAE), 2024 WL 4825955, at *1 (S.D.N.Y. Nov. 19, 2024) (stating the Touhy regulations apply when the government is not a party). On August 25, 2025, at the government's insistence, we submitted a formal Touhy request, requesting a response by September 2nd, 2025. (ECF 58-2). The government stonewalled, not serving a response until September 11, 2025 and flatly refusing to produce any documents.

    First, the government denies Ms. Bond access to discovery while simultaneously demanding the same discovery from her. This grossly one-sided position violates the basic principle that it is unconscionable to allow the government to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense." *United States v. Reynolds*, 345 U.S. 1, 12 (1953).

    Second, the government's reliance on the Touhy process is both improper and unsustainable. As noted above, 28 C.F.R. § 16.22 applies to document demands *only* where the government is not a party to the litigation. Accordingly, the government is bound by the same rules as any other party when it comes to the production of relevant documents.

    Third, in any event, the government's objections lack any merit at all. The government claims that Ms. Bond lacks standing. The government argues that Ms. Bond lacks standing, but that is an issue for the Court to decide. It seeks to usurp the Court's role and withhold documents unless and until it determines that Ms. Bond's claims has merit. That is manifestly improper when the government is the directly adverse party. The government is *never* going to agree Ms. Bond is right. The Court has already determined that an evidentiary hearing is warranted and it behooves everyone to have a clear and complete record

    Fourth, the government's claim of privilege must also be rejected. It also filed internal, privileged documents on the public docket and seeks to rely on them to make its case. To the extent the government claims privilege (of a variety of types), the government waived all such privilege on the subject matter of any promise made to Ryan Salame or Michelle Bond not to prosecute her in exchange for a guilty plea by Ryan Salame. Like any other litigant, the government may not selectively apply the privilege to use it as both a sword and a shield. *Am. C.L. Union v. Nat'l Sec. Agency*, 925 F.3d 576, 591 (2d Cir. 2019).

DuaneMorris

Honorable George B. Daniels
September 29, 2025
Page 7

Ms. Bond thus respectfully requests that the government be required to produce the following documents:

1. Communications between the government and Mayer Brown concerning any representation made concerning or about Ms. Bond in connection with Ryan Salame's plea;

2. All "talking points", scripts, or prepared statements utilized by Danielle Sassoon in any conversation, meeting or Zoom or Teams or other call with counsel for Ms. Bond or Mr. Salame; and

3. Any internal notes, emails or memoranda (other than those already produced relating to the inducement/promise that Ms. Bond would not be prosecuted if Mr. Salame pled guilty.

E. **Additional applications by the government.**

In a meet and confer last week, the government stated that it intends to file another motion, apparently to cancel the hearing. To date, the government has not made application. We must state our objection to continuous rounds of untimely, seriatim applications directed to issues long argued before and settled by the Court.

Respectfully submitted,

  /s/ *Eric R. Breslin*
Eric R. Breslin

Enclosure
Cc:   All counsel of record (via ECF)