

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

September 29, 2025

**BY ECF**

The Honorable George B. Daniels
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    ***United States v. Michelle Bond*,**
            **24 Cr. 494 (GBD)**

Dear Judge Daniels:

    The Government respectfully writes concerning the above-referenced matter, for two purposes.

    *First*, based on a recent production of text messages and conferring with counsel for the defendant, the Government requests the Court not proceed with a hearing. In short, it has become apparent that the defendant—who bears the burden—cannot discharge her burden, and indeed, has not even satisfied the threshold standard to obtain a hearing.

    *Second*, pursuant to the Court's order of September 23, 2025 (Dkt. 62), to the extent the Court proceeds with a hearing, the Government identifies the current outstanding issues that require resolution meaningfully ahead of a hearing.

    I.    <u>No Hearing Should Be Held</u>

    In written filings and oral advocacy before the Court, the defendant—without citing any attorney notes or other document supporting her position—has consistently maintained that the Government allegedly *promised* not to investigate or prosecute her if Ryan Salame pled guilty, in direct contravention of the Government's contemporaneous notes of virtual meetings with her former attorneys at Mayer Brown LLP, the plea agreement with Salame, Salame's plea allocution, and Salame's post-sentencing admission to Judge Kaplan. This is a serious accusation and the Government understands that it was the basis on which the Court ordered a hearing.

    However, late last week, on September 23, 2025, the defendant produced to the Government a set of text messages between herself and her former attorneys which confirm what is already self-evident: the Government never made any such promise. (*See* Ex. A). Specifically, in a message sent on April 15 or 16, 2024, Jason Linder (one of the defendant's then-counsel, then from Mayer Brown), copying Gina Parlovecchio (one of the defendant's other then-counsel, also from Mayer Brown), wrote to the defendant that, in conversations regarding Salame's potential plea, the Government attorneys "were careful not to promise," apparently referring to the

Hon. George B. Daniels
September 29, 2025
Page 2

statement—reflected in the Government's notes of the April 28, 2023 videoconference (*see* Dkt. 40 Ex. C)—that the Government *expected* that it would cease its investigation into Salame's criminal conduct if Salame pled guilty to certain offenses. (Ex. A at 4). Linder then listed other facts that also support the conclusion that there was no promise: "there is an integration clause in the plea agreement" and "Ryan testified under oath [before Judge Kaplan] that there was no other promise, inducement, etc. that led him to plead guilty." (Ex. A at 4). The defendant did not appear to respond in any manner reflecting disagreement that there was no promise, or confusion about why her then-attorney said what he said. That is unsurprising, because there was no such promise—and her attorneys knew that, Salame knew that, and the defendant knew that.

After receiving a copy of these text messages from the defendant, the Government conferred with current defense counsel, who confirmed that the defendant still hopes to establish at the hearing that the Government promised not to investigate or prosecute her if Salame pled guilty, notwithstanding the existence of this contemporaneous document that directly contradicts her position, and the non-existence of any documents in her exhibit list, or known to the Government, to the contrary. Indeed, none of the exhibits the defendant has marked for the hearing remotely supports the existence of such a promise. Rather, every one of those documents refutes the existence of a promise. (*See, e.g.*, Ex. B at 1 (email from Parlovecchio to the defendant, copying Linder, referring to "the statements made by the FTX prosecutors that *left us with the understanding* that they were going to discontinue the part of their investigation relating to Ryan's payments to you during your congressional campaign if Ryan resolved his case through a plea" (emphasis added)); Ex. C at 2 (Government's notes of statements by Mayer Brown attorneys during July 2024 meeting; describing April 2023 video conference: "DS said (reading from notes) – early disposition *no promises*, conclude as to RS, conclude this facet of investigation" (emphasis added)); Ex. D at 26 (Mayer Brown proffer outline; in describing the April 28 video conference, states that the Government "not[ed] that, *although they couldn't make promises* outside the four corners of a plea agreement, . . . 'if we conclude as to Ryan, that would conclude this facet of the investigation'" (emphasis added))).

Nor has the defendant proffered testimony that would support her position (and which, even if extant, would require the Court to reject all known and contemporaneous documentary evidence in order to find for the defendant). Indeed, defense counsel has repeatedly declined to provide the Government a proffer of the Mayer Brown lawyers' expected testimony, despite numerous requests for such a proffer.[1] And the defendant herself cannot testify to what was said by the Government in meetings in which she was not present. She therefore, at best, could testify to what she *believed* would occur following those meetings.

