# EXHIBIT D

**PRIVILEGED AND CONFIDENTIAL**
**ATTORNEY WORK PRODUCT AND/OR**
**ATTORNEY-CLIENT COMMUNICATION**

**M E M O R A N D U M**

July 30, 2024

**TO:**      File

**FROM:**      Mayer Brown LLP

**RE:**      Bond – SDNY Attorney Proffer Outline



EXHIBIT
**Bond 15**

[REDACTED]

time.  Michelle no longer has access to her campaign email, work email from ADAM or the FTX Slack channel, all of which she used to communicate in and about the timeframe in question. [REDACTED]

[REDACTED]

[REDACTED]











































---

[3] Total number is $251,653--but it's not exact since some of the assets are approximate





## VIII.  <u>Statements by the FTX Prosecution Team</u>

- In spring of last year, the prosecutors assigned to FTX made statements suggesting it would cease its investigation of Michelle's campaign, which led Ryan to plead guilty to conspiracy to operate an unlicensed money transmitting business and conspiracy to make unlawful political contributions with the belief that doing so would cause Your Office to cease investigating Michelle.

- Specifically, in <u>April 2023</u>, although Ryan and Michelle made every effort to comply with your Office's requests for documents and assist with its investigation, including through numerous attorney proffers, the AUSAs decided that certain "covert steps" against Ryan and Michelle were necessary to further their investigation – namely, they executed a search warrant for the content of their cell phones, material that they already had at their disposal by virtue of Ryan's voluntary cooperation and Michelle's response to a Grand Jury subpoena. Indeed, Ryan and Michelle had already produced 595,217 pages of documents and 6,789 pages of documents to the SDNY, respectively.

- On <u>April 28, 2023</u>, Jason and I had a WebEx videoconference with prosecutors, including AUSA Danielle Sassoon, to discuss the status of the investigation. Ms. Sassoon asked whether Mayer Brown would continue to represent Michelle given that, as a result of the SDNY's analysis of Ryan's finances, her status in the investigation had shifted from purely being a witness.

o  Jason said that we would consult with our clients, to which Ms. Sassoon responded – and we could see that she was reading from talking points -- by (i) encouraging early disposition, and (ii) noting that, although they couldn't make promises outside the four corners of a plea agreement, "as often is the practice here, if we conclude as to Ryan, that would conclude this facet of the investigation." In context, we understood that to mean that they would cease investigating the conduct relating to Michelle's campaign if Ryan took a plea.

- Both Jason and I had long careers in DOJ and were taken aback by the fact that such an offer would be explicitly stated like that.  In the many cases we handled and supervised as AUSAs, neither of us had seen that type of inducement presented in pre-charging discussions so it is something that was taken seriously.  The fact that Danielle was reading from talking points also made us believe that it was sincere, and not a thoughtless or off-hand comment.

- As I am sure you know, Ryan plead guilty on September 7, 2023.  A significant motivation for Ryan in deciding to take that plea was the understanding that your Office would discontinue the investigation of his conduct relating to Michelle's campaign – and Michelle, the mother of his child and his two stepchildren – if he took a plea.  We had been operating under the understanding that the Office would honor that statement until we received Sheb's message in April of this year.

- Now, we understand that the FTX prosecution team conveyed to you this this statement was walked back in a conversation with us on May 25, 2023.  We have gone back and scoured our notes and have no record of that being said.

  o  Since this incident occurred, we have heard of one instance where this type of "cold comfort" statement has been made in pre-charging or plea discussions, but in the instance in which we have heard of it being done, the non-promised benefit has been honored.

  o  I have also spoken to recently departed alums from your Office and they have confirmed that they have never heard of something like this being floated, and certainly would expect it to be honored if it was.

- I should also say, because of the FTX team's statements, not only was Ryan prejudiced by being led to believe that his non-SBF related conduct would not be further investigated if he took a guilty plea, but if that statement had not been made to us, it is likely that Michelle would not have spoken to the government in an effort to support Ryan in the bond and PSR process.  They had a baby together and made life decisions based on Your Office's course of dealing here.

- With respect to her own case, Michelle was additionally prejudiced by Your Office's course of conduct:

  o  She does not have access to emails, texts, or other documents that would have otherwise been preserved, given the SDNY's assurances that they would not continue with this part of the investigation.

26

      o  Specifically, she did not work to preserve records during the last year-plus, especially from ADAM, which was dissolved during this time period.

            ■  Additionally, Michelle made important life decisions with the impression that the matter had been resolved, in reliance on statements made by the SDNY. For example, she had a baby, knowing that her partner was facing jail time but thinking that she at least would be around and went forward with a custody trial concerning her elder two children who need and rely on her as their mother.

- Michelle's divorce case, which is still on-going, has already been negatively impacted by the actions of this Office. For example, the FTX team included purportedly "anonymized" statements in Ryan's sentencing submission about his relevant conduct relating to his contributions to Michelle. Though she was not mentioned by name, it is obvious to anyone reading the submission that it referenced (unproven) allegations against Michelle (e.g., referenced a close associate who was a failed congressional primary candidate). Her estranged husband and his attorneys took notice and repeated the unproven allegations in a lengthy filing to the family court in an attempt to influence the outcome of the case. Michelle has faced difficulties in her divorce case due to this conduct; she should not lose her children over it.







