

*U.S. Department of Justice*

*United States Attorney
Southern District of New York*

*The Jacob K. Javits Federal Building
26 Federal Plaza, 37th Floor
New York, New York 10278*

October 13, 2025

**BY ECF**

The Honorable George B. Daniels
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *United States v. Michelle Bond*, 24 Cr. 494 (GBD)

Dear Judge Daniels:

The Government respectfully writes in the above-captioned matter regarding the aspect of the Court's order dated October 9, 2025, and docketed on October 10, 2025, directing "both parties . . . to produce all documents, created on or before Ms. Bond's indictment on August 19, 2024, that indicate whether or not a promise was made that Ms. Bond would not be prosecuted." (Dkt. 71 ("Order") at 2). As written, the Court's Order appears to call for the Government to produce internal documents protected from disclosure by the attorney-client privilege, work product doctrine, the deliberative process privilege, the law enforcement privilege, or any other applicable privilege or protection, notwithstanding that the Government has not waived any such privilege or protection. The Government respectfully objects to any such disclosure, and further respectfully requests that the Court confirm that it did not intend to order the Government to produce such internal and privileged documents.[1]

I.   **Background**

On August 25, 2025, Bond served *Touhy* requests on the Government, which included, as relevant here, a subpoena *duces tecum* seeking the following categories of documents:

> 1. All communications in any format between the United States Attorney's Office for the Southern District of New York and the law firm of Mayer Brown LLP or any other attorney acting as counsel for Ryan Salame;
>
> 2. All communications in any format between United States Attorney's Office for the Southern District of New York and the law firm of Mayer Brown LLP or any other attorney acting as counsel for Michelle Bond;

---

[1] In the event the Court orders the Government to produce privileged or otherwise protected documents, the Government respectfully requests that any such order be stayed to allow the Government to determine whether appellate review may be appropriate.

3. All "talking points", scripts, or prepared statements utilized by Danielle Sassoon in any conversation, meeting or Zoom or Teams or other call with counsel for Ms. Bond or Mr. Salame;

4. Any internal notes, emails or memoranda (other than those already produced) of Ms. Sassoon, Mr. Roos, any other [Assistant U.S. Attorney ("AUSA")] in the [U.S. Attorney's Office for the Southern District of New York ("SDNY")] or any federal law enforcement officer related to the subject matter of the hearing before Judge Daniels, *i.e.*, the inducement/promise that Ms. Bond would not be prosecuted if Mr. Salame pled guilty.

On September 11, the Government served its *Touhy* response. (*See* Ex. A). With respect to requests 1 and 2 in the subpoena *duces tecum*, the Department of Justice ("DOJ" or the "Department") declined to authorize the production of documents, on the ground that the subpoena sought documents or information that are both irrelevant and, in any event, equally available from third parties. (*See* Ex. A at 4). With respect to requests 3 and 4 in the subpoena *duces tecum*, DOJ also declined to authorize production, among other reasons, on the ground that the subpoena sought internal documents and communications protected from disclosure by multiple privileges, including but not limited to information protected by the attorney-client privilege, work product doctrine, the deliberative process privilege, and the law enforcement privilege. (*See* Ex. A at 4-5).

On September 21, 2025, Bond moved to compel production of documents sought in her *Touhy* request. (*See* Dkt. 58 at 4-5). By order dated October 9, 2025, the Court appeared to grant Bond's motion in part, to the extent it directed "both parties . . . to produce all documents, created on or before Ms. Bond's indictment on August 19, 2024, that indicate whether or not a promise was made that Ms. Bond would not be prosecuted." (Order at 2). However, the Order did not address whether it was meant to apply to the production of privileged or otherwise protected documents.

## II. Relevant Law

DOJ responses to subpoenas are governed by its *Touhy* regulations. 28 C.F.R. §§ 16.21 to 16.29; *see United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (authorizing such regulations). As relevant here, the regulations direct DOJ to consider "[w]hether [such] disclosure is appropriate under the relevant substantive law concerning privilege. *Id.* § 16.26(a). Most courts in this district apply the "arbitrary and capricious" standard of review to a DOJ decision not to authorize the production of documents. *See, e.g., Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, No. 19 Civ. 9193 (PGG) (SLC), 2023 WL 5498962, at *5 n.7 (S.D.N.Y. Aug. 25, 2023). Under that standard, the Court should only order production if the DOJ "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of

agency expertise." *Adler v. United States Dep't of Just.*, No. 18 Civ. 2188 (PAC), 2018 WL 4571677, at *4 (S.D.N.Y. Sept. 24, 2018) (citations omitted).[2]

