# Exhibit A

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

September 11, 2025

**By Email**
Eric R. Breslin
Duane Morris LLP
ERBreslin@duanemorris.com

    Re:    *Touhy* Requests in *United States v. Michelle Bond*, No. 1:24-cr-00494 (GBD)

Dear Mr. Breslin:

On behalf of the Department of Justice ("DOJ") and its component, the United States Attorney's Office for the Southern District of New York ("SDNY"), we write in response to your letter dated August 25, 2025 to Assistant United States Attorney ("AUSA") Stephanie Simon, attaching (1) a subpoena to Produce Documents, Information, or Objects in a Criminal Case, dated August 25, 2025, directed to the SDNY; and (2) five Subpoenas to Testify at a Hearing or Trial in a Criminal Case, all dated August 25, 2025, seeking the testimony of five current and former AUSAs at a hearing on September 25, 2025, in the above referenced criminal matter (the "Bond Prosecution") (together the "Requests"). This letter provides a determination regarding these subpoenas pursuant to the DOJ's *Touhy* regulations, 28 C.F.R. §§ 16.21-16.29.

### I.   The *Touhy* Requests

Your client, Ms. Bond, seeks the following documents:

1.  All communications in any format between the United States Attorney's Office for the Southern District of New York and the law firm of Mayer Brown LLP or any other attorney acting as counsel for Ryan Salame;

2.  All communications in any format between United States Attorney's Office for the Southern District of New York and the law firm of Mayer Brown LLP or any other attorney acting as counsel for Michelle Bond;

3.  All "talking points", scripts, or prepared statements utilized by Danielle Sassoon in any conversation, meeting or Zoom or Teams or other call with counsel for Ms. Bond or Mr. Salame;

4. Any internal notes, emails or memoranda (other than those already produced) of Ms. Sassoon, Mr. Roos, any other AUSA in the SDNY or any federal law enforcement officer related to the subject matter of the hearing before Judge Daniels, *i.e.*, the inducement/promise that Ms. Bond would not be prosecuted if Mr. Salame pled guilty.

In addition to the requested documents, Ms. Bond seeks the testimony on the above-listed topics at a September 25, 2025, pre-trial evidentiary hearing of the following current and/or former SDNY employees:

1.  former AUSA (and later United States Attorney ("USA")) Danielle Sassoon,

2. former AUSA Andrew Rohrbach,

3. former AUSA Samuel Raymond,

4. AUSA Nicholas Roos, and

5. AUSA Nathan Rehn

Your August 20, 2025, letter asserts that the requested documents and testimony are relevant to Ms. Bond's pending motion to dismiss the indictment based on the argument that the Government attorneys that prosecuted Ms. Bond's husband, Ryan Salame, allegedly made a promise that if Mr. Salame were to plead guilty, the Government would cease the investigation into Ms. Bond. Your letter further argues that the documents and testimony are relevant to the issue of whether or not the Government made a promise not to prosecute.

The Government previously produced notes from virtual between SDNY AUSAs and attorneys from Mayer Brown LLP ("Mayer Brown") on April 28, 2023, and May 25, 2023, which are attached as C and E to Mr. Breslin's declaration in this matter. *See* ECF No. 41.

## II. The DOJ *Touhy* Regulations

Federal regulations govern the response of United States agencies and departments to subpoenas and other discovery demands such as yours. *See generally* 5 U.S.C. § 301.

The procedural and substantive factors governing DOJ's determination are set forth in the agency's "*Touhy*" regulations. *See* 28 C.F.R. §§ 16.21 to 16.29 (the "DOJ *Touhy* regulations"); *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (authorizing such regulations). The regulations "provide guidance for the internal operations of the Department of Justice," and do not create substantive rights. 28 C.F.R. § 16.21(d). Ordinarily, a party seeking to obtain oral testimony from DOJ must first submit an affidavit, or, if that is not feasible, a statement by the party or by the party's attorney, setting forth a summary of the testimony sought. *Id.* § 16.23(c). In considering disclosure, DOJ will make a determination regarding the party's demand, in light of the considerations codified in the DOJ *Touhy* regulations. *See, e.g.*, *id.* § 16.23(a). Specifically, the DOJ *Touhy* regulations identify several considerations that DOJ officials should evaluate in deciding whether to authorize disclosure in response to a subpoena or other demand. *See id.* § 16.26.

