**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA

v.

MICHELLE BOND,

　　　　　Defendant.

Docket No. 1:24-cr-000494-GBD

### DEFENDANT'S MOTIONS *IN LIMINE* TO EXCLUDE EVIDENCE OF GUILTY PLEA AND ADMIT EVIDENCE OF DIVORCE AND CUSTODY PROCEEDINGS

Edward C. O'Callaghan
**CAHILL GORDON & REINDEL LLP**
900 16th Street, N.W. Suite 500
Washington, DC 20006
Telephone: 202-862-8900
EOcallaghan@cahill.com

Kiersten A. Fletcher
Louis A. Capizzi III
**CAHILL GORDON & REINDEL LLP**
32 Old Slip
New York, NY 10005
Telephone: 212-701-3000
KFletcher@cahill.com
LCapizzi@cahill.com

*Attorneys for Defendant Michelle Bond*

1

Ms. Bond respectfully submits these motions *in limine* to (1) exclude evidence of Ryan Salame's guilty plea and related plea materials, and (2) admit evidence of Ms. Bond's contemporaneous divorce and custody proceedings. Ms. Bond files these motions pursuant to the Court's June 24, 2026 Order, but anticipates filing additional motions *in limine* based on, among other things: (i) any notice provided by the Government under Rule 404(b); (ii) any 18 U.S.C. § 3500 material produced in advance of trial; (iii) any expert disclosures by the Government, a schedule for which has not been set or proposed; (iv) any additional material produced in response to the defense motions filed on July 31, 2026; and (v) any developments in the defense strategy arising from the Government's disclosures, including the identification of potential experts in advance of trial.

## I. THIS COURT SHOULD EXCLUDE RYAN SALAME'S PLEA MATERIALS UNDER RULE 403 AND THE CONFRONTATION CLAUSE

On September 7, 2023, Ryan Salame, Ms. Bond's now-husband and a former executive of an FTX subsidiary, pled guilty to conspiracy to defraud the United States and willfully violate the Federal Election Campaign Act, and conspiracy to operate an unlicensed money transmitting business. Dkt. 50-1 at 4. With respect to the political-donation charge, Mr. Salame admitted to making "political contributions in [his] name that were funded by transfers from the bank accounts of [a corporate] subsidiary" with the understanding "that FEC reporting would state that [Mr. Salame], rather than [the subsidiary], made these political contributions." Transcript of Proceedings as to Ryan Salame re: Plea at 21:18–22:9, *United States* v. *Salame*, No. 1:22-cr-00673-LAK (S.D.N.Y. Sept. 7, 2023), Dkt. 283. The central premise of Ms. Bond's Indictment is that she and Mr. Salame "illegally funded [Ms. Bond's] campaign." Indictment ¶¶1, 3. The Government is thus likely to characterize Mr. Salame as Ms. Bond's co-conspirator at trial.

2

The Court should preclude the Government from introducing or referring to Mr. Salame's guilty plea or any related plea materials, because their minimal probative value is substantially outweighed by the risk of unfair prejudice to Ms. Bond. Courts applying Rule 403 routinely exclude co-conspirator guilty plea evidence because any limited probative value is substantially outweighed by the risk that the jury will draw an improper inference of guilt by association. In *United States* v. *Massino*, 319 F.Supp.2d 295, 300 (E.D.N.Y. 2004), the district court excluded co-defendant guilty-plea evidence under Rule 403 as "substantially more prejudicial than probative," reasoning that the "inherently interrelated nature of the charges" created an "enormous risk" that the jury would treat the pleas as evidence of the defendant's culpability. *See also United States* v. *Priolo*, No. 21-CR-566, 2025 WL 679413, at *26 (E.D.N.Y. Mar. 4, 2025) (excluding co-conspirator conviction evidence under Rule 403 where it was "highly prejudicial" and "risk[ed] misleading the jury to believe that [the defendant] may have been involved in the conduct to which [the co-conspirator] confessed"); *United States* v. *Miller,* 644 F. Supp. 3d 373, 377 (E.D. Ky. 2022) (excluding guilty pleas and convictions of non-testifying co-conspirators under Rule 403 because "[e]vidence of guilty pleas or convictions in a trial involving multiple co-conspirators poses a particularly high risk of unfair prejudice to a defendant, aggravating the concern that the defendant on trial 'will be found guilty by sheer association with guilty non-testifying co-defendants'") (citation omitted). The same result is warranted here.

