# EXHIBIT 6

# CAHILL GORDON & REINDEL LLP

900 16TH STREET, N.W. SUITE 500
WASHINGTON, DC 20006

TELEPHONE: (202) 862-8900
WWW.CAHILL.COM

| | | |
|---|---|---|
| 32 OLD SLIP<br>NEW YORK, NY 10005<br>(212) 701-3000 | 221 W. 10th STREET<br>WILMINGTON, DE 19801<br>(302) 884-0000 | 20 FENCHURCH STREET<br>LONDON EC3M 3BY<br>+44 (0) 20 7920 9800 |

June 23, 2026

**VIA EMAIL**

Stephanie Simon
David Felton
Assistant United States Attorneys
Southern District of New York
Stephanie.simon2@usdoj.gov
David.felton@usdoj.gov

Re: Request for *Brady* Materials, Additional Rule 16 Discovery,
and Privilege Screening Procedures

Dear AUSAs Simon and Felton:

This letter seeks all information pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) (*Brady*), Rule 16 of the Federal Rules of Criminal Procedure, and the screening procedures regarding the execution of search warrant affidavits in this matter. Cahill Gordon & Reindel LLP (Cahill) demands all discovery to which Ms. Bond is entitled to in preparation of her defense. We expect that the United States Attorney's Office for the Southern District of New York (SDNY) will cooperate with our requests and expeditiously provide the materials, as set forth below, to Ms. Bond. As you are no doubt aware, the Justice Manual instructs prosecutors "in preparing for trial, to seek all exculpatory and impeachment information from all the members of the prosecution team."[1] DOJ's broad discovery policy "requires disclosure by prosecutors of information beyond that which is 'material' to guilt[.]"[2] SDNY must comply in full with its discovery and ethical obligations and should provide Ms. Bond with the evidence sought in this letter in order for her to have the fair trial that the United States Constitution requires.

The Indictment against Ms. Bond makes baseless accusations that are refuted by evidence—some of which Cahill believes is in the possession of the government and has not yet

---

[1] *See* Justice Manual, 9-5.001.

[2] Internal citation omitted. *See id.* at Section C.

been fully disclosed to the defense. For instance, the Indictment alleges that "Bond did not perform any services for [FTX] pursuant to the Consulting Agreement."[3] SDNY is well aware that Ms. Bond was a highly successful attorney and consultant who performed paid professional services—including legal, policy, government-affairs, event-related, and other services—for FTX and Sam Bankman-Fried (SBF) during the relevant timeframe in the Indictment. All information in possession of the government indicating that Ms. Bond performed any work for SBF, FTX, or any of its subsidiaries is exculpatory and material to her defense.

Some of this evidence likely resides in the government's extensive files developed in its SBF/FTX investigation. In the government's search warrant affidavits for Ryan Salame's and Ms. Bond's Apple iCloud accounts (iCloud Search Warrant) and Apple iPhones (iPhones Search Warrant), the government heavily relied upon and used the SBF/FTX investigation evidence and indictment to support its basis for probable cause.[4] In fact, the government attached the SBF Indictment as Exhibit A in the iCloud Search Warrant. Any evidence derived from the SBF/FTX investigation that could exculpate Ms. Bond or call into question the government's fictitious theories that she performed no services for FTX must be provided to the defense. Specifically, we are requesting any materials that indicate Ms. Bond performed any type of work for SBF, FTX, or any subsidiary of FTX, including but not limited to, travel logs, pictures, chats, emails, calendar invites, notes from meetings or calls, reimbursement for expenses and travel costs, access to FTX Slack or other communications, and desk or workspace access. This request includes but is not limited to materials preparing for or memorializing company all-hands meetings, executive meetings, political meetings, location visits, events, speaking engagements, congressional hearings, roundtables, conferences, forums, and political conferences, as well as congressional preparation materials, policy documents, drafts of such materials, Hill and regulator outreach materials, contact-tracking spreadsheets, legislative bills or proposals, regulatory applications or proposals, FTX Foundation or Crypto for Good materials, and interviews with witnesses regarding Ms. Bond's role with FTX. Cahill requests that SDNY confirm in writing that it has disclosed all of this evidence to Ms. Bond, including all evidence in its possession from Sullivan & Cromwell LLP in its representation of the FTX bankruptcy estate.

