# EXHIBIT 7



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 2, 2026

**BY EMAIL**

Edward C. O'Callaghan
Cahill Gordon & Reindel LLP
900 16th Street N.W.
Suite 500
Washington, D.C. 20006
eocallaghan@cahill.com

Re:    *United States v. Michelle Bond*, 24 Cr. 494 (GBD)

Counsel:

The Government writes in response to defendant Michelle Bond's letter, dated June 23, 2026 ("Ltr."), requesting "*Brady* Materials, Additional Rule 16 Discovery, and Privilege Screening Procedures." As an initial matter, we are aware of our discovery and disclosure obligations, including those arising under Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, *Giglio v. United States*, 405 U.S. 150 (1972), and the Jencks Act, 18 U.S.C. § 3500. We take those obligations seriously and will continue to comply with those obligations irrespective of whether you specifically request such material, or how you characterize that material. With respect to the defendant's specific requests, we endeavor to respond directly to those below. By voluntarily providing this information, the Government is not limiting its evidence, arguments, or legal theories at trial in any way. Should you have any additional questions regarding the discovery, we are willing to confer at a mutually convenient time.

## I.    Materials Regarding Bond's Work for FTX

The defendant seeks "any materials that indicate Ms. Bond performed any type of work for SBF, FTX, or any subsidiary of FTX," including "all evidence in [the Government's] possession from Sullivan & Cromwell LLP in its representation of the FTX bankruptcy estate." (Ltr. 2). Your letter further states that "[a]ll information in possession of the government indicating that Ms. Bond performed any work for SBF, FTX, or any of its subsidiaries is exculpatory and material to her defense." (Ltr. 2).

As an initial matter, the Government does not agree that "[a]ll information in possession of the government indicating that Ms. Bond performed any work for SBF, FTX, or any of its subsidiaries is exculpatory and material to her defense." Regardless, as to this request, we have complied with our discovery obligations under Rule 16 and will continue to do so. As a courtesy, we note that we have already produced records related to FTX, including but not limited to records obtained from Sullivan & Cromwell LLP. (*See, e.g.*, USAO_00009811-00034588, 01571004-01571101, 01541848-01542084).

## II.    Materials Regarding Bond's Prior Home

The defendant seeks "any documents, communications, interviews or information that reference or relate to her prior home with the address of 3279 Van Hazen Street NW, Washington, D.C. that are in the possession of the government." (Ltr. 3). As to this request, we have complied with our Rule 16 discovery obligations and will continue to do so.

To the extent the materials the defendant seeks may fall within the Jencks Act, the Jencks Act provides that "[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). Rule 16 similarly exempts from production "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case," as well as "statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." Fed. R. Crim. P. 16(a)(2). In light of these provisions, requests for discovery of Jencks Act materials in advance of trial are uniformly denied in this District. Indeed, there is no legal basis to order the disclosure of statements of Government witnesses before their direct testimony at trial. *See In re U.S.*, 834 F.2d 283, 284-87 (2d Cir. 1987) (issuing a writ of mandamus reversing district court's order directing the Government "to produce all oral statement made by the defendants and coconspirators that the Government planned to offer at trial as admissions of a defendant"); *United States ex rel. Lucas v. Regan*, 503 F.2d 1, 3 n.1 (2d Cir. 1974); *United States v. Sebastian*, 497 F.2d 1267, 1268-69 (2d Cir. 1974); *United States v. Percevault*, 490 F.2d 126, 132 (2d Cir. 1974). As discussed in further detail below (*see infra* Part V), we intend to begin producing any Jencks Act material substantially closer to trial.

The defendant further seeks "to know when the government first became aware that the $313,544 wire transfer was related to the sale of Ms. Bond's home, why such material information was not disclosed in the affidavits, and whether it was disclosed to grand jurors when seeking the Indictment." (Ltr. 3). The Government does not agree that "the $313,544 wire transfer" was "related to the sale of Ms. Bond's home." Regardless, the defendant is not entitled to that information. There is no requirement, under Rule 16 or otherwise, that the Government disclose when it "first became aware" of any piece of information, or explain whether or why a particular piece of information was or was not included in any form of legal process or disclosed to the grand jury.[1] Indeed, disclosure of grand jury materials and information related to grand jury proceedings is not authorized by Rule 16 and is permitted only when ordered upon "a strong showing of particularized need." *United States v. Sells Engineering*, 463 U.S. 418, 443 (1983); *see also Dennis v. United States*, 384 U.S. 855, 869-70 (1966). This is because grand jury proceedings are afforded a "presumption of regularity" that may be dispelled only by particularized proof of irregularities in the grand jury process. *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994). Accordingly, there is no legal or factual basis for these requests.

