# EXHIBIT 11

# CAHILL GORDON & REINDEL LLP

900 16TH STREET, N.W. SUITE 500
WASHINGTON, DC 20006

TELEPHONE: (202) 862-8900
WWW.CAHILL.COM

| | | |
|---|---|---|
| 32 OLD SLIP<br>NEW YORK, NY 10005<br>(212) 701-3000 | 221 W. 10th STREET<br>WILMINGTON, DE 19801<br>(302) 884-0000 | 20 FENCHURCH STREET<br>LONDON EC3M 3BY<br>+44 (0) 20 7920 9800 |

July 8, 2026

**VIA EMAIL**

Stephanie Simon
David Felton
Assistant United States Attorneys
Southern District of New York
Stephanie.simon2@usdoj.gov
David.felton@usdoj.gov

Re: *United States v. Michelle Bond*, 24 Cr. 494 (GBD)

Dear AUSAs Simon and Felton:

We write on behalf of Michelle Bond, the defendant in the above-captioned case, in response to your letter dated July 2, 2026 (the "Response"), which in turn responds to our June 23, 2026 letter requesting various discovery materials (the "June 23 Letter"). While we appreciate the government's production of certain materials along with the Response, the Response still fails to address several critical questions raised in the June 23 Letter, and the accompanying production still falls short of satisfying the government's disclosure obligations. We write in an effort to resolve these outstanding issues without burdening the Court with additional motion practice, while reserving our rights to do so if we cannot reach resolution of the issues articulated in the June 23 Letter and this one.

As you are no doubt aware, "the government has an obligation under the Due Process Clause to disclose to the defense evidence that is material." *United States v. Persico*, 645 F.3d 85, 111 (2d Cir. 2011) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). Moreover, the government's subjective view of the evidence does not determine whether that evidence must be disclosed under *Brady*. *See DiSimone v. Phillips*, 461 F.3d 181, 195 (2d Cir. 2006) ("[I]f there were questions about the reliability of the exculpatory information, it was the prerogative of the defendant and his counsel-and not of the prosecution-to exercise judgment in determining whether the defendant should make use of it. . . To allow otherwise would be to appoint the fox as henhouse guard."); *United States v. Nejad*, 487 F.Supp.3d 206, 219-23 (S.D.N.Y. 2020) (finding that the government violated its disclosure obligations by failing to timely disclose what the court termed "conceded *Brady* material" that the defendant believed was "exculpatory for a slew of reasons," but that

prosecutors had initially believed was "wholly inculpatory"); *United States v. Stevens*, 2008 WL 8743218, at *5 (D.D.C. Dec. 19, 2008) ("[A] statement may be exculpatory and subject to disclosure to the defense, even if the government believes the statement is untrue and even if it later proves to be untrue."). The Response fails to address several requests in the June 23 Letter which we raise here again. We request that you respond, in writing, by **Friday, July 10, 2026**.

*First*, the June 23 Letter explained (at 2) that "the government's extensive files developed in its … investigation" of FTX and Sam Bankman-Fried likely contain significant information reflecting Ms. Bond's work for FTX. But the Response neither accepted nor rejected our position that the government must review the FTX investigation file for *Brady* and made no representation as to whether the government had done so. Please confirm: (1) as referenced in your search warrant affidavits in this matter, the FTX investigation file is in the possession of, or otherwise accessible to, the prosecution team handling Ms. Bond's case; and (2) whether the prosecution team in this case has reviewed the FTX investigation file for material favorable to the defense.

*Second*, as explained in the June 23 Letter (at 2-3), we have identified two particular categories of evidence that would materially aid Ms. Bond's defense, and thus constitute *Brady* material: (1) evidence that Ms. Bond genuinely performed work for FTX, Mr. Bankman-Fried, and/or any FTX subsidiary; and (2) evidence that the approximately $313,544 wire transfer to Ms. Bond's campaign originated from the legitimate sale of Ms. Bond's home. While we understand the government disagrees that these materials constitute *Brady* material, we nevertheless reiterate that it is *the defendant's* view of the evidence, not the government's that determines whether particular evidence is treated as *Brady*. And "[w]hen the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." *United States v. Agurs*, 427 U.S. 97, 106 (1976).

Against this legal standard, the production included with the Response creates significant doubt as to whether the government has fully searched and shared these two categories of materials. The Signal chat the government recently produced reflects coordinated donations to numerous candidates and organizations, none of which involved Ms. Bond. Her absence from this chat undermines the government's theory that FTX was looking to funnel illicit corporate campaign donations to Ms. Bond through purportedly fictitious payments for consulting services, Indictment ¶12. Similarly, the August 2024 Z███ interview notes reflect discussion about Ms. Bond "████████████████████████" and "████████████████████████████" USAO_WITNESS_000003. These notes of statements by at least one government witness suggest the government possessed materials indicating that Ms. Bond sold her house to obtain additional personal funds, *i.e.*, not donations, to use for her campaign. Neither of these documents included in the July 2 production were produced on the government's own initiative; and instead were shared only following our explicit request. We therefore renew our request for all material pertaining to whether Ms. Bond genuinely performed work for FTX, Mr. Bankman-Fried, and/or any FTX subsidiary, as well as our request for all evidence that the approximately $313,544 wire transfer to Ms. Bond's campaign originated from the legitimate sale of Ms. Bond's home. Notwithstanding your position that neither category of evidence constitutes *Brady* materials, please confirm whether the government has produced all evidence falling within either category.

3

*Third*, the June 23 Letter requested confirmation that the government has disclosed all evidence obtained from Sullivan & Cromwell LLP in connection with the FTX bankruptcy estate. The Response notes that the government has "already produced records related to FTX, including but not limited to records obtained from Sullivan & Cromwell LLP," but does not address whether *all* such records have been produced or whether that file has been reviewed for *Brady* material. Please confirm: (1) whether the Sullivan & Cromwell production is in the possession of this prosecution team; (2) whether the government has reviewed those materials for information favorable to the defense; and (3) whether, regardless of the answer to (2), the government has produced all materials obtained from Sullivan & Cromwell LLP.

*Finally*, the Response suggests that certain materials need not be produced at this time because they take the form of witness statements. "Complying with the Jencks Act," however, "does not shield the government from its independent obligation to timely produce exculpatory material under *Brady*—a constitutional requirement that trumps the statutory power of 18 U.S.C. § 3500." *United States v. Rittweger*, 524 F.3d 171, 181 n.4 (2d Cir. 2008). Please confirm that the government has reviewed the witness statements in its file for *Brady* material and has produced all such material to the defense.

Separate from the government's *Brady* obligations, we request prompt production of 3500 material to allow adequate time for Ms. Bond to prepare for trial and to comply with the Court's deadlines. As you know, after we sent the June 23 Letter—but before your Response—the Court set July 31, 2026 as the deadline for our pretrial motions, including motions *in limine*. The government's typical practice of producing 3500 material shortly before trial cannot be squared with a motions schedule that requires the defense to identify and frame its motions over three months before trial. This is especially so in a case like this one, where significant decisions regarding potential expert testimony are likely to feature prominently in trial. Additionally, these hindrances to formulating a fulsome defense strategy, flowing from the government's refusal to provide the requested witness-statement evidence, render premature the Response's own request (at 6-7) for reciprocal discovery: until Ms. Bond has a better idea of what sort of case she is defending against, she cannot be expected to know, let alone share, how she will mount that defense.

Given the upcoming deadline for motions *in limine* in this case, and the significant issues of expert discovery likely to arise, fairness to the defendant necessitates the government promptly produce 3500 material. Please confirm whether the government remains unwilling to do so. If the government remains so unwilling at this time, please provide a date by which you anticipate producing these materials.

\*   \*   \*

We are willing to confer regarding these issues at a mutually convenient time, and hope to resolve them without resorting to motion practice. Absent a prompt and complete response on the *Brady* and witness-statement issues addressed above, however, we are prepared to seek appropriate relief from the Court, including an extension of the deadline to file motions *in limine*. We look forward to your prompt reply.

4

Very truly yours,

<u>Edward C. O'Callaghan</u>