UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

MICHELLE BOND,

Defendant.

24 Cr. 494 (GBD)

**THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MICHELLE BOND'S MOTIONS *IN LIMINE***

SEAN S. BUCKLEY
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515

David R. Felton
Paul M. Monteleoni
Stephanie Simon
Assistant United States Attorneys
– Of Counsel –

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in response to defendant Michelle Bond's motions *in limine*. (Dkt. 121).[1]

## ARGUMENT

### I. The Defendant's Motion to Exclude Evidence of Salame's Guilty Plea and Related Plea Materials Should Be Denied as Moot

On September 7, 2023, Salame pleaded guilty before the Honorable Lewis A. Kaplan, United States District Judge, pursuant to a written plea agreement, to two conspiracies: one to defraud the United States and willfully violate the Federal Election Campaign Act, in violation of 18 U.S.C. § 371 and 52 U.S.C. §§ 30109, 30118, and 30122; and one to operate an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 371 and 1960. (Salame Dkt. 283).[2] In advance of Salame's plea proceeding, Salame, his attorneys, and the Government signed his plea agreement. The agreement enumerated the conduct for which Salame would not be further prosecuted criminally by the U.S. Attorney's Office for the Southern District of New York in consideration of his guilty plea (namely the offense conduct underlying the two counts to which he was pleading guilty), as well as four additional categories of offenses, including "willfully making excessive political contributions to a candidate for federal office in an amount in excess of the then-applicable limitation on individual contributions, and exceeding $25,000 in the calendar year 2022, and conspiracy to do the same, in violation of 18 U.S.C. § 371 and 52 U.S.C.

[1] The defendant also states without elaboration that she "anticipates filing additional motions *in limine* based on" at least five, non-exhaustive additional topics, including "any 18 U.S.C. § 3500 material produced in advance of trial" and "any developments in the defense strategy arising from the Government's disclosures." (Dkt. 121 at 2). To the extent the defendant files any such supplemental motions *in limine*, the Government reserves all rights, including to oppose on timeliness grounds.

[2] "Salame Dkt." refers to entries on the district court's docket in *United States v. Ryan Salame*, S7 22 Cr. 673 (LAK) (S.D.N.Y.).

§§ 30109 and 30116." (Salame Dkt. 491 Ex. 1 at 2). As described in Salame's Presentence Report, this portion of the agreement referred to unlawful excessive campaign contributions Salame made to the defendant's campaign when she ran for Congress in 2022. (Salame PSR ¶¶ 33-36). On May 28, 2024, Salame appeared for sentencing. Without objection, Judge Kaplan adopted the factual portions of the Presentence Report, including the portions describing Salame's unlawful contributions to the defendant's congressional campaign. (Salame Dkt. 448 at 6). Judge Kaplan then sentenced Salame principally to 90 months' imprisonment. (Salame Dkt. 448 at 24). Salame is currently serving his sentence.

The defendant moves to exclude evidence of Salame's guilty plea and related plea materials. (Dkt. 121 at 2-5). The Government does not presently intend to introduce in its case-in-chief evidence of Salame's guilty plea and related plea materials; accordingly, the Court should deny the motion as moot.

However, the Government reserves the right to seek to introduce such evidence if Salame testifies, as the defendant's motion appears to contemplate. (*See* Dkt. 121at 4 ("[T]he Court should bar the admission of Mr. Salame's guilty plea and related plea materials—including his plea allocution—*if he does not testify at trial*." (emphasis added))). If Salame testifies, the Government reserves the right to cross-examine Salame about his prior bad acts and the details of his prior federal convictions (including the nature of the convictions themselves) in order to impeach him, challenge his credibility, and attack his character for truthfulness. *See* Fed. R. Evid. 607, 608(b), 609, 611(b). Under such circumstances, evidence of Salame's felony convictions is plainly admissible. *See* Fed. R. Evid. 609(a)(1)(A) (noting that "for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence must be admitted, subject to Rule 403, in a . . . criminal case in which the witness is not a

defendant[]"). The Government also reserves the right to seek to introduce evidence regarding Salame's plea and related plea materials if the defendant opens the door, through her own testimony or otherwise, including for the purpose of impeaching her, challenging her credibility, or attacking her character for truthfulness.

## II. The Court Should Exclude Evidence of the Defendant's Divorce and Custody Proceedings as Irrelevant and Unfairly Prejudicial

The defendant seeks to admit "evidence of Ms. Bond's then-pending divorce and related custody action initiated against her on August 8, 2022." (Dkt. 121 at 5; *see also id.* at 5-8). As an initial matter, the defendant's motion should be denied because she fails to identify, or even describe with any level of specificity, the records or other information she seeks to admit. Instead, the defendant perfunctorily notes that she "anticipates identifying the specific records she intends to introduce from the divorce and custody proceedings at the time she designates her exhibits." (Dkt. 121 at 5 n.1). In the face of such a sparse, non-particularized evidentiary proffer, the Court should deny the defendant's inadequate blanket request. *See, e.g.*, *United States v. Bankman-Fried*, No. S6 22 Cr. 673 (LAK), 2023 WL 6283509, at *3 (S.D.N.Y. Sept. 26, 2023) (denying without prejudice motion *in limine* seeking "preliminary rulings on the admissibility of general categories of out-of-court statements as well as excerpted out-of-court statements of which the Court has been provided only with portions" because such "bases of admissibility cannot be applied in the abstract" and admissibility "ultimately must turn on characteristics of the particular items of evidence and the purposes for which they are offered[]"); *Dunham v. Lobello*, No. 11 Civ. 1223 (ALC), 2023 WL 3004623, at *1 (S.D.N.Y.

Apr. 19, 2023) (explaining that motions *in limine* "are meant for disputes over the admissibility of discrete items of evidence, not whole topics and sources of prospective evidence[]").[3]

Even putting that issue aside, for the reasons set forth below and in the Government's motions *in limine* filed on August 21, 2026 (*see* Part VI), which the Government incorporates by reference herein, the Court should preclude the defendant from offering evidence and argument concerning her divorce and custody proceedings under Rules 401 and 403. The defendant claims that such evidence is relevant because it "has a tendency to make more probable" (1) the defendant's financial motivations for receiving the June 28, 2022 transfer of $313,544.32 and the August 31, 2022 transfer of $215,000 from Salame, and (2) the interconnectedness of the defendant's finances with Salame's, which the defendant characterizes as tending to establish "each payment's lawful, non-campaign purpose and the true nature of the relationship between Ms. Bond and Mr. Salame goes to the heart of Ms. Bond's defense[.]" (Dkt. 121 at 5-6). The Government does not object at present to limited testimony, to the extent it is based on admissible non-hearsay evidence, that, at the time of the charged conduct, the defendant was in a romantic relationship with Salame and was in the process of getting divorced from her now ex-husband. However, details of the defendant's "unresolved and protracted divorce" and the fact that the defendant was involved in a dispute over the custody of her children (Dkt. 121 at 6-7), has no bearing on the defendant's guilt or innocence whatsoever. Instead, this is precisely the kind of irrelevant evidence that is routinely precluded on the ground that it seeks to unfairly generate sympathy for the defendant. *See, e.g.*, *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy whom

---

[3] Unless otherwise noted, internal quotation marks, citations, and brackets in case citations are omitted.

defendant had devoted his life to care for); *United States v. Battaglia*, No. 05 Cr. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); *see also United States v. Harris*, 491 F.3d 440, 447-48 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

To the extent there is any minimal relevance to the proposed evidence, its probative value is substantially outweighed by an unacceptable danger of unfair prejudice, confusing the issues, and misleading the jury. *See* Fed R. Evid. 403. Indeed, that the defendant was involved in a contentious divorce proceeding and custody dispute risks improperly inflaming the jury's emotions. *See, e.g.*, *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) (unfair prejudice exists when there is "the tendency of the evidence to prove some adverse fact not properly in issue . . . to unfairly excite emotions"); *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006) (unfair prejudice is to "unduly inflame the passion of the jury"); *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 170 (S.D.N.Y. 2006) (risk of prejudice from "proving an adverse *immaterial* fact, or by simply exciting the emotions of the jurors") (emphasis in original). And the *details* of such proceedings are not at all necessary for the defendant's proffered purposes for this evidence. *See, e.g.*, *Ozsusamlar*, 428 F. Supp. 2d at 170 ("[D]istrict courts must take care to determine whether there exists any alternative evidence with the same or greater probative value, but with a lesser threat of unfair[] prejudic[e]."); *Old Chief v. United States*, 519 U.S. 172, 182-83 (1997) ("If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by

unfairly prejudicial risk."); *see also Sowers v. R.J. Reynolds Tobacco Co.*, 975 F.3d 1112, 1121-22 (11th Cir. 2020) (information regarding a couple's marital disputes and husband's infidelity would be prejudicial and was appropriately excluded under Rule 403).

Further, the defendant appears to suggest that her financial relationship with Salame was similar to that of a married couple, although they were not formally married. (*See, e.g.*, Dkt. 121 at 6-7 (describing "the kind of informal, intra-relationship financial arrangement Ms. Bond and Mr. Salame relied on precisely because Ms. Bond's unfinalized divorce prevented them from marrying and formally consolidating their assets"); *id.* at 7 ("The pending divorce is equally essential to rebutting the Government's implicit portrayal of Mr. Salame as an ordinary 'individual' donor subject to the $2,900 per-election, per-candidate contribution cap applicable in 2022.")). To the extent she intends to do so, the defendant should be precluded from suggesting or offering evidence or argument that *had* she and Salame been married (they were not), the transactions charged in the Indictment as illegal campaign contributions *would have been* legal, or otherwise suggesting that she is being prosecuted based on a formality or technicality. As these matters are irrelevant to the only question the jury will have to decide—whether the charges have been proven beyond a reasonable doubt—introducing evidence on them could serve no proper purpose but to invite nullification, which is patently inappropriate. *See, e.g.*, *United States v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997) (jury nullification is "by no means a right or something that a judge should encourage or permit if it is within his authority to prevent."); *id.* at 614 ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent."); *United States v. Reese*, 933 F. Supp. 2d 579, 583 (S.D.N.Y. 2013) (precluding defendant from advancing arguments aimed at jury nullification and the overall propriety of the government's investigation).

Accordingly, the evidence described above, any similar evidence, and any testimony on the same, should be precluded pursuant to Rules 401 and 403.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the defendant's motions *in limine* to the extent outlined herein.

Dated: New York, New York
August 21, 2026

Respectfully submitted,

SEAN S. BUCKLEY
Attorney for the United States, Acting Under Authority Conferred by 28 U.S.C. § 515

By: s/
David R. Felton
Paul M. Monteleoni
Stephanie Simon
Assistant United States Attorneys
(212) 637-2299 / 2219 / 2581

cc: All Counsel of Record