However, such testimony is legally irrelevant. As the Court is well aware, defendants not infrequently have a belief or expectation regarding what may or may not occur in an investigation or prosecution based on any number of sources, including conversations they have with their lawyers, following conversations their lawyers have with government counsel. But the defendant

---

[1] Defense counsel has stated that they presently intend to call Gina Parlovecchio to testify, not Jason Linder. That too is notable, since Mr. Linder authored the pertinent text message described above.

has identified no case, and the Government is aware of none, in support of the radical proposition that such a belief or expectation, in the event it proves incorrect, entitles a defendant to the windfall of a dismissal of charges. For good reason, courts enforce executed *agreements* between a defendant and the government, not probe whether a defendant has a correct, incorrect, or partially correct belief or expectation about the future, regardless of the source of that belief or expectation. (*See* Dkt. 43 at 15-16). Simply put, it does not legally matter what the defendant believed or expected—and she is not entitled to a hearing where it is apparent that that is all, at most, she could show. *See, e.g.*, *United States v. Roberts*, No. 97 Cr. 10 (RSP/DH), 1998 WL 278293, at *5 (N.D.N.Y. May 19, 1998) (Pooler, J.) (denying hearing where, "[a]t most," the defendant demonstrated "some subjective belief that the government would not prosecute").

For these reasons, the Court should not proceed with a hearing and deny Bond's motion on the current record. Under settled law, a defendant is not entitled to an evidentiary hearing unless she first makes a cogent preliminary showing, grounded in evidence, that doing so may reveal meritorious grounds for substantive relief under the law. *See, e.g.*, *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981) ("The mere allegation of Government misconduct was wholly insufficient to require the District Court to hold an evidentiary hearing."). That has not occurred. And it is apparent that it will not occur. The defendant has no right to a hearing for which she has not provided or proffered even a scintilla of legally cognizable support.[2]

In the alternative, the Court should direct the defendant promptly to make a substantive proffer about the documents and/or testimony that will allegedly create a genuine factual dispute about the existence of a promise not to investigate or prosecute her if Salame pled guilty.

II.     If the Hearing Proceeds, the Court Should Resolve Several Matters

Should the Court proceed with the hearing, the Government requests that the Court resolve the following matters meaningfully in advance of such hearing:

*First*, the Government renews its request (Dkt. 57 at 2) that the Court direct Mayer Brown to produce documents responsive to the Rule 17 subpoena—in particular, attorney notes of the April 28 and May 25, 2023 virtual meetings at issue—in advance of the hearing. In particular, given that Mayer Brown has been in receipt of the subpoena since September 19, 2025, and the hearing has already been delayed by several weeks, the Court should direct Mayer Brown to produce documents responsive to the subpoena no later than five business days prior to the hearing.

*Second*, for the reasons explained in the Government's letters dated September 19 and 22, 2025, and above, the Court should preclude Bond from testifying, or, at a minimum, limit her testimony to contemporaneous communications with her former attorneys from Mayer Brown

---

[2] For the reasons stated in the Government's opposition to the defendant's motion to dismiss, the defendant still would not be entitled to dismissal of the Indictment even if a hearing were to demonstrate that a promise had been made not to investigate or prosecute her if Salame pled guilty. (*See* Dkt. 43 at 11-17).

Hon. George B. Daniels
September 29, 2025
Page 4

concerning the contents of the April 28 and May 25, 2023 virtual meetings between those attorneys and the Government. (Dkt. 57 at 1; Dkt. 60 at 6-7).

*Third*, for the reasons explained in the Government's letters dated September 19 and 22, 2025, should Bond be permitted to testify, the Court should permit the Government to cross-examine Bond regarding aspects of the underlying case that bear on her credibility. (Dkt. 57 at 2; Dkt. 60 at 7).

*Fourth*, for the reasons stated in the Government's letter dated September 22, 2025, the Court should deny Bond's unsupported request for "discovery" from the Government, including of privileged internal materials, and to expand the scope of former U.S. Attorney Danielle Sassoon's testimony beyond what was authorized in the Department of Justice's *Touhy* response. (Dkt. 60 at 7-10).

                                                               Respectfully submitted,

                                                                SEAN S. BUCKLEY
                                                                Attorney for the United States, Acting Under
                                                                Authority Conferred by 28 U.S.C. § 515

                                            By: s/ Stephanie Simon
                                                                Stephanie Simon
                                                                Daniel C. Richenthal
                                                                Assistant United States Attorneys
                                                               (212) 637-2581/2109

Enclosures

cc:    All counsel of record (by ECF)

       Matthew D. Ingber, Esq.; Andrew S. Marovitz, Esq.; Lauren R. Noll, Esq., Counsel to Mayer Brown LLP (by email)