Communications, notes, and other documents prepared by AUSAs and other government employees in the course of a criminal investigation and prosecution are generally protected by the attorney-client privilege, work product doctrine, the deliberative-process privilege, and the law enforcement privilege. *See, e.g.*, *Sorin v. Dep't of Justice*, 280 F. Supp. 3d 550, 561 (S.D.N.Y. 2017) (applying work product doctrine to AUSA memos and notes that "discuss litigation strategy, legal theories, proper investigatory steps based on findings in the investigation, and issues that might arise over the course of potential prosecutions"), *aff'd sub nom. Sorin v. Dep't of Justice*, 758 F. App'x 28 (2d Cir. 2018); *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005) (deliberative process privilege extends to "documents reflecting … deliberations comprising part of a process by which governmental decisions … are formulated"); *In re the City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) (discussing scope of law enforcement privilege and need to prevent "interfere[nce] with an investigation" and preserve "the ability of a law enforcement agency to conduct future investigations").

### III. Discussion

Two of the requests in Bond's subpoena *duces tecum* specifically seek the production of internal SDNY "talking points," scripts, or prepared statements, and internal notes, emails, or memoranda between AUSAs and any other law enforcement officers. As courts have routinely recognized, such materials are protected work product. *Sorin*, 280 F. Supp. 3d at 562 (documents that were prepared by AUSAs "because of" a prosecution constitute protected work product); *see also N.Y. Times Co. v. Dep't of Justice*, 939 F.3d 479, 494 (2d Cir. 2019) (noting that prosecutor's memoranda prepared "in anticipation of possible criminal prosecutions" were protected attorney work product).

The Government has never waived any applicable privilege with respect to these requested materials and indeed has consistently maintained that it has not waived privilege, including in its *Touhy* response and its communications with the Court. (*See* Ex. A; Dkt. 60 at 7-10). Nor did the Government waive privilege when it filed on the docket its notes from the April 28 and May 25, 2023 virtual meetings between the Government and Mayer Brown. Such documents—which reflect a factual summary of communications between the Government and third parties, not legal advice, internal deliberations, or attorney mental impressions—are neither privileged nor work product, so the production of those documents cannot result in a waiver. *See generally A. Michael's Piano, Inc. v. F.T.C.*, 18 F.3d 138, 146 (2d Cir. 1994) ("The attorney work product privilege protects 'the files and the mental impressions of an attorney . . . reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways' prepared in anticipation of litigation." (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)) (alteration in *A. Michael's Piano*)). At most, the

---

[2] Even if the Court were to analyze the denial under the standard applicable to subpoenas under the Rules of Criminal Procedure, the result would be the same.

Hon. George B. Daniels
October 13, 2025
Page 4

Government's notes constitute fact work product, the disclosure of which does not result in a subject-matter waiver even of opinion work product, much less the waiver of any other privilege from disclosure. *See In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) ("[F]act work product may encompass factual material, including the result of a factual investigation. In contrast, opinion work product reveals the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative, and is entitled to greater protection than fact work product." (internal quotation marks and citations omitted)); *The Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345, 367-68 (E.D.N.Y. 2009) (collecting cases and noting that "courts have been reluctant to hold that implied waiver of non-opinion work product extends to opinion work product"). Accordingly, DOJ's declination to produce documents in response to requests 3 and 4 could not have been arbitrary and capricious. *See Monterey Bay*, 2023 WL 5498962, at *5 n.7.

Given that certain of Bond's document requests specifically called for the production of privileged or otherwise protected documents, the Court's Order, which does not specifically address the privilege questions raised by these documents, appears to call for the Government to produce internal documents protected from disclosure by the attorney-client privilege, work product doctrine, the deliberative process privilege, the law enforcement privilege, or any other applicable privilege or protection. As noted above, the Government objects to any such disclosure and requests that the Court confirm that it did not intend to direct the Government to produce such documents.

Respectfully submitted,

SEAN S. BUCKLEY
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515

By: <u>s/ Stephanie Simon</u>
Stephanie Simon
Daniel C. Richenthal
Assistant United States Attorneys
(212) 637-2581 / 2109

cc:   All counsel of record (by ECF)