DOJ officials should consider "[w]hether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose." 28 C.F.R. § 16.26(a)(1). Federal Rules of Criminal Procedure 17, and the case law interpreting it, provides the applicable rule of procedure governing subpoenas in criminal matters. *See id.* Under Rule 17(c), a subpoena seeking production of documentary evidence must be reasonable and not oppressive. *United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965) ("Unlike the rule in civil actions, a subpoena duces tecum in a criminal action is not intended for the purpose of discovery; the document sought must at that time meet the tests of relevancy and admissibility."). To establish that the subpoena is appropriate, "[t]he moving party must demonstrate '(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and

inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general fishing expedition.'" *United States v. Shestakov*, No. 23 CR.16 (JHR), 2025 WL 507523, at *1 (S.D.N.Y. Feb. 14, 2025) (quoting *United States v. Nixon*, 418 U.S. 683, 699-700 (1974)). Courts apply the same standard under Rule 17(c) of reasonableness and not oppressiveness when evaluating whether to quash subpoenas *ad testificandum* seeking to compel testimony. *See, e.g., Stern v. U.S. Dist. Court for Dist. of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000); *United States v. Lemay*, 21-cr-573 (MKV), 2025 WL 1547716, at *2 (S.D.N.Y. May 30, 2025).

DOJ officials should also consider "[w]hether [such] disclosure is appropriate under the relevant substantive law concerning privilege." 28 C.F.R. § 16.26(a)(2).

The DOJ *Touhy* regulations further provide that "disclosure will not be made by any Department official" if it would reveal certain categories of protected information set forth in 28 C.F.R. § 16.26(b). Among other things, disclosure is prohibited if it "would violate a statute . . . or a rule of procedure." 28 C.F.R. § 16.26(b)(1). Disclosure is also barred if it "would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigatory techniques and procedures the effectiveness of which would thereby be impaired." *Id.* § 16.26(b)(5). The law enforcement privilege is designed "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re City of New York*, 607 F.3d 923, 941 (2d Cir. 2010) (quoting *In re Dep't of Inv. of City of New York*, 856 F.2d 481, 484 (2d Cir. 1988)). "An investigation . . . need not be ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed to the public." *In re City of New York,* 607 F.3d at 944 (internal quotation marks omitted).

"Once a court has determined that the law enforcement privilege applies," there is a "strong presumption against lifting the privilege." *Id.* at 945 (internal quotation marks omitted). This presumption may be overcome only if the party seeking disclosure shows "(1) that its suit is non-frivolous and brought in good faith, (2) that the information sought is not available through other discovery or from other sources, and (3) that the information sought is important to the party's case." *Id.* (alterations and internal quotation marks omitted). "With respect to the importance of the information sought, . . . a *compelling* need is required." *Id.* (internal quotation marks omitted). And even if the presumption against disclosure is overcome, "disclosure is required only if [the requesting party's] compelling need outweighs the public interest in nondisclosure." *Id.*

Applying these considerations, DOJ will make appropriate disclosures when warranted. *See* 28 C.F.R.§ 16.26(c).

**III.      *Touhy* Determination**

We have carefully considered the Requests and applying the factors set forth in the DOJ *Touhy* regulations, make the following determinations with respect to those Requests.

   a. Subpoena *Duces Tecum*

*First*, the subpoena *duces tecum* seeks documents or information that are not relevant to the Bond Prosecution, or are not material to preparing your client's defense. For the reasons explained in the Memorandum of the United States in Opposition to Michelle Bond's Motions to Dismiss and to Suppress, ECF No. 43, Ms. Bond has no legal right to invoke any purported promise made to Mr. Salame in connection with his guilty plea. *See Wright v. U. PO*, No. 10-CV-5127 (MKB), 2021 WL 2779451, at *18 (E.D.N.Y. July 2, 2021) ("Non-parties to [a plea] agreement suffer no due process deprivation as a result of a breach of another defendant's plea agreement. . . . Under general contract law principles, a contract typically vests only its signatories with rights, and non-parties usually have no substantive interest in seeing the contract enforced." (internal quotation marks and citation omitted)). Moreover, no such promise appears in Mr. Salame's plea agreement, which contains an integration clause that disclaims any promises outside the plea agreement, and that understanding is confirmed by Mr. Salame's sworn statements during his plea allocution, *see United States v. Salame,* S7 22 Cr. 673 (LAK), Dkt. 283 at 18-19 (Sept. 7, 2023 Plea Tr.). *See In re Altro*, 180 F.3d 372, 376 (2d Cir. 1999) ("where—as here—the Government incorporates into the plea agreement an integration clause expressly disavowing the existence of any understandings other than those set forth in the plea agreement, a defendant may not rely on a purported implicit understanding in order to demonstrate that the Government is in breach."). Accordingly, the documents sought are not legally relevant to your client's defense, and we decline to authorize disclosure as inconsistent with Federal Rules of Criminal Procedure 17(c), which provides the applicable rule of procedure governing a subpoena for production of documents. *See* 28 C.F.R. § 16.26(a)(1).

*Second*, we further decline to authorize disclosure of documents in response to Document Request Nos. 1 and 2 in the subpoena *duces tecum*, both of which seek communications between the SDNY and attorneys from law firm of Mayer Brown, as inconsistent with Rule 17(c) because the *Touhy* request does not establish that the communications "are not otherwise procurable . . . by exercise of due diligence." *Nixon,* 418 U.S. at 699-700. To the contrary, the communications sought are equally available from Mayer Brown, which at the time represented Ms. Bond.[1]

*Third*, we further decline to authorize disclosure of documents in response to Document Request Nos. 3 and 4 in the subpoena *duces tecum*, both of which seek internal SDNY documents and communications related to the Bond Prosecution and the prosecution of Mr. Salame in *United States v. Salame,* S7 22 Cr. 673 (LAK) (the "Salame Prosecution") as such documents would be protected by multiple privileges. *See* 28 C.F.R. § 16.26(a)(2). For the avoidance of doubt, there was no "inducement/promise that Ms. Bond would not be prosecuted if Mr. Salame pled guilty," which is what Request No. 4 seeks. However, to the extent that Request No. 4 can be more broadly constructed to encompass internal SDNY communications related to the subject matters discussed

---

[1] Based upon that fact alone, the Request is not only unreasonable, but would be unduly burdensome on the Government.

4

on the April 28, 2023, and May 25, 2023, virtual meetings, such communications are protected from disclosure by multiple privileges, including but not limited to information protected by the attorney client privilege, work product doctrine, the deliberative process privilege, and the law enforcement privilege. While some of the applicable privileges are qualified, the requests do not make a particularized showing of need for information protected by that privilege. And with regard to attorney work product, even if your client could make a showing of substantial need for specific information, and inability to obtain its substantial equivalent by other means, prosecutors' mental impressions, conclusions, opinions, and legal theories would remain protected. *See Hickman v. Taylor*, 329 U.S. 495, 512-13 (1947); *cf.* Fed. R. Civ. P. 26(b)(3)(B).

    b. Subpoenas *Ad Testificandum*

*First*, to the extent the subpoenas *ad testificandum* seek information that is not relevant to the Bond Prosecution, or is not material to preparing your client's defense, we decline to authorize disclosure as inconsistent with Federal Rule of Criminal Procedure 17. *See United States v. Duncan*, No. 18-CR-289 (SHS), 2019 WL 2210663, at *2-3 (S.D.N.Y. May 22, 2019) (precluding testimony in part because such evidence was irrelevant after considering the evidence described in a *Touhy* letter). As discussed above, the information sought is not legally relevant to Ms. Bond's defenses.

*Second*, to the extent that the subpoenas *ad testificandum* seek testimony about communications between SDNY AUSAs and attorneys at Mayer Brown (Topics 1 and 2), such testimony is equally available from Ms. Bond's own former attorneys. Furthermore, these subpoenas seek evidence that is cumulative, since the Government has already produced its notes from the two virtual meetings at issue between SDNY AUSAs and attorneys at Mayer Brown, *see* ECF Nos. 40-3 & 40-5. A subpoena for testimony from current and former AUSAs regarding the same subject matter that is addressed by contemporaneous notes that have already been produced is not reasonable, particularly when there has been no contradictory testimonial or documentary evidence produced from any source actually present during those conversations, including from the Mayer Brown attorneys.[2] In the absence of any credible evidence that contradicts or calls into question the notes produced by the Government, the subpoenas *ad testificandum* appear to seek purely cumulative evidence, with no justification set forth for doing so, and thus are inconsistent with Federal Rule of Evidence 403, which provides an applicable rule of procedure governing the admission of any contemplated testimony from the current and former AUSAs at trial. Federal Rule of Evidence 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence." Fed. R. Evid. 403. Similarly, the subpoenas *ad testificandum* seek the testimony of five different current and former AUSAs on the same topics, that testimony is cumulative. Accordingly, we decline to authorize testimony from current or former AUSAs unless testimonial or documentary evidence is presented from the Mayer Brown attorneys who were present during the April 28, 2023, and May 25, 2023, virtual meetings, and only if that testimony creates a material factual dispute as to the

---

[2] In a June 2024 email from a Mayer Brown attorney to SDNY AUSAs, that Mayer Brown attorney indicates that their notes do not "reflect the statement . . . about a disposition with Mr. Salame not resolving the investigation of Ms. Bond's conduct," ECF No. 40-4. However, the Mayer Brown notes themselves have never been provided to the Government, nor has any Mayer Brown attorney provided sworn statements about what occurred during the May 2023 virtual meeting between SDNY AUSAs and Mayer Brown attorneys.

5

content of the notes of those meetings previously produced by the SDNY. To the extent that we authorize any testimony (governed by the conditions outlined below), we authorize the testimony of only one individual who was present and spoke on both of the calls in question.

*Third*, to the extent that the subpoenas *ad testificandum* seek testimony about internal SDNY discussions (Topics 3 and 4), that information is protected from disclosure by, among other things, the attorney client privilege, the deliberative process privilege, the attorney work product privilege, and the law enforcement privilege, and we thus decline to authorize such disclosure. *See* 28 C.F.R. §§ 16.26(a)(2); 16.26(b)(5). Moreover, those topics seek information that "would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigatory techniques and procedures the effectiveness of which would thereby be impaired," and we thus decline to authorize disclosure. *Id.* § 16.26(b)(5). These requests also have not made a particularized showing of compelling need for information protected by 28 C.F.R. § 16.26(b)(5).

Consistent with the foregoing determinations, we authorize former AUSA and USA Danielle Sassoon to provide limited testimony in accordance with the following conditions:

*First,* former USA Sassoon will only be permitted to provide testimony if: (1) the Court first receives documentary evidence in the form of contemporaneous notes or testimonial evidence from attorneys at Mayer Brown who were present on the phone calls in question; *and* (2) that testimony creates a genuine issue of disputed material fact regarding the content of the SDNY's notes of those calls, which have already been produced.

*Second,* former USA Sassoon will only be permitted to testify as to non-privileged matters within her personal knowledge regarding the following topic:

- Discussions between the SDNY and Mayer Brown regarding the effect of Mr. Salame's plea on whether Ms. Bond would be investigated or prosecuted, which the Government maintains are not and cannot be relevant to a motion to dismiss.

We do not authorize the testimony of any other current or former AUSA.

## IV.  Conclusion

Please contact AUSA Dominika Tarczynska at (212) 637-2748 if you have any questions concerning this determination.

Nothing in this letter waives any applicable privileges or other protections from disclosure or any objection to the Requests. All applicable privileges or other protections from disclosure,

and all objections to the Requests, including to the admissibility at trial of the information sought, are expressly reserved.

              Sincerely,

              SEAN S. BUCKLEY
              Attorney for the United States
              Acting Under Authority Conferred by
              28 U.S.C. § 515

      By:   */s/ Dominika Tarczynska*
            DOMINIKA TARCZYNSKA
            Assistant United States Attorney
            86 Chambers Street, 3rd Floor
            New York, New York 10007
            Telephone: (212) 637-2748
            E-mail: dominika.tarczynska@usdoj.gov

cc: AUSA Stephanie Simon