*First*, Mr. Salame's plea materials lack any probative value as to Ms. Bond's guilt, knowledge, or intent. Mr. Salame's plea is an admission of his own guilt, not evidence of Ms. Bond's state of mind or participation in any charged offense. As *Massino* recognized, guilty pleas are "not particularly probative" because an alleged co-conspirator may plead guilty for reasons

3

having little to do with the Government's proof against the defendant on trial. *Massino*, 319 F.Supp.2d at 300–301. *See also Priolo*, 2025 WL 679413, at *26.

*Second*, the unfair prejudice created by the fact or content of Mr. Salame's guilty plea cannot be cured through a limiting instruction. As the Second Circuit explained in *United States* v. *Becker*, the presumption that juries follow limiting instructions is overcome where there is an "overwhelming probability" that the jury will be unable to follow the instruction and the evidence is "devastating to the defense." 502 F.3d 122, 130–131 (2d Cir. 2007). *Massino* applied that same principle in the guilty-plea context, excluding co-defendant plea evidence under Rule 403 despite the availability of a limiting instruction. *Massino*, 319 F.Supp.2d at 300. Following this reasoning, the Court should bar the Government from introducing or referring to Mr. Salame's guilty plea or related plea materials at trial under Rule 403.

Moreover, the Court should bar the admission of Mr. Salame's guilty plea and related plea materials—including his plea allocution—if he does not testify at trial. The Supreme Court has held that "[w]here testimonial evidence is at issue," the Sixth Amendment "demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford* v. *Washington*, 541 U.S. 36, 68 (2004). Applying *Crawford*, the Second Circuit has held that "a plea allocution by a co-conspirator who does not testify at trial may not be introduced as substantive evidence against a defendant unless the co-conspirator is unavailable and there has been a prior opportunity for cross-examination." *United States* v. *McClain*, 377 F.3d 219, 222 (2d Cir. 2004). A plea allocution is testimonial because it "is formally given in court, under oath, and in response to questions by the court or the prosecutor." *Id.* at 221. Because Ms. Bond has had no prior opportunity to cross-examine Mr. Salame, the introduction of that allocution or related plea materials would violate the Sixth Amendment, and those materials must be excluded. *See*

*Massino*, 319 F.Supp.2d at 299–300 (holding that because "a guilty plea cannot and does not exist apart from" the testimonial confession it embodies, the Confrontation Clause bars its admission).

II.    **THE COURT SHOULD ADMIT EVIDENCE OF MS. BOND'S DIVORCE AND CUSTODY PROCEEDINGS BECAUSE THE EVIDENCE IS RELEVANT AND ADMISSIBLE UNDER RULE 401 AND ITS PROBATIVE VALUE IS NOT SUBSTANTIALLY OUTWEIGHED BY ANY RISK OF UNFAIR PREJUDICE OR JURY CONFUSION UNDER RULE 403**

At trial, the defense intends to introduce evidence of Ms. Bond's then-pending divorce and related custody action initiated against her on August 8, 2022 to establish the legitimate purpose of the transfers from Mr. Salame to Ms. Bond and Ms. Bond's understanding and intent with respect to those transfers.

**A. The Evidence is Relevant and Admissible Under Federal Rule of Evidence 401**

The Court should permit the defense to introduce evidence concerning a then-pending family court litigation brought against Ms. Bond on August 8, 2022.[1]

This evidence is relevant under Rule 401 because it has a tendency to make more probable two facts of consequence that, together, establish the legitimate purpose of the transfers from Mr. Salame to Ms. Bond and negate *mens rea*. Specifically, the evidence will tend to show (i) Ms. Bond's actual financial circumstances and motivations at the time of the two allegedly illegal payments from Mr. Salame—the June 28, 2022 transfer of $313,544.32 (the "June 28 Transfer") and the August 31, 2022 transfer of $215,000 (the "August 31 Transfer"); and (ii) the reason Ms. Bond and Mr. Salame—who by mid-2022 had bought a home together, were trying to have a child, and were in a committed relationship—had formally consolidated their assets despite not yet being married. Because the Government's case turns on proving that these transfers were made for the

---

[1] Ms. Bond anticipates identifying the specific records she intends to introduce from the divorce and custody proceedings at the time she designates her exhibits. By filing this motion, she does not concede that the entirety of the record from those proceedings is admissible.

purpose of influencing Ms. Bond's federal election campaign and that she knew her conduct was unlawful, evidence establishing each payment's lawful, non-campaign purpose and the true nature of the relationship between Ms. Bond and Mr. Salame goes to the heart of Ms. Bond's defense on both elements, satisfying Rule 401's low threshold for relevance.

In *United States* v. *Litvak*, the Second Circuit confirmed that evidence bearing on a defendant's honest belief that her conduct was not unlawful or improper readily satisfies Rule 401's low threshold for relevance, even where the evidence is only circumstantially probative of the defendant's state of mind. *See* 808 F.3d 160, 188–190 (2d Cir. 2015) (holding the district court abused its discretion in excluding evidence that a defendant's supervisors approved similar conduct by other employees because it supported an inference that the defendant "held an honest belief that his conduct was not improper or unlawful"). As the court explained in *Litvak*, "'since [good faith] may be only inferentially proven, no events or actions which bear even remotely on its probability should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly outweigh' its relevance." *Id.* at 190 (quoting *United States* v. *Brandt*, 196 F.2d 653, 657 (2d Cir. 1952)). The same logic applies here with even greater force: the evidence of Ms. Bond's own pending family court litigation bears directly on her motivations for engaging in the allegedly illegal transactions at issue.

Here, the evidence carries substantial probative value. It is necessary to show that Ms. Bond understood the June 28 Transfer as Mr. Salame's purchase of her fractional interest in property she still held with her now-former husband, and the August 31 Transfer as support for the legal fees she anticipated incurring in the custody action he had just initiated—the kind of informal, intra-relationship financial arrangement Ms. Bond and Mr. Salame relied on precisely because Ms. Bond's unfinalized divorce prevented them from marrying and formally consolidating

their assets.  The nature of the family court proceeding also provides a lawful, non-campaign purpose that Ms. Bond plainly recognized.  The pending divorce is equally essential to rebutting the Government's implicit portrayal of Mr. Salame as an ordinary "individual" donor subject to the $2,900 per-election, per-candidate contribution cap applicable in 2022.  *See* Indictment ¶49. At the time of these transfers, Ms. Bond and Mr. Salame functioned in every practical sense as spouses—they had bought a home together, were trying to have a child, and had intertwined their finances—and Ms. Bond's unresolved and protracted divorce was the only thing standing between them and marriage.  The jury is entitled to know that Mr. Salame was not an arm's-length individual donor, but a committed partner supporting the woman who was, in all but name, his wife.

### B.  The Evidence Should Not Be Excluded Under Federal Rule of Evidence 403

Having established the evidence's relevance under Rule 401, the Court should also find that its probative value is not substantially outweighed by any risk of unfair prejudice or confusion of the issues under Rule 403.

Because the evidence is essential to negate the campaign purpose and intent elements that the Government must prove, Rule 403 favors its admission, particularly where, as here, the evidence is central to the defendant's claim of innocence.  *See United States* v. *White*, 692 F.3d 235, 246–248 (2d Cir. 2012) (holding that evidence was not substantially outweighed by potential for jury confusion where it was highly probative and "crucial to proving [the defense] theory," and explaining that "[p]articularly when the evidence is central to the defendant's claim of innocence . . . categorical exclusion 'infringe[s] upon a weighty interest of the accused' and threatens 'the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial

testing'") (quoting *United States* v. *Scheffer*, 523 U.S. 303, 308 (1998); *United States* v. *Cronic*, 466 U.S. 648, 656 (1984)).

In addition, the probative value of this evidence is not substantially outweighed by the risk of unfair prejudice or jury confusion.  Evidence of Ms. Bond's divorce and custody proceedings does not have an "undue tendency to suggest decision on an improper basis, [such as] an emotional one" and would not "cause the jury to be influenced by sympathies having no bearing on the merits of the case"—to the contrary, this evidence bears directly on essential elements of Ms. Bond's defense and is not the kind of sympathy-inducing evidence that Rule 403 is intended to exclude. *See Old Chief* v. *United States*, 519 U.S. 172, 180 (1997) (quoting FED. R. EVID. 403 advisory committee's note); *United States* v. *Watts*, 934 F. Supp. 2d 451, 481 (E.D.N.Y. 2013) (quoting *United States* v. *Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991)).  For the same reason, and as explained above, the probative value of this evidence is not substantially outweighed by "any potential for jury confusion" because the evidence is "crucial" to establishing Ms. Bond's defense theory.  *See White*, 692 F.3d at 247–248.

Dated: July 31, 2026                              Respectfully submitted,


                                                 */s/ Edward C. O'Callaghan*
                                                 Edward C. O'Callaghan
                                                 **CAHILL GORDON & REINDEL LLP**
                                                 900 16th Street, N.W. Suite 500
                                                 Washington, DC 20006
                                                 Telephone: 202-862-8900
                                                 EOcallaghan@cahill.com

                                                 Kiersten A. Fletcher
                                                 Louis A. Capizzi III
                                                 **CAHILL GORDON & REINDEL LLP**
                                                 32 Old Slip
                                                 New York, NY 10005
                                                 Telephone: 212-701-3000
                                                 KFletcher@cahill.com
                                                 LCapizzi@cahill.com

                                                 *Attorneys for Defendant Michelle Bond*