Additionally, the Indictment, the iCloud Search Warrant, and the iPhone Search Warrant discuss a wire transfer of approximately $313,544.32 to Ms. Bond. The speaking Indictment and the affidavits, however, are silent regarding the context and reason for this wire transfer, despite having evidence that undercuts the government's allegations. For instance, in the search warrant affidavits, the government referenced in footnote 3 that E████ Z████, through attorneys, "████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████"[5] However, the government omitted

---

[3] Indictment ¶ 12, *United States v. Bond*, No. 1:24-cr-00494 (S.D.N.Y. Aug. 19, 2024), ECF No. 1.

[4] *See* Agent Aff. in Supp. of Application for Search Warrant for Stored Electronic Communications ("iCloud Search Warrant Aff."), USAO_01530085 at ¶¶ 8–11 & Ex. A (S.D.N.Y. Apr. 11, 2023); Agent Aff. in Supp. of Application for Search and Seizure Warrant ("iPhone Search Warrant Aff."), USAO_00057269 at ¶¶ 8–11 & Ex. A (S.D.N.Y. May 1, 2023).

[5] *See* iCloud Search Warrant Aff., USAO_01530085, at ¶ 14c n.3 (emphasis added); iPhone Search

from the search warrant affidavits and the Indictment how this information was related to the $313,544 wire transfer. It appears that the government knew when it submitted the search warrant affidavits that there was exculpatory evidence related to the sale of Bond's home, but such information was not fully explained in the affidavits or even mentioned in the Indictment. Furthermore, Cahill does not have the documents referenced in footnote 3 in the search warrants, which clearly constitute *Brady* material. Ms. Bond seeks any documents, communications, interviews or information that reference or relate to her prior home with the address of 3279 Van Hazen Street NW, Washington, D.C. that are in the possession of the government. Cahill also seeks to know when the government first became aware that the $313,544 wire transfer was related to the sale of Ms. Bond's home, why such material information was not disclosed in the affidavits, and whether it was disclosed to grand jurors when seeking the Indictment.

The evidence we have received from the government indicates that Ms. Bond, a Republican who openly supported President Trump during her unsuccessful eight-week primary campaign, was the only federal candidate Cahill is aware of who was charged and prosecuted for the conduct described in the search warrants, notwithstanding the government's assertions in search warrant affidavits that there were tens of millions of dollars in illegal campaign donations to other identified candidates. The government stated the following in the iCloud Search Warrant regarding this issue:



.6

The government reiterated this point, claiming that "                                                                                    
                                                                                    
                                                            "7 If there were "          
                        " in purported illegal campaign contributions related to the SBF investigation, it stands to reason that SDNY would have pursued charges against numerous candidates, both Democrat and Republican, rather than single out Ms. Bond, an unsuccessful Republican primary candidate, as the **only** candidate to charge criminally. Given these affidavit statements, and SDNY's track record of bringing a single indictment, there is reason to probe whether Ms. Bond's support of President Trump was at least a contributing factor to her being the sole candidate charged, and evidence related to prosecutorial bias should be disclosed to the defense. Cahill seeks any evidence that would indicate a vindictive prosecution in this matter based on Ms. Bond's politics, including any exculpatory communications, documents, and information regarding the candidates referenced in the search warrants, any internal government communication as to why

---

Warrant Aff., USAO_00057269, at ¶ 10c n.3.

6 *See* iCloud Search Warrant Aff., USAO_01530085, at ¶ 8c (emphasis added).

7 *See* iCloud Search Warrant Aff., USAO_01530085, at ¶ 8d (emphasis added).

the government did not pursue other prosecutions of candidates who received these funds, and any materials from the SBF/FTX investigation related to such candidates.

Additionally, the iCloud search warrant references a Signal chat called "Donation Processing" where SBF's employees referenced "████████████████████████ ████████████████████████████"[8]  The contents of this Signal chat were introduced in the criminal proceedings against SBF as Government Exhibit 475.[9]  Those contents reveal that the "Donation Processing" chat coordinated donations to numerous candidates and political organizations, including contributions to the Delaware Democratic Party, the New York State Democratic Committee, the DNC, and candidates such as Katie Hobbs and Beto O'Rourke, yet Ms. Bond does not appear to be referenced in the chat.[10]  Cahill seeks the full contents of that Signal chat or any documents that supported probable cause to search Ms. Bond's communications—or bear on Ms. Bond's case in any way—as well as the identity of all "██████ ███████" referenced therein.  Cahill also requests all prior proffer statements, FBI 302s, notes, reports, and communications reflecting statements by Caroline Ellison, Nishad Singh, Ryan Salame, or any other witness concerning alleged straw-donor arrangements, Ms. Bond's role or lack thereof, or any prior inconsistent, impeachment, or exculpatory information bearing on Ms. Bond's defense.

In the discovery that has been provided to Cahill, there are a limited number of FBI 302s. Given the length of this investigation and evidence referenced in the search warrants, we believe that we do not have all of the relevant FBI 302s that are in the possession of the government.  For example, we have not been able to identify interviews with E███ Z███ (or his attorneys), employees of Axiom Strategies, individuals and co-conspirators referenced in the search warrant, members of ADAM, or any other witnesses the government intends to use at trial.  The search warrant affidavits themselves reference "████████████████████████████████ ███████" and "████████████████████████████████████" confirming that such interviews took place, yet no corresponding 302s or memoranda have been produced.  The only substantive FBI 302 that we have received thus far pertains to Ms. Bond's surety interview for Mr. Salame. While we understand well SDNY's practice of holding relevant 302s from the defense until its 3500 productions are made closer to trial, here, based on the information regarding evidence presented to the court, and potentially not presented to the court, to support its probable cause findings in authorizing the referenced search warrants, these 302s are necessary for the defense to make a fair assessment as to whether a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) is justified and a motion to suppress unlawfully obtained evidence must be pursued.  We hereby request pursuant to Rule 16, *Brady*, and *Giglio v. United States*, 405 U.S. 150 (1972), that you immediately provide any FBI 302s related to the investigation of Ms. Bond for this assessment of the merits of a suppression motion and potential *Franks* hearing.

---

[8] *See* iCloud Search Warrant Aff., USAO_01530085, at ¶ 8g (emphasis added).

[9] *See* Gov't Ex. 475, *United States v. Bankman-Fried*, 1:22-cr-00673 (S.D.N.Y. Oct. 16, 2023) (introduced at Trial Tr. 1423:9–16, "Donation Processing" Signal chat).

[10] *See id.*

5

Cahill is also requesting the privilege "███████████████" that Special Agent Breitenbach described in her search warrant affidavits.[11]  As you are aware, Ms. Bond was represented by Mayer Brown LLP during the time of the investigation and also retained family law attorneys.  Although the search warrant affidavits mention that Ms. Bond was an attorney, they do not acknowledge that she was represented by counsel in this matter.  Notably, the affidavits state only that the review will be conducted pursuant to "████████████████████████" and that a "███████████" will be used "█████████████" but provide no detail as to what those procedures actually entailed.  As such, Cahill requests information regarding when the government became aware that Ms. Bond was represented by attorneys related to its investigation and the filter protocols or "██████████████" that were used to search her iCloud, Apple iPhone, and any other of Ms. Bond's communications so that the defense can assess any potential motions regarding evidence derived from privileged or potentially privileged materials.

Very truly yours,

Edward C. O'Callaghan

---

[11] *See* iCloud Search Warrant Aff., USAO_01530085, at ¶ 27; iPhone Search Warrant Aff., USAO_00057269, at ¶ 20.