---

[1] To the extent the defendant seeks these materials to support a potential suppression motion or hearing pursuant to *Franks v. Delaware*, 438 U.S. 150 (1972), the defendant is not entitled to discovery on that basis, for the reasons discussed *infra* Part IV.

### III.     Materials Regarding Supposed Prosecutorial Bias

The defendant next seeks "any evidence that would indicate a vindictive prosecution in this matter based on Ms. Bond's politics," including, among other things, "internal government communications as to why the government did not pursue other prosecutions of candidates who received . . . funds [from FTX], and any materials from the SBF/FTX investigation related to such candidates." (Ltr. 3-4).

As an initial matter, any motion on behalf of the defendant alleging vindictive prosecution would be untimely, as the deadline for filing pretrial motions in this matter was May 7, 2025 (Dkt. 37), and the defendant cannot establish "good cause" for a late-filed motion under Federal Rule of Criminal Procedure 12(c)(3). Further, any such motion would be completely baseless, and the defendant is not entitled to discovery to support such a motion.

A defendant is entitled to dismissal of a charge on the ground of alleged vindictiveness only if she demonstrates "'actual' vindictiveness, or if there is a presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action." *United States v. Johnson*, 171 F.3d 139, 140 (2d Cir. 1999) (per curiam). To establish actual vindictiveness, a defendant must prove that the prosecutor's charging decision was a "direct and unjustifiable penalty," *United States v. Goodwin*, 457 U.S. 368, 384 n.19 (1982) (internal quotation marks omitted), that resulted "solely from the defendant's exercise of a protected legal right," *id.* at 380 n.11. To establish a presumption of prosecutorial vindictiveness, a defendant "must show that the circumstances of a case pose a realistic likelihood of such vindictiveness." *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) (internal quotation marks omitted). The Second Circuit "has consistently adhered to the principle that the presumption of prosecutorial vindictiveness does not exist in a pretrial setting." *United States v. Stewart*, 590 F.3d 93, 122 (2d Cir. 2009); *see also, e.g.*, *United States v. Hinton*, 703 F.2d 672, 678 (2d Cir. 1983) ("[A] presumption of prosecutorial vindictiveness does not exist in a pre-trial setting.").

The standard for obtaining discovery in support of such a claim is "rigorous." *Sanders*, 211 F.3d at 717 (internal quotation marks omitted). "To warrant discovery, the defendant must show some evidence of genuine animus, not the mere possibility that animus might exist under the circumstances." *Id.* at 718 (internal quotation marks omitted). This is for good reason: "It would be too easy for defendants to obtain discovery on vindictive prosecution claims if all that was required was to identify a potential motive for prosecutorial animus." *Id.*

The defendant comes nowhere close to meeting the "rigorous" standard for showing entitlement to the discovery she seeks. *Cf. United States v. Guan*, No. 24 Cr. 322 (VM), 2026 WL 160995, at *10 (S.D.N.Y. Jan. 21, 2026). She cannot show a shred of evidence of "genuine animus." Further, many of documents the defendant requests, if they exist, appear to be attorney work product, covered by the deliberative process privilege, and/or are outside of the scope of what would be reasonably necessary to try to advance her asserted claims.

### IV.    Materials Supporting Probable Cause for Search Warrants

The defendant seeks the full contents of a particular Signal chat supposedly referenced in a warrant to search the defendant's iCloud account "or any documents that supported probable cause to search Ms. Bond's communications—or bear on Ms. Bond's case in any way—as well as the identity of all 'specific candidates' referenced therein" in order to assess "whether a hearing pursuant to *Franks v. Delaware*, 438 U.S. 150 (1972) is justified and a motion to suppress unlawfully obtained evidence must be pursued." (Ltr. 4).

As to this request, we have complied with our Rule 16 discovery obligations and will continue to do so. However, as a courtesy, we are producing to you herewith the Signal chat introduced at trial in *United States v. Bankman-Fried*, 22 Cr. 673 (LAK) (S.D.N.Y.) as GX 475, which is in the form in which the chat was provided to the Government. (*See* USAO_01572436-01572446).

As to the remaining aspects of your request, any *Franks* motion would be untimely. The deadline for filing pretrial motions in this matter was May 7, 2025. (Dkt. 37). The defendant, who at all times was represented by counsel, filed multiple motions prior to that deadline, including motions to suppress. (Dkt. 38). Given that the defendant has long had access to the search warrant applications necessary to assess whether to make any pre-trial motions, and indeed filed suppression motions, the defendant cannot show "good cause" for any late-filed motion. Fed. R. Crim. P. 12(c)(3).

Even if any such motion were not time-barred, the defendant would not be entitled to the discovery she seeks. A search warrant affidavit is presumed reliable. *See Franks*, 438 U.S. at 171; *United States v. Klump*, 536 F.3d 113, 119 (2d Cir. 2008). "The task of a reviewing court is simply to ensure that the 'totality of the circumstances' afforded the [issuing judge] a 'substantial basis' for making the requisite probable cause determination." *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Gates*, 462 U.S. at 238). To invoke the *Franks* doctrine, the defendant must demonstrate that there were intentional misstatements or omissions in the search warrant affidavit and that those misstatements or omissions were material. *See United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003). The defendant must establish both components—*i.e.*, intent and materiality—by a preponderance of the evidence. *See Klump*, 536 F.3d at 119.

"The *Franks* standard is a high one[.]" *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991). To secure a *Franks* hearing, a defendant must make a "'*substantial preliminary showing*' that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (quoting *Franks*, 438 U.S. at 155, 170) (emphasis added). The burden to even obtain a *Franks* hearing is thus itself a heavy one, and such hearings are rare. *See, e.g.*, *United States v. Sandalo*, 70 F.4th 77, 86 (2d Cir. 2023) ("[T]he substantial preliminary showing standard imposes a 'high' burden on [the defendant]." (citation omitted)).

The defendant cannot make this preliminary showing and thus is not entitled to discovery. *See, e.g.*, *United States v. Messalas*, 612 F. Supp. 3d 93, 111 (E.D.N.Y. 2020) ("[D]iscovery

requests seeking to support a *Franks* challenge should be denied where a defendant has failed to make the preliminary showing necessary for a *Franks* hearing."); *United States v. Harding*, 273 F. Supp. 2d 411, 430 (S.D.N.Y. 2003) (defendant "is not entitled to wide-ranging discovery to canvass for evidence in support of his motion to suppress"); *see also United States v. Alexandre*, No. 22 Cr. 326 (JPC), 2023 WL 416405, at *14 (S.D.N.Y. Jan. 26, 2023). Indeed, the Supreme Court explained in *Franks* "that one of the benefits of requiring 'a substantial preliminary showing' was that it would 'prevent the misuse of a veracity hearing for purposes of discovery.'" *Messalas*, 612 F. Supp. 3d at 110-11 (quoting *Franks*, 438 U.S. at 170).

## V.    3500 Materials

The defendant makes a blanket request "pursuant to Rule 16, *Brady*, and *Giglio*," for "any FBI 302s related to the investigation of Ms. Bond." (Ltr. 4). The defendant also makes more specific requests for "the documents referenced in footnote 3 in the search warrants" related to the sale of the defendant's home, which your letter characterizes as "*Brady* material," and "all prior proffer statements, FBI 302s, notes, reports, and communications reflecting statements by Caroline Ellison, Nishad Singh, Ryan Salame, or any other witness concerning alleged straw-donor arrangements, Ms. Bond's role or lack thereof, or any prior inconsistent, impeachment, or exculpatory information bearing on Ms. Bond's defense." (Ltr. 3, 4).

As explained, we are aware of and will continue to comply with our discovery and disclosure obligations, including those arising under Rule 16, *Brady*, *Giglio*, and the Jencks Act. However, the Government does not agree that the information identified in your letter is in fact "exculpatory" or "*Brady* material." (Ltr. 3, 4). Your unilateral assertion that witness statements may include "*Brady*" does not itself render those materials subject to disclosure, let alone immediate disclosure months before trial. To the contrary, these requests seek witness statements to which the defendant is entitled, if at all, solely pursuant to Section 3500 or *Giglio*. As noted, it is the standard practice in this District that such material is produced shortly in advance of trial.[2] This is more than is required under the Jencks Act, in particular, which states that such material need not be produced until the close of the witness's direct testimony, *see* 18 U.S.C. § 3500, and satisfies the requirement that *Giglio* materials be produced "in sufficient time that the defendant

---

[2] *See, e.g.*, *United States v. Williams*, No. 22 Cr. 600 (NRB), 2023 WL 8602908, at *6 (S.D.N.Y. Dec. 12, 2023) ("Defendant's requests for early disclosure of impeachment materials and witness statements are premature and contrary to well-settled law holding that the Government is not generally required to disclose immediately all exculpatory and impeachment material upon a defendant's request."); *United States v. Cabrera*, No. 22 Cr. 10 (NRB), 2023 WL 4305023, at *5 (S.D.N.Y. June 29, 2023) ("[T]he requests for early disclosure of witness identities and impeachment materials are both contrary to well-settled law and premature."); *United States v. Thompson*, 13 Cr. 378 (AJN), 2013 WL 6246489, at *9 (S.D.N.Y. Dec. 3, 2013) (denying request for early production of Jencks Act material); *United States v. Hernandez*, No. 09 Cr. 625 (HB), 2010 WL 26544, at *6 (S.D.N.Y. Jan. 6, 2010) (declining to order immediate disclosure of *Giglio* material, because the Government stated it would provide both *Giglio* and Jencks Act material "shortly before trial"); *United States v. Davis*, No. 06 Cr. 911 (LBS), 2009 WL 637164, at *14 (S.D.N.Y. March 11, 2009) ("The Second Circuit has held that a request for immediate or early disclosure [of *Giglio* material] has no basis in the law.").

will have a reasonable opportunity to act upon the information efficaciously." *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007). Consistent with that well-established practice, we intend to begin producing any 3500 and *Giglio* material substantially closer to trial. The Government is available to meet and confer to discuss dates for pretrial disclosures.

Notwithstanding the foregoing, appended to this letter are reports and statements of certain potential trial witnesses, which are provided as a courtesy. The production of these materials does not indicate that the Government believes it has an obligation to disclose them now; rather, the Government makes this disclosure as a courtesy to assist you in preparing your defense. Nor does this disclosure constitute a waiver of the Government's right to withhold other such materials until and unless their disclosure is legally required, and any other protections provided by the Jencks Act or applicable Rules. The appended materials are all designated "Attorney's Possession Only" pursuant to the protective order governing discovery in this case.

## VI.    Privilege Screening Protocol

Lastly, the defendant seeks "the privilege '███████████████' that Special Agent Breitenbach described in her search warrant affidavits." (Ltr. 5).

The defendant is not entitled to that information. Rule 16 does not permit a defendant to demand information about the Government's internal processes, such as filter team protocols and instructions, whenever she wishes to assess their quality. *See* Fed. R. Crim. P. 16. "The use of a filter team is a common procedure in this District and has been deemed adequate in numerous cases to protect attorney-client communications." *In re Search Warrants Executed on Apr. 28, 2021*, No. 21 Misc. 425 (JPO), 2021 WL 2188150, at *2 (S.D.N.Y. May 28, 2021) (denying a pre-indictment "request for detailed information about the filter team review process,"). Details of the Government's filter review process are not ordinarily subject to disclosure through Rule 16. *See United States v. Weigand*, 482 F. Supp. 3d 224, 246 (S.D.N.Y. 2020), as corrected (Sept. 2, 2020) ("Under these circumstances, a 'taint protocol' is not 'material to preparing the defense' and so does not fall within the scope of Rule 16(a)(1)(E)."). For that reason, courts have denied defense motions to compel production of filter review protocols. *See, e.g., id.*

\*\*\*

To the extent this disclosure exceeds the scope of discovery mandated by the Federal Rules of Criminal Procedure, federal statute, or relevant case law, we are making this disclosure voluntarily and solely as a matter of discretion. By producing such materials to you, the Government does not waive its right to object to any future discovery requests beyond the ambit of its legal obligations.

Separately, we note that we have not received any reciprocal discovery to date. We renew our request for reciprocal disclosure from the defendant. Please confirm whether the defendant has, to date, met the defendant's respective reciprocal disclosure obligations under Rule 16(b). *See* Fed. R. Crim. P. 16(b)(1); *see also, e.g., United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2011

WL 723530, at *5 (S.D.N.Y. Feb. 25, 2011). Please also confirm whether the defendant recognizes that such obligations are continuing ones.

Very truly yours,

SEAN S. BUCKLEY
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515

By: /s/ Stephanie Simon
　　Stephanie Simon
　　David Felton
　　Assistant United States Attorneys
　　(212) 637-2581 / -2299