UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

MICHELLE BOND,

Defendant.

24 Cr. 494 (GBD)

# THE GOVERNMENT'S MOTIONS *IN LIMINE*

SEAN S. BUCKLEY
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515

David R. Felton
Paul M. Monteleoni
Stephanie Simon
Assistant United States Attorneys
– Of Counsel –

# Table of Contents


PRELIMINARY STATEMENT ... 1

BACKGROUND ... 2

ARGUMENT ... 4

I. The Court Should Admit as Non-Hearsay Various Agent Statements or Co-conspirator Statements Made in Furtherance of the Conspiracy ... 4

A. Legal Standard ... 5

B. Discussion ... 8

1. Agent or Employee Statements ... 8

2. The Existence of the Conspiracy and the Defendant's Participation ... 9

3. Statements Made by Salame to the Defendant ... 11

4. Statements Made by Salame to Third Parties ... 12

5. Statements Made by Salame to Himself ... 13

II. The Government Should Be Permitted to Offer Limited Evidence Concerning FTX ... 14

III. The Court Should Preclude Evidence and Argument That the Presence of Attorneys Is Relevant to the Defendant's Intent, Absent a Formal Advice-of-Counsel Defense ... 15

A. Legal Standard ... 15

B. Discussion ... 18

IV. The Court Should Preclude Evidence and Argument Concerning the Government's Motives, Charging Decisions, or Conduct ... 19

V. The Court Should Preclude Evidence and Argument Concerning the Consequences the Defendant Has Faced or Will Face if Convicted ... 22

VI. The Defendant Should Be Precluded from Eliciting Evidence and Arguments About Personal Attributes, Prior Good Acts, Lack of Prior Bad Acts, or Other Irrelevant and Unduly Prejudicial Topics ... 24

VII. The Defendant's Out-Of-Court Statements May Be Offered by the Government but Not by the Defendant, Subject to the Rule of Completeness ... 27

VIII. The Court Should Order the Defendant to Comply with Her Rule 16 and Rule 17 Discovery Obligations ... 31

A. Rule 16(a) Reciprocal Discovery ... 31

B. Rule 17(c) Materials ... 33

CONCLUSION ... 35

## Table of Authorities

**Cases** **Page(s)**

*Bourjaily v. United States*,
483 U.S. 171, 175, 178 181 (1987) .......... 6, 7

*Crigger v. Fahnestock & Co.*,
443 F.3d 230, 238 (2d Cir. 2006) .......... 5, 9

*Farganis v. Town of Montgomery,*
397 F. App'x 666, 668 (2d Cir. 2010) .......... 6

*In re Reserve Fund Secs. & Derivs. Litig.*,
No. 09 Civ. 4346 (PGG), 2012 WL 12354233 (S.D.N.Y. Oct. 3, 2012) .......... 5

*In re Terrorist Bombings of U.S. Embassies in E. Afr.*,
552 F.3d 93, 139 (2d Cir. 2008) .......... 6, 12

*Lurie v. Wittner*,
228 F.3d 113, 134 (2d Cir. 2000) .......... 17

*Pappas v. Middle Earth Condominium Ass'n*,
963 F.2d 534, 537, 538 (2d Cir. 1992) .......... 5, 6, 9

*S.E.C v. Tourre*,
950 F. Supp. 2d 666, 684, 685 (S.D.N.Y. 2013) .......... 16, 18

*Shannon v. United States*,
512 U.S. 573, 579 (1994) .......... 22

*Sowers v. R.J. Reynolds Tobacco Co.*,
975 F.3d 1112, 1121-22 (11th Cir. 2020) .......... 25

*Sparf & Hanson v. United States*,
156 U.S. 51, 101 (1895) .......... 21

*United States v. Armstrong*
517 U.S. 456, 463 (1996) .......... 20

*United States v. Atias,*
No. 14 Cr. 403 (DRH), 2017 WL 563978, 3 (E.D.N.Y. Feb. 10, 2017) .......... 16

*United States v. Avenatti*,
No. 19 Cr. 374 (JMF) (S.D.N.Y.), ECF No. 288 (Jan. 13, 2022 Tr.) at 9-10 .......... 23, 31

*United States v. Battaglia,*
No. S9 05 Cr. 774 (KMW), 2008 WL 144826, 3 (S.D.N.Y. Jan. 15, 2008) .......... 24, 27

*United States v. Bankman-Fried,*
No. 22 Cr. 0673 (LAK), 2024 WL 477043, 3 (S.D.N.Y. Feb. 7, 2024) .......... 16

*United States v. Beech-Nut Nutrition Corp.*,
871 F.2d 1181 (2d Cir. 1989) ..... 16

*United States v. Benedetto*,
571 F.2d 1246 (2d Cir. 1978) ..... 26

*United States v. Bilzerian*,
926 F.2d 1285, 1292 (2d Cir.1991) ..... 17

*United States v. Branch*,
91 F.3d 699, 728 (5th Cir. 1996) ..... 29

*United States v. Brennerman*,
No. 17 Cr. 337 (RJS) (S.D.N.Y.), ECF No. 24 (Aug. 3, 2017) ..... 29, 31

*United States v. Calk*,
No. 19 Cr. 366 (LGS) (S.D.N.Y.), ECF No. 180 (Mar. 25, 2021) ..... 32

*United States v. Chambers*,
800 F. App'x 43, 46 (2d Cir. 2020) ..... 26

*United States v. Cheung Kin Ping*,
555 F.2d 1069, 1074 (2d Cir. 1977) ..... 21

*United States v. Colasuonno*,
697 F.3d 164, 181 (2d Cir. 2012) ..... 15, 16

*United States v. Crowder*,
325 F. Supp. 3d 131, 136, 138 (D.D.C. 2018) ..... 17, 33

*United States v. Davidson*,
308 F. Supp. 2d 461, 480 (S.D.N.Y. 2004) ..... 28

*United States v. DeJesus*,
160 F. App'x 15, 17-18 (2d Cir. 2005) ..... 24

*United States v. Del Rosario,*
No. 12 Cr. 81 (KBF), 2012 WL 2354245, 2 (S.D.N.Y. June 14, 2012) ..... 22-23

*United States v. Demosthene*,
334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004) ..... 20, 22

*United States v. Desena*,
260 F.3d 150, 158, 280 (2d Cir. 2001) ..... 7, 11, 13

*United States v. Diaz*,
176 F.3d 52 (2d Cir. 1999) ..... 7, 11, 13

*United States v. Dorrell*,
758 F.2d 427, 435 (9th Cir. 1985) ..... 30

*United States v. Dupree*,
706 F.3d 131, 137 (2d Cir. 2013) ........................................................................... 12

*United States v. Evangelista*,
122 F.3d 112, 117 (2d Cir. 1997) ........................................................................... 16

*United States v. Fazio,*
No. S2 11 Cr. 873 (KBF), 2012 WL 1203943, 5 (S.D.N.Y. Apr. 11, 2012) ......................... *26*

*United States v. Figueroa,*
618 F.2d 934, 943 (2d Cir. 1980) ........................................................................... 25

*United States v. Geaney*,
417 F.2d 1116, 1120 (2d Cir. 1969) ........................................................................... 8

*United States v. Gigante*,
166 F.3d 75, 82 (2d Cir. 1999) ........................................................................... 6, 7

*United States v. Gillier*,
11 Cr. 409 (PAE), Tr. at 15 (S.D.N.Y. July 5, 2022), ..................................................... 16, 31

*United States v. Glover*,
101 F.3d 1183, 1190 (7th Cir. 1996) ........................................................................... 29

*United States v. Goldstein,*
No. 21 Cr. 550 (DC), 2023 WL 3662971, 7 (E.D.N.Y. May 25, 2023) ................................. 5

*United States v. Gonzalez*,
399 F. App'x 641, 646 (2d Cir. 2010) ........................................................................... 30

*United States v. Grant*,
No. 16 Cr. 468 (GHW) (S.D.N.Y.), ECF No. 283 (May 21, 2018) ....................................... 32

*United States v. Gupta*,
747 F.3d 111, 123 (2d Cir. 2014) ........................................................................... 6

*United States v. Harris*,
491 F.3d 440, 447-48 (D.C. Cir. 2007) ........................................................................... 25

*United States v. Hart*,
826 F. Supp. 380, 381 (D. Colo. 1993) ........................................................................... 34

*United States v. Hatfield,*
No. 06 Cr. 550 (JS), 2010 WL 183522, 13 (E.D.N.Y. Jan. 8, 2010) .................................... 17

*United States v. Ho*,
984 F.3d 191, 208 (2d Cir. 2020) ........................................................................... 12

*United States v. Jackson*,
180 F.3d 55, 73 (2d Cir. 1999) ........................................................................... 28, 29, 30

*United States v. Jenkins*,
895 F. Supp. 1389, 1394 (D. Haw. 1995) .................................................................... 34

*United States v. Johnson*,
507 F.3d 793, 796 (2d Cir. 2007) ................................................................................ 28, 29

*United States v. Knox*,
687 F. App'x 51, 54-55 (2d Cir. 2017) ............................................................................ 23

*United States v. Lange*,
834 F.3d 58, 79 (2d Cir. 2016) ....................................................................................... 30

*United States v. Lawrence*,
No. 16 Cr. 259 (CS) (S.D.N.Y.), ECF No. 66 (Dec. 22, 2016 Tr.) ......................................... 34

*United States v. Lee*,
834 F.3d 145, 158 (2d Cir. 2016) ..................................................................................... 33

*United States v. Liera-Morales*,
759 F.3d 1105, 1111 (9th Cir. 2014) ................................................................................ 30

*United States v. Litos,*
No. 12 Cr. 175 (APR), 2014 WL 806022, 5 (N.D. Ind. Feb. 24, 2014) ................................ 34

*United States v. Liu,*
No. 19 Cr. 804 (VEC) (S.D.N.Y.), ECF No. 177 (Feb. 28, 2022) .......................................... 34

*United States v. Lumiere,*
No. 16 Cr. 483 (JSR), ECF No. 62, 6(S.D.N.Y. Jan. 6, 2017) .............................................. 29

*United States v. Madonna*
No. 17 Cr. 89 (CS) (S.D.N.Y.), ECF No. 655 (Mar. 1, 2019)................................................ 32

*United States v. Maldonado-Rivera*,
922 F.2d 934, 958, 959 (2d Cir. 1990) ........................................................................... 7, 13

*United States v. Marin*,
669 F.2d 73, 84 (2d Cir. 1982) ......................................................................................... 28

*United States v. Maxwell*,
No. 20 Cr. 330 (AJN) (S.D.N.Y.), ECF No. 297 (June 2, 2021) .......................................... 31

*United States v. Melzer*,
No. 20 Cr. 314 (GHW) (S.D.N.Y.), ECF No. 131 (June 16, 2022) ........................... 31, 32, 33

*United States v. Napout,*
No. 15 Cr. 252 (PKC), 2017 WL 6375729, 7 (E.D.N.Y. Dec. 12, 2017) .............................. 33

*United States v. Neumann,*
No. 21 Cr. 439 (NSR), 2023 WL 8700974, 5 (S.D.N.Y. Dec. 14, 2023) ................................ 5

*United States v. Ortega,*
No. 22 Cr. 91 (RA) (S.D.N.Y.), ECF No. 93 (Jan. 10, 2023) .......................................... 31, 32

*United States v. Paccione*,
949 F.2d 1183, 1201 (2d Cir. 1991) ........................................................................... 24

*United States v. Padilla*,
203 F.3d 156, 161 (2d Cir. 2000) ................................................................................ 7

*United States v. Percoco*,
No. 16 Cr. 776 (VEC) (S.D.N.Y.), ECF No. 396 (Dec. 15, 2017)......................................... 31

*United States v. Quattrone*,
441 F.3d 153, 186 (2d Cir. 2006) ............................................................................... 25

*United States v. Quinones*,
417 F. App'x 65, 67 (2d Cir. 2011) ............................................................................ 16

*United States v. Rahme*,
813 F.2d 31, 36 (2d Cir. 1987) .................................................................................... 8

*United States v. Rajaratnam,*
No. S2 09 Cr. 1184 (RJH), 2011 WL 723530, 5 (S.D.N.Y. Feb. 25, 2011) ........................... 32

*United States v. Rangott,,*
No. 23 Cr. 004 (JHR) (S.D.N.Y.), ECF No. 386, 5 (July 19, 2024 Tr.)........................... 16, 18

*United States v. Rastelli*,
870 F.2d 822, 837 (2d Cir. 1989) ................................................................................ 8

*United States v. Re*,
401 F.3d 828, 833 (7th Cir. 2005) ............................................................................. 19

*United States v. Reese*,
933 F. Supp. 2d 579, 583 (S.D.N.Y. 2013) ............................................................ 19, 22

*United States v. Regan*,
103 F.3d 1072, 1082 (2d Cir. 1997) ...................................................................... 19, 20

*United States v. Rioux*,
97 F.3d 648, 660 (2d Cir. 1996) ............................................................................... 5, 9

*United States v. Rivera*,
22 F.3d 430 (2d Cir. 1994) .......................................................................................... 7

*United States v. Rivera,*
No. 13 Cr. 149 (KAM), 2015 WL 1725991 (E.D.N.Y. Apr. 15, 2015) ................................. 27

*United States v. Rosado*,
728 F.2d 89, 93 (2d Cir. 1984) .................................................................................. 27

*United States v. Russo*,
302 F.3d 37, 45 (2d Cir. 2002) ........ 6

*United States v. Ryan*,
448 F. Supp. 810, 811 (S.D.N.Y. 1978) ........ 32

*United States v. Saldarriaga*,
204 F.3d 50, 52 (2d Cir. 2000) ........ 23

*United States v. Scali,*
No. 16 Cr. 466 (NSR), 2018 WL 461441, 8 (S.D.N.Y. Jan. 18, 2018) ........ 17

*United States v. Scarpa*,
897 F.2d 63, 70 (2d Cir. 1990) ........ 26

*United States v. Schmit*,
881 F.2d 608, 613 (9th Cir. 1989) ........ 13-14

*United States v. Scully*,
877 F.3d 464, 476, 478 (2d Cir. 2017) ........ 15, 16

*United States v. Shah*,
No. 19 Cr. 833 (SHS), ECF No. 583, 7-8 (S.D.N.Y. July 5, 2022) ........ 31

*United States v. Shea*,
No. 20 Cr. 412 ECF No. 245, 787 (S.D.N.Y. May 31, 2022) ........ 18, 31, 32, 33

*United States v. Simmons*,
923 F.2d 934, 945 (2d Cir. 1991) ........ 7

*United States v. SKW Metals & Alloys, Inc.*,
195 F.3d 83, 87-89 (2d Cir. 1999) ........ 13

*United States v. Smith*,
794 F.2d 1333, 1335-36 (8th Cir. 1986) ........ 29

*United States v. St. Rose,*
No. 11 Cr. 349 (SJ), 2012 WL 1107659, 1 (E.D.N.Y. Apr. 2, 2012) ........ 24-25

*United States v. Stewart,*
No. 03 Cr. 717 (MGC), 2004 WL 113506, 1 (S.D.N.Y. Jan. 26, 2004) ........ 20

*United States v. Stewart*,
No. 15 Cr. 287 (LTS) (S.D.N.Y. Jan 29, 2016) ........ 32

*United States v. Stratton*,
779 F.2d 820, 829 (2d Cir. 1985) ........ 6

*United States v. Sun Myung Moon,*
718 F.2d 1210, 1229 (2d Cir. 1983) ........ 20

*United States v. Tarantino*,
846 F.2d 1384, 1412 (D.C. Cir. 1988) .......... 7

*United States v. Terry*,
702 F.2d 299, 314 (2d Cir. 1983) .......... 30

*United States v. Thai*,
29 F.3d 785, 813 (2d Cir. 1994) .......... 8

*United States v. Thomas*,
116 F.3d 606, 615 (2d Cir. 1997) .......... 21

*United States v. Tracy*,
12 F.3d 1186, 1199 (2d Cir. 1993) .......... 8, 10

*United States v. Ulbricht*,
No. 14 Cr. 68 (KBF) (S.D.N.Y.), ECF No. 93 (Oct. 17, 2014) .......... 32

*United States v. Vallejos*,
742 F.3d 902, 905 (9th Cir. 2014) .......... 30

*United States v. Walker*,
191 F.3d 326, 336 (2d Cir. 1999) .......... 26

*United States v. Washington*,
705 F.2d 489, 494 (D.C. Cir. 1983) .......... 21

*United States v. Washington,*
No. 21 Cr. 603 (VEC), 2023 WL 6219203, 10 (S.D.N.Y. Sept. 22, 2023) .......... 26

*United States v. Weiss*,
930 F.2d 185, 199 (2d Cir. 1991) .......... 32

*United States v. Wells Fargo Bank N.A.,*
*No. 12 Civ. 7527* (JMF), 2015 WL 3999074, 1 (S.D.N.Y. June 20, 2015) .......... 18

*United States v. Yousef*,
327 F.3d 56, 153 (2d Cir. 2003) .......... 28

*Williamson v. United States*,
207 U.S. 425, 453 (1908) .......... 15

**Rules**

Fed. R. Evid. 104 .......... 7
Fed. R. Evid. 106 .......... 28
Fed. R. Evid. 403 .......... 15, 24, 25
Fed. R. Evid. 404 .......... 26
Fed. R. Evid. 803 .......... 14
Federal Rule of Criminal Procedure 12 .......... 20

Federal Rule of Criminal Procedure 17 .......... 33
Federal Rule of Evidence 801 .......... 9, 5, 6, 11, 27-28
Federal Rules of Criminal Procedure 16 .......... 2, 3, 4, 31
Rule 16 .......... 31, 32, 31, 32, 33, 34
Rule 17 .......... 31, 33, 34
Rule 106 .......... 30
Rule 403 .......... 24, 25
Rule 801 .......... 7, 8, 9, 27, 28

## PRELIMINARY STATEMENT

Defendant Michelle Bond is charged in four counts with (1) conspiracy to cause unlawful political contributions, in violation of 18 U.S.C. § 371 and 52 U.S.C. §§ 30109, 30116, 30118, and 30122, in connection with a $400,000 sham payment from FTX Digital Markets in June 2022 and two transfers from Ryan Salame to the defendant—one in June 2022 and the other in August 2022—totaling over $528,000, which the defendant then transferred almost entirely to her congressional campaign account (Count One); (2) causing and accepting excessive campaign contributions, in violation of 52 U.S.C. §§ 30116(a)(1)(A), 30116(f), and 30109(d)(1)(A)(i), and 18 U.S.C. § 2, with respect to the personal transfers from Salame to the defendant (Count Two); (3) causing and receiving an unlawful corporate contribution, in violation of 52 U.S.C. §§ 30118(a) and 30109(d)(1)(A)(i), and 18 U.S.C. § 2, with respect to the sham payment from FTX Digital Markets (Count Three); and (4) causing and receiving a conduit contribution, in violation of 52 U.S.C. §§ 30122, 30109(d)(1)(A)(i), and 18 U.S.C. § 2, in relation to both the sham payment from FTX Digital Markets and the personal transfers from Salame to the defendant (Count Four).

Trial against the defendant is scheduled to commence on November 9, 2026. In advance of trial, the Government respectfully submits the following motions *in limine*, seeking pretrial rulings to:

- Admit as non-hearsay various agent statements or co-conspirator statements;
- Admit limited evidence concerning FTX;
- Preclude the defendant from offering or eliciting evidence, or making argument, concerning the presence of counsel, absent a formal advice-of-counsel defense;
- Preclude the defendant from offering or eliciting evidence, or making argument, regarding the Government's motives, charging decisions, or conduct;

- Preclude the defendant from offering or eliciting evidence, or making argument, concerning the potential punishment or consequences of conviction that the defendant faces;
- Preclude the defendant from offering or eliciting evidence, or making argument, about personal attributes, prior good acts, lack of prior bad acts, or other irrelevant topics;
- Preclude the defendant from offering her prior statements, subject to the rule of completeness; and
- Require the defendant to comply with her obligations under Federal Rules of Criminal Procedure 16 and 17.

## BACKGROUND

The Indictment in this case arises out of a scheme between the defendant and her then-romantic partner and now-husband Salame to violate the campaign finance laws by funding her failed 2022 Congressional campaign with donations from Salame in excess of the legal limits, and with prohibited corporate donations from the now-defunct cryptocurrency exchange FTX.

In early 2022, the defendant, with Salame's support, launched a congressional campaign for New York's first congressional district in the U.S. House of Representatives. (Indictment ¶¶ 1, 4-7). At the time, the defendant was the CEO of the Association for Digital Asset Markets ("ADAM"), a digital assets trade group, and Salame was the CEO of FTX Digital Markets, a Bahama-based subsidiary of the now-defunct FTX cryptocurrency exchange. (*Id.* ¶¶ 2-3). In preparing to form her campaign, the defendant, who was an attorney, retained political consultants to assist her campaign, and was advised that she could self-fund her campaign so long as the funds were her own. (Indictment ¶¶ 2, 6).

On or about May 27, 2022—four days before the defendant formally filed paperwork with the Federal Election Commission ("FEC") to begin her campaign (Indictment ¶¶ 7-8)—Salame used his position as CEO of FTX Digital Markets to direct the preparation of a sham consulting agreement in order to generate a pretext for using corporate funds to support her campaign. (*Id.*

¶¶ 9-12). The agreement, which the defendant and Salame (on behalf of FTX Digital Markets) signed that day, provided for a $400,000 "sign-on bonus." (*Id.* ¶ 12). On June 1, 2022—*i.e.*, the day after the defendant officially filed her campaign paperwork with the FEC—FTX Digital Markets sent a $400,000 wire transfer to the defendant's personal bank account, which previously had a balance of under $27,000. (*Id.* ¶ 13). The defendant, who never performed consulting services for FTX Digital Markets pursuant to the sham consulting agreement, then transferred almost the entire $400,000 to her campaign over the course of the next three weeks, including by making a $300,000 wire transfer to her campaign bank account, which her campaign falsely reported to the FEC as a loan from the candidate (*i.e.*, the defendant). (*Id.* ¶¶ 12, 14-17).

Approximately a month later, the defendant accepted another illegal campaign contribution from Salame, this time from his personal bank account. On or about June 28, 2022, Salame wired $313,544 to the defendant's personal bank account, which had previously had a balance under $20,000. (Indictment ¶ 18).[1] The next day, the defendant personally wired $300,000 to her campaign account. (*Id.* ¶ 19). The defendant's campaign again falsely reported this $300,000 transfer as a loan from the defendant, rather than an illegal contribution from Salame.

On or about August 1, 2022, the defendant filed a required financial disclosure form with the Ethics Committee of the House of Representatives, falsely characterizing the $400,000 from FTX Digital Markets as consulting income earned in 2021 and 2022 (contrary to the different false characterization of the payment as a "sign-on bonus" in the sham contract, which did not

[1] This amount that Salame sent the defendant was calculated to be equal to the forthcoming proceeds of a pending, but not yet completed, sale of the defendant's home to a third party. Because Salame had no economic reason to engage in any transactions related to the proceeds of the defendant's home sale, and did not in fact engage in any such transaction, the amount of his transfer to the defendant was evidently calculated this way in order to disguise the transfer as related to the defendant's home sale.

contemplate payment for historical work). (Indictment ¶¶ 22-23). When this financial disclosure form was the subject of a media article in August 2022 (months prior to the collapse of FTX), the defendant admitted to an ADAM employee and to a public relations consultant that she was not in fact a consultant for FTX. (*Id.* ¶¶ 24-25).

After losing her primary election on August 23, 2022, the defendant accepted another illegal campaign contribution from Salame in order to retire her campaign debt (which Salame had previously assured her he would give her money to cover if she lost her race). (Indictment ¶¶ 26-28). On or about August 31, 2022, Salame wired the defendant approximately $215,000, and over the next two weeks, the defendant wired her campaign a total of approximately $214,231, again falsely describing them to the FEC as loans. (*Id.* ¶¶ 28-29).

In the fall of 2022, the defendant repeatedly informed ADAM's board of directors that she had not in fact worked for FTX and that her August financial disclosure form was misreported in the news. (Indictment ¶¶ 31-34). In response to continued questions from the ADAM board of directors, however, the defendant reversed herself and, through counsel, falsely claimed to the board that—contrary to her repeated previous admissions that she had not worked for FTX—her financial disclosure was accurate and that she had previously disclosed the consulting agreement to the board. (*Id.* ¶ 35). When the ADAM board asked her to explain her shifting explanations, the defendant first agreed to speak with them, but then resigned approximately an hour before the scheduled call instead of speaking with them. (*Id.* ¶ 41).

## ARGUMENT

### I. The Court Should Admit as Non-Hearsay Various Agent Statements or Co-conspirator Statements Made in Furtherance of the Conspiracy

The Government expects to introduce at trial certain messages, emails, and other statements made by staff of the defendant's campaign, *i.e.* her agents, and Salame, *i.e.*, the

defendant's co-conspirator. These communications are admissible as non-hearsay because they are agent or employee statements made on a matter within the scope of that relationship and while it existed or co-conspirator statements made during and in furtherance of the charged conspiracy.

**A. Legal Standard**

Federal Rule of Evidence 801(d)(2)(D) excludes from the definition of "hearsay" a statement offered against an opposing party that was "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." The proponent must establish "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 238 (2d Cir. 2006).[2] The Second Circuit has stated that "[a]dmissibility under this rule should be granted freely." *Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992); *see also*, *e.g.*, *United States v. Neumann*, No. 21 Cr. 439 (NSR), 2023 WL 8700974, at *5 (S.D.N.Y. Dec. 14, 2023) (statements made by individuals who had been hired to file the defendant's tax returns are admissible); *In re Reserve Fund Secs. & Derivs. Litig.*, No. 09 Civ. 4346 (PGG), 2012 WL 12354233, at *7 (S.D.N.Y. Oct. 3, 2012) ("Where an individual defendant controls the entity that employs the declarant, and is the declarant's ultimate supervisor, the employee is an agent of the defendant for purposes of F.R.E. 801(d)(2)(D), and his statements are admissible against that individual defendant.").

The Second Circuit has explained an agency relationship exists where a declarant is answerable to a defendant. *See United States v. Rioux*, 97 F.3d 648, 660 (2d Cir. 1996); *United States v. Goldstein*, No. 21 Cr. 550 (DC), 2023 WL 3662971, at *7 (E.D.N.Y. May 25, 2023) ("a direct reporting relationship is sufficient, but not necessary"). Although the statement to be

[2] Unless otherwise noted, internal quotation marks, citations, and brackets in case citations are omitted.

introduced may not itself be relied upon to establish the alleged agency relationship, "this foundational predicate may be established by circumstantial evidence." *Pappas*, 963 F.2d at 538; *Farganis v. Town of Montgomery*, 397 F. App'x 666, 668 (2d Cir. 2010).

Federal Rule of Evidence 801(d)(2)(E) also provides that a statement is not hearsay if it "is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." As the Second Circuit has made clear, this co-conspirator hearsay exception "has its roots in the law of agency"; thus, a "joint venture" among the parties counts as a "conspiracy" for purposes of the Rule. *United States v. Russo*, 302 F.3d 37, 45 (2d Cir. 2002). To admit a statement under this rule, the court must find two facts by a preponderance of the evidence: first, that a conspiracy that included the defendant and the declarant existed; and second, that the statement was made during the course and in furtherance of that conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999).

With respect to the first requirement, "[t]he Government merely needs to demonstrate that the declarant and the defendant[] against whom the statements are offered are members of a conspiracy in furtherance of which the statements are made . . . and that this conspiracy is factually intertwined with the offenses being tried." *United States v. Stratton*, 779 F.2d 820, 829 (2d Cir. 1985). "[T]here is no requirement that the person to whom the statement is made also be a member" of the conspiracy, only that "both the declarant and the party against whom the statement is offered be members." *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 139 (2d Cir. 2008). "In determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself." *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014). When determining whether the predicate conspiracy has been established, the court is not bound by the

Federal Rules of Evidence, *see* Fed. R. Evid. 104(a), and "the district court may consider the hearsay statement itself" as evidence of "the existence of a conspiracy," *United States v. Padilla*, 203 F.3d 156, 161 (2d Cir. 2000) (citing *Bourjaily*, 483 U.S. at 181). Although "there must be some independent corroborating evidence of the defendant's participation in the conspiracy," *Gigante*, 166 F.3d at 82, that independent evidence need not itself be admissible, *see* Fed. R. Evid. 104(a); *Bourjaily*, 483 U.S. at 178.

As for the second requirement, to be in furtherance of a conspiracy, a statement "must in some way have been designed to promote or facilitate achievement of the goals of that conspiracy." *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994). Under this standard, a co-conspirator statement is admissible if it "can reasonably be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy." *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988); *see also, e.g.*, *United States v. Maldonado-Rivera*, 922 F.2d 934, 959 (2d Cir. 1990) (statements satisfy the in-furtherance requirement of Rule 801(d)(2)(E) if they "provide reassurance, or seek to induce a co-conspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy."). Statements have been recognized as in furtherance of the conspiracy if they, among other things: (1) inform or provide an update as to the status or progress of the conspiracy, *see United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001); (2) "prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity," *Maldonado-Rivera*, 922 F.2d at 958; (3) "seek to induce a coconspirator's assistance," *Desena*, 260 F.3d at 158; (4) "provide reassurance," *id.*; (5) "serve to foster trust and cohesiveness," *id.*; *United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991); (6) "facilitate and protect" the conspiratorial activities, *United States v. Diaz*, 176 F.3d 52, 87 (2d Cir. 1999); or (7) inform a co-

conspirator of "the identity and activities of his coconspirators," *United States v. Rastelli*, 870 F.2d 822, 837 (2d Cir. 1989); *United States v. Rahme*, 813 F.2d 31, 36 (2d Cir. 1987). A narrative description of a past event is admissible as long as it serves "some current purpose in the conspiracy." *United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994).

It is well settled that proffered co-conspirator statements may be admitted on a conditional basis, subject to the later submission of the necessary evidence establishing that a conspiracy involving the defendant existed. *See, e.g.*, *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993) (citing *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969)).

**B. Discussion**

The communications at issue are agent or employee statements made on a matter within the scope of that relationship and while it existed, and a preponderance of the evidence shows that the defendant was part of a conspiracy that existed and the communications were made in furtherance of the conspiracy. Accordingly, the communications are admissible under Rules 801(d)(2)(D) and 801(d)(2)(E) should they be offered for the truth of the matters asserted.[3]

**1. Agent or Employee Statements**

At trial, the Government anticipates that the evidence will establish an agency or employment relationship between the defendant—a congressional candidate—and various staff and personnel associated with her campaign, including her campaign manager, campaign treasurer, a campaign consultant, and other staff, including those responsible for campaign communications. For example, in a May 2022 group chat including the defendant, Salame, and personnel associated

[3] In accordance with common practice in this District, the Government has summarized herein certain categories of such communications that it anticipates offering at trial, so that the Court can provide a general pretrial ruling confirming that such statements will generally be admitted. The Government recognizes that any such general ruling remains subject to individualized statement-by-statement objections at trial.

with her campaign,[4] a campaign consultant responded to Salame's questions regarding funding for campaign billboards and potential campaign expenditures. Similarly, in a different group chat also including the defendant, Salame, and personnel associated with her campaign, on or about June 1, 2022—the same day the defendant received the $400,000 payment from FTX Digital Markets—Salame asked if someone could "share wire details here so Michelle can wire a chunk in today?"; a campaign consultant responded, in sum and substance, that someone wanted to discuss the mechanics with him. As another example, in June 2022, the defendant's campaign treasurer emailed the defendant, her campaign manager, Salame, and a campaign consultant, about the possibility of seeking an extension of the deadline for the defendant to file a financial disclosure form with the House Ethics Committee.

Particularly in light of the permissive standard for admissibility under Rule 801(d)(2)(D), *Pappas*, 963 F.2d at 537, statements of this general type—which relate to the defendant's campaign and were made by the declarants while they were assisting the defendant's campaign—were made on a matter within the scope of the declarants' employment and made during the existence of the agency relationship. *See Crigger*, 443 F.3d at 238; *Rioux*, 97 F.3d at 660. They should thus be admitted under Rule 801(d)(2)(D).[5]

**2. The Existence of the Conspiracy and the Defendant's Participation**

Although the full scope of the evidence of the conspiracy cannot practicably be set forth in a motion *in limine* (and indeed the Court need not rule on its sufficiency until the close of the

[4] The defendant's own statements are of course directly admissible as party opponent statements if offered by the Government. *See* Fed. R. Evid. 801(d)(2)(A).

[5] Many of these statements are also admissible for purposes other than for their truth, such as to prove the defendant's awareness that such statements were being made, and therefore her knowledge, understanding, and/or as context for subsequent actions.

Government's evidence at trial, *see, e.g.*, *Tracy*, 12 F.3d at 1199), even a small subset of that evidence suffices to show the existence of a conspiracy by a preponderance of the evidence.

The defendant and Salame exchanged numerous communications demonstrating the existence of a conspiracy between them to illegally fund her campaign. These communications included Salame's early offer sent via an encrypted messaging application to provide "the expenses on you [*i.e.*, the defendant] actually running" (Indictment ¶ 5); the defendant's consultation with Salame about whether to transfer proceeds of the June 1 transfer to her campaign (*id.* ¶ 16); the defendant's follow-up communications with Salame advising him on the status of the transfers of funds to the campaign (*id.* ¶ 19); and Salame's statements to the defendant advising that he would give the defendant money to cover her campaign debt if she lost the race (*id.* ¶ 26).

The existence of a conspiracy is further corroborated by numerous, additional forms of evidence. Financial records show the close coordination between Salame's transfers of funds to the defendant and the defendant's transfers of funds to her campaign. (*See* Indictment ¶¶ 13-14 (June 1 payment from Salame to defendant; transfers between June 1 and 21 from defendant to campaign); *id.* ¶¶ 18-19 (June 28 payment from Salame to defendant; June 29 transfer from defendant to campaign); *id.* ¶ 28 (August 31 payment from Salame to defendant; transfers between September 7 and 12 from defendant to campaign)). The sham consulting agreement signed by the defendant and Salame, particularly its timing immediately before the defendant's filing of her campaign paperwork, and of course its patently collusive terms authorizing a $400,000 payment without requiring any services or reflecting that any past work had been done to justify that payment, also strongly support the inference of a conspiracy. (*Id.* ¶¶ 7-13).

The defendant's conflicting series of representations to third parties about the nature of the payments also strongly evidence the defendant's participation in the conspiracy. For example, the

defendant signed a sham consulting agreement describing the $400,000 payment as a sign-on bonus (Indictment ¶ 12); then represented in her financial disclosure form that the payment was actually back pay for consulting performed in 2021 and 2022 (*id.* ¶ 23); then admitted to a public relations consultant and an ADAM employee that the statements in the financial disclosure form were not true (*id.* ¶ 25); then repeatedly told members of ADAM's board that the statements in the financial disclosure form were not true (*id.* ¶¶ 32-33); then worked with her public relations consultant on a press release stating that the statements in the financial disclosure form were not true (*id.* ¶ 34); then reversed herself and had an attorney tell ADAM's board that the statements in the financial disclosure form were true after all (*id.* ¶ 35); and then resigned her position at ADAM rather than answer the board's questions directly (*id.* ¶ 41). This extraordinary sequence of conflicting representations, to say nothing of her repeated claims in FEC filings that the excessive and corporate contributions from Salame were simply loans from her to her campaign (*id.* ¶¶ 17, 21, 29), powerfully supports the inference that a conspiracy existed.

**3. Statements Made by Salame to the Defendant**

During the scheme, Salame and the defendant exchanged many communications. While the defendant's own statements are of course directly admissible if offered by the Government, *see* Fed. R. Evid. 801(d)(2)(A), Salame's are admissible as well as co-conspirator statements. For example, Salame's statement to the defendant, in January of 2022, informing her that he had purchased the domain michellebond.com plainly served a number of purposes in furtherance of the conspiracy, including informing and providing an update on the status and progress of the conspiracy, *Desena*, 260 F.3d at 158; providing reassurance, *id.*; serving to foster trust and cohesiveness, *id.*; and facilitating the conspiratorial activities, *Diaz*, 176 F.3d at 87.

Many of Salame's statements to the defendant, of course, are admissible for purposes other than for their truth, such as to prove the defendant's awareness that such statements were being

made, and therefore her knowledge, understanding, and/or as context for subsequent actions. *See, e.g.*, *United States v. Ho*, 984 F.3d 191, 208 (2d Cir. 2020) ("When statements by an out of court declarant are admitted as background, they are properly so admitted not as proof of the truth of the matters asserted but rather to show the circumstances surrounding the events, providing explanation for such matters as the understanding or intent with which certain acts were performed."); *United States v. Dupree*, 706 F.3d 131, 137 (2d Cir. 2013) ("We have repeatedly held that a statement is not hearsay where, as here, it is offered, not for its truth, but to show that a listener was put on notice."). To the extent that certain statements of the defendant were made in response to what she was told, what she was told is also admissible to render the defendant's statements comprehensible. *See, e.g.*, *Ho*, 984 F.3d at 208 ("[The defendant's] response—however it was meant—would have made little sense to the jury without the admission of [a third party's] statement and reaction."). Accordingly, the Government may not offer all such statements for the truth of the matters asserted therein.

**4. Statements Made by Salame to Third Parties**

As part of his participation in the conspiracy, Salame made a number of statements to members of the campaign, both to carry out and to update them on the progress of campaign activity. For example, on August 1, 2022, Salame emailed a number of campaign personnel with a copy of the defendant's completed (and false) financial disclosure form, writing "Financial Disclosure Submitted."

Statements of this sort, even though made to third parties who are not members of the conspiracy, are nevertheless co-conspirator statements. *See, e.g.*, *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d at 139 ("[T]here is no requirement that the person to whom the statement is made also be a member" of the conspiracy, only that "both the declarant and the party against whom the statement is offered be members."). Such statements are in furtherance of the

conspiracy in a variety of ways. By assuring the listeners that certain campaign tasks had been completed so that they could focus on continuing their campaign activity (which, unbeknownst to them, was funded by the proceeds of the charged illegal campaign contributions), they serve to inform or provide an update as to the status or progress of the conspiracy, *Desena*, 260 F.3d at 158, and to "prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity," *Maldonado-Rivera*, 922 F.2d at 958. Similarly, by failing to highlight the illicit nature of the campaign contributions at issue in his conversations with personnel associated with the defendant's campaign, Salame's statements also served to "facilitate and protect" the conspiratorial activities. *Diaz*, 176 F.3d at 87. Again, however, not all such statements will necessarily be offered for their truth.

**5. Statements Made by Salame to Himself**

In addition to statements made to outsiders, Salame also made notes to himself memorializing his support of the defendant's campaign, including factual representations about their plans such as "Right now we're exploring her senate race for 2024." Statements of this sort, that memorialize the progress of the scheme, are in furtherance of the conspiracy just as if they were exchanged between conspirators, as they similarly "provide reassurance," *Desena*, 260 F.3d at 158, and record "the status or progress of the conspiracy," *id.*, whether intended to be transmitted to others or simply referred to by Salame at a later time. *See, e.g.*, *United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 87-89 (2d Cir. 1999) (admitting under Fed. R. Evid. 801(d)(2)(A) series of handwritten notes kept by conspirator since the notes "tracked the status of the conspiracy, may have reassured [notetaker] as to [the conspiracy's] continued vitality, and may have prompted him to" take actions; notes "were intended by [notetaker] to act as a record and as a guide to future conduct"); *United States v. Schmit*, 881 F.2d 608, 613 (9th Cir. 1989) (upholding finding that a cassette recording was made in furtherance of a conspiracy, explaining that "[l]edgers, books of

record, and notes containing information relevant to the conspiracy may be admissible against coconspirators as statements in furtherance of the conspiracy" even "without evidence they were in fact consulted or otherwise communicated").[6]

## II. The Government Should Be Permitted to Offer Limited Evidence Concerning FTX

The Government should be permitted to offer certain limited evidence about FTX and its subsidiary FTX Digital Markets to complete the story of the defendant's campaign finance offenses. Among other things, the Government should be permitted to offer evidence of the following: (1) until in or about November 2022, FTX was a global cryptocurrency exchange; (2) FTX Digital Markets was a subsidiary of FTX based in the Bahamas; (3) Salame was the CEO of FTX Digital Markets; (4) FTX and its subsidiaries' internal controls; (5) FTX was a member of ADAM and certain FTX employees sat on ADAM's board; and (6) ADAM employees, including but not limited to the defendant, did work for and relating to FTX in their capacity as ADAM employees.

This evidence is highly relevant to the charges in the Indictment and necessary for the Government to complete the story of the defendant's offenses and avoid juror confusion. Counts One, Three, and Four all concern the $400,000 sham payment from FTX Digital Markets to the defendant, which the defendant and Salame conspired to disguise as payment for consulting services for FTX that the defendant did not perform. To understand that series of events, it is necessary to provide the jury with limited background on FTX and its subsidiaries, and Salame's and the defendant's relationships to those entities. The evidence the Government seeks to admit

[6] A number of such statements are also admissible on other grounds, for example as evidence of Salame's state of mind. *See* Fed. R. Evid. 803(3) (hearsay exception for "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)").

does not present "a danger of . . . unfair prejudice," Fed. R. Evid. 403, including because the Government does not intend to elicit salacious details regarding FTX's collapse or subsequent bankruptcy, or evidence regarding the separate fraud and other crimes committed by various former FTX employees.[7]

## III. The Court Should Preclude Evidence and Argument That the Presence of Attorneys Is Relevant to the Defendant's Intent, Absent a Formal Advice-of-Counsel Defense

The defendant should be precluded from suggesting to the jury that the involvement of attorneys in certain decision-making demonstrates that she lacked criminal intent.

### A. Legal Standard

To establish a colorable advice-of-counsel defense, and thus be entitled to a jury instruction with respect to those offenses to which it may apply, the defendant must be able to identify admissible evidence that:

> 1. Before taking action, he in good faith sought the advice of an attorney whom he considered competent to advise him on the matter; and
> 2. He consulted this attorney for the purpose of securing advice on the lawfulness of his possible future conduct; and
> 3. He made a full and accurate report to his attorney of all material facts that he knew; and
> 4. He then acted strictly in accordance with the advice of this attorney.

*United States v. Scully*, 877 F.3d 464, 478 (2d Cir. 2017) (In addition to the model instruction in Sand *et al.*, *Modern Federal Jury Instructions*, "[w]e also refer district courts to the model instructions drafted by our sister circuits, particularly the Seventh Circuit's model, which reads [as set forth above]."); *see also Williamson v. United States*, 207 U.S. 425, 453 (1908); *United States*

[7] Unless Salame testifies, as discussed in the Government's opposition to the defendant's motions *in limine* filed today (*see* Part I at pages 2 to 3), which the Government incorporates by reference herein.

*v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012); *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997); *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1194 (2d Cir. 1989).

"Each requirement must be satisfied." *Colasuonno*, 697 F.3d at 181. Where the defendant fails to meet one or more requirements, she is not entitled to a jury instruction. *Id.*; *see also, e.g.*, *Greenspan*, 923 F.3d at 146-47; *Scully*, 877 F.3d at 476; *Evangelista*, 122 F.3d at 117. Nor is she entitled to argue, directly or indirectly, that she has such a defense. *See, e.g.*, *United States v. Quinones*, 417 F. App'x 65, 67 (2d Cir. 2011) (affirming denial of instruction and order precluding defense from arguing advice of counsel; "defendants are not entitled to such an instruction unless there are sufficient facts in the record to support the defense," and defendants "have not shown the required factual predicate for an advice-of-counsel defense"); *United States v. Atias*, No. 14 Cr. 403 (DRH), 2017 WL 563978, at *3 (E.D.N.Y. Feb. 10, 2017) ("All available information indicates that the [pertinent] attorney represented [another], not defendants. Accordingly, the term 'advice of counsel' should not be employed in referring to [the attorney]. Doing so would be legally inappropriate and likely to mislead the jury."). As Judge Rearden explained:

> Courts in this district have been reluctant to permit the defense to pursue a 'presence-of-counsel' defense without requiring the defendant to meet the [aforementioned] criteria," *United States v. Gillier*, 11 Cr. 409 (PAE), Tr. at 15 (S.D.N.Y. July 5, 2022), finding that "any probative value of such references is substantially outweighed by the danger of undue prejudice to the [opposing party]," *S.E.C. v. Lek Sec. Corp.*, No. 17 Civ. 1789 (DLC), 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019). "Specifically, such evidence risks suggesting to the jury that, because lawyers were involved to some degree with one aspect of events, the defendant was entitled to conclude that he was acting within the law with respect to some other aspect of events." *United States v. Bankman-Fried*, No. 22 Cr. 0673 (LAK), 2024 WL 477043, at *3 (S.D.N.Y. Feb. 7, 2024). "This misunderstanding would give the defendant all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013).

*United States v. Rangott*, No. 23 Cr. 004 (JHR) (S.D.N.Y.), ECF No. 386 (July 19, 2024 Tr.) at 5.

In short, the "situations in which the advice-of-counsel defense may be employed are severely limited." *Lurie v. Wittner*, 228 F.3d 113, 134 (2d Cir. 2000).

Given the complexity and potential issues concerning an advice-of-counsel defense, courts routinely order defendants to provide notice of whether they intend to advance such a defense in advance of trial, and, if so, to provide discovery materials concerning the defense. *See, e.g.*, *United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 461441, at *8 (S.D.N.Y. Jan. 18, 2018). That "disclosure should include not only those documents which support [the] defense, but also all documents (including attorney-client and attorney work product documents) that might impeach or undermine such a defense." *United States v. Hatfield*, No. 06 Cr. 550 (JS), 2010 WL 183522, at *13 (E.D.N.Y. Jan. 8, 2010).

Further, when a defendant asserts a defense based on her reliance on the advice of counsel, she waives any attorney-client privilege over her communications with the counsel on that subject—and not only over those specific communications that she seeks to use. *See, e.g.*, *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991) ("A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes."). As a result, defendants asserting such a defense must disclose to the government "any communications or evidence defendants intend to use to establish the defense" and "even otherwise-privileged communications that defendants do *not* intend to use at trial, but that are relevant to proving or undermining the advice-of-counsel defense, are subject to disclosure in their entirety." *United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018) (emphasis in original) (collecting cases). Failure to make such a disclosure results in forfeiture of the defense. *See Bilzerian*, 926 F.2d at 1291 (affirming refusal to let the defendant testify about his "good faith regarding the legality" of the charged conduct unless he was also subject to cross-examination

regarding communications with his attorney); *see also United States v. Wells Fargo Bank N.A.*, No. 12 Civ. 7527 (JMF), 2015 WL 3999074, at *1 (S.D.N.Y. June 20, 2015) (civil defendant asserting advice-of-counsel must "make a full disclosure during discovery and the failure to do so constitutes a waiver of that defense").

**B. Discussion**

The defendant cannot establish any advice-of-counsel prerequisites, as set forth in *Colasuonno* and the above authorities, nor has she stated that she intends to assert an advice-of-counsel defense. For that reason, she should be precluded from alluding to the presence of counsel, for example, by offering evidence that attorneys were consulted regarding or involved in (1) any of the transactions charged as illegal campaign contributions, (2) any of the defendant's campaign-related filings or disclosures, or (3) any of the defendant's responses to press inquiries regarding how any campaign contribution was reported on any of the defendant's campaign-related filings or disclosures. Additionally, the defendant should be precluded from referencing the involvement of attorneys in her opening statement, *see Tourre*, 950 F. Supp. 2d at 685, and if she attempts to introduce evidence of the involvement of attorneys during trial, the Court should provide a cautioning instruction as has been done in other cases in this District. *See, e.g.*, *Rangott*, ECF No. 433 (Aug. 13, 2024 Trial Tr.) at 773 ("An attorney's involvement with an individual or entity does not itself constitute a defense to any of the charges in this case. The defense has not claimed and cannot claim that the defendant's conduct was lawful because he acted in good faith on the advice of one or more attorneys."); *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y.), ECF No. 245 (May 31, 2022 Tr.) at 787 ("A lawyer's involvement with an individual or entity does not itself constitute a defense to any charge in this case. The defense has not claimed, and cannot claim, that the defendant's conduct was lawful because he acted in good faith on the advice of a lawyer.");

*United States v. Petit*, No. 19 Cr. 850 (JSR) (S.D.N.Y.), ECF No. 189 (Oct. 26, 2020 Tr.) at 2402 ("[T]here is no defense in this case of so-called reliance on counsel.").

### IV. The Court Should Preclude Evidence and Argument Concerning the Government's Motives, Charging Decisions, or Conduct

The defendant has filed a belated motion for discovery speculating—baselessly—that the Government's decision to charge her was "fueled by improper considerations." (Dkt. 123 at 26; *see also id.* at 23-26). In that motion she raises inflammatory and false hypotheses that she was charged, supposedly not because the Government developed evidence of her guilt, but purportedly because of her "politics," or allegedly because of some strangely unspecified "animus" she muses the Government may have somehow developed towards her. (*Id.* at 24-25). As the Government explains in its opposition filed today, which the Government incorporates by reference herein, all of these contentions are entirely baseless and her motion lacks a shred of merit. In any event, she should be precluded from making any such arguments at trial or introducing any evidence tending to suggest such arguments, which are plainly not for the jury's consideration.

Under settled law, the defendant's sweeping and wholly unsupported accusations are not for the jury in weighing the defendant's guilt. Offering supposed evidence or argument on such matters would serve no purpose other than to seek to distract the jury from the evidence of the defendant's guilt or to encourage jury nullification notwithstanding her guilt. Such evidence and argument should therefore be precluded, in any form, including in opening statements. *See United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997) (a "selective prosecution defense is an issue for the court rather than the jury"); *United States v. Re*, 401 F.3d 828, 833 (7th Cir. 2005) (prosecuting authority's motives or views underlying its "charging decisions are not proper subjects for cross-examination and argument"); *United States v. Reese*, 933 F. Supp. 2d 579, 583 (S.D.N.Y. 2013) (precluding defendant from advancing arguments aimed at jury nullification and

the overall propriety of the government's investigation); *United States v. Demosthene*, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004) (defendant "may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case"), *aff'd*, 173 F. App'x 899 (2d Cir. 2006); *United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting [the defendant], as opposed to other individuals who may also have committed the crimes charged or similar crimes"); *see also* Fed. R. Crim. P. 12(b)(3)(A)(iv); *United States v. Sun Myung Moon*, 718 F.2d 1210, 1229 (2d Cir. 1983).

The basis for this settled rule is fundamental. A claim of improper prosecutorial motive or purpose, whatever its grounds, "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). Such a claim is self-evidently "unrelated to factual innocence of the crime[s] charged," which is the sole issue to be decided by the jury, and, as a result, the Court alone must resolve it to the extent raised. *Regan*, 103 F.3d at 1082.

Nor should the defendant be permitted to advance arguments or to seek to introduce evidence in aid of substantially the same alleged points—even if she does not expressly argue that she has been selectively, vindictively, politically, or discriminatorily prosecuted—because the *reasons* for the prosecution of the defendant, including the charges and the timing thereof, have no bearing whatsoever on the jury's proper function. The defendant, for example, should not be permitted to offer evidence or argument that others have purportedly engaged in similar conduct without being prosecuted. *Cf., e.g.*, *Stewart*, 2004 WL 113506, at *2 ("Any characterization of

the securities fraud charge in Count Nine as 'novel' is irrelevant to the jury's consideration of the indictment in this case. The defense may not argue or present evidence to the jury that tends to show that this count is an unusual or unprecedented application of the securities laws."). Any argument or evidence along these lines also is wholly improper because it would cause juror confusion and invite nullification, which is patently inappropriate. *See United States v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997) (Jury nullification is "by no means a right or something that a judge should encourage or permit if it is within his authority to prevent."); *id.* at 614 ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent."); *see also Sparf & Hanson v. United States*, 156 U.S. 51, 101 (1895) ("Public and private safety alike would be in peril if the principle be established that juries in criminal cases may, of right, disregard the law as expounded to them by the court, and become a law unto themselves."); *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983) (per curiam) ("A jury has no more '*right*' to find a 'guilty' defendant 'not guilty' than it has to find a 'not guilty' defendant 'guilty,' and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power." (emphasis in original)).

Moreover, the Second Circuit has recognized that a defendant may not argue for acquittal "on the basis of extraneous public policy considerations." *United States v. Cheung Kin Ping*, 555 F.2d 1069, 1074 (2d Cir. 1977); *see id.* at 1073 (affirming instruction to jury that "law enforcement policy was not its concern," and that it should "focus its attention on the real issue, namely, whether the government had proved the facts alleged in the indictment beyond a reasonable doubt").

In short, any argument or attempt to elicit evidence that is intended to place the Government's charging decisions at issue—such as decisions as to what charges to bring, whether to charge co-conspirators, and the timing of the Government's charges—or to suggest to the jury that the defendant should be acquitted because the case was brought for improper reasons or is novel or unlike other cases is irrelevant to the issues properly before the jury, would create a time-consuming and contentious distraction, and would encourage the jury to make or decline to make a decision on an improper basis. It should thus be precluded, in its entirety.

Likewise, the Court should preclude any evidence and argument that the defendant's conduct potentially could or should have been redressed through civil or administrative (rather than criminal) or state court (rather than federal court) proceedings. Such a claim provides no defense to the criminal charges and is not relevant to the merits of the charges. As a result, any such argument and evidence—including a suggestion that the defendant's conduct should be addressed solely as a civil or administrative matter—should be precluded because it is irrelevant, will confuse the jury, distract from the evidence at trial, and improperly encourage jury nullification. *See Reese*, 933 F. Supp. 2d at 583-84; *Demosthene*, 334 F. Supp. 2d at 380.

### V. The Court Should Preclude Evidence and Argument Concerning the Consequences the Defendant Has Faced or Will Face if Convicted

The defendant should be precluded from offering evidence or argument concerning (or even tangentially mentioning or hinting at) the punishment or collateral consequences she might face if convicted. Where the jury has no role at sentencing—such as in this case—it "should be admonished to reach its verdict without regard to what sentence might be imposed." *Shannon v. United States*, 512 U.S. 573, 579 (1994). This is so for good reason: argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.*; *see also*

*United States v. Del Rosario*, No. 12 Cr. 81 (KBF), 2012 WL 2354245, at *2 (S.D.N.Y. June 14, 2012) (noting that the "only possible basis upon which defendant could seek to introduce evidence of punishment (including deportation) is to focus the jury on something other than whether the elements of the crime charged have been proven beyond a reasonable doubt" and finding that "[t]he law does not favor or support such an attempt to choreograph jury nullification"). There is no proper basis for the defendant to put these issues before the jury in any form, and she should not be permitted to offer evidence or argument inviting the jury to consider them. *See, e.g.*, *United States v. Avenatti*, No. 19 Cr. 374 (JMF) (S.D.N.Y.), ECF No. 288 (Jan. 13, 2022 Tr.) at 9-10 ("[A]nything that adverts to possible punishments, including possibility of incarceration, however obliquely, is improper and will not be permitted," including, for example, a statement in opening or closing arguments that the defendant's "liberty is at stake," which would be "a not-so-thinly veiled reference to the prospect of incarceration, which is altogether improper").

For the same reasons, the defendant should be precluded from offering evidence or argument about consequences she allegedly has *already* faced from having been investigated or charged. No proper purpose would be served by offering supposed evidence or argument that the defendant (or Salame) had suffered consequences, whether personal or professional, through being charged with crimes. Even if there were a theoretical proper purpose—and there is none—to a defendant making such an argument, to rebut such an argument and place it in context, the Government would again have to present to the jury its charging policies and practices, which are far beyond the scope of a criminal trial. *See, e.g.*, *United States v. Knox*, 687 F. App'x 51, 54-55 (2d Cir. 2017); *United States v. Saldarriaga*, 204 F.3d 50, 52 (2d Cir. 2000) (per curiam). Any evidence or argument concerning such consequences should accordingly be precluded.

## VI. The Defendant Should Be Precluded from Eliciting Evidence and Arguments About Personal Attributes, Prior Good Acts, Lack of Prior Bad Acts, or Other Irrelevant and Unduly Prejudicial Topics

The Government moves to preclude evidence and argument on the following topics, all of which would be improper or so irrelevant that any probative value would be dwarfed by the attendant risks of confusion, misleading the jury, delay, and waste of time under Federal Rule of Evidence 403. These topics are not an exhaustive list of matters to which the Government would object at trial, but rather an attempt to address the most likely topics and themes in this case that should be precluded as improper.

*First*, as also discussed in the Government's opposition to the defendant's motions *in limine* filed today (*see* Part II), which the Government incorporates by reference herein, the defendant should be precluded from offering evidence and argument concerning her family background, parents, children, health, age, religion, politics,[8] or other personal attributes, absent a showing that such factors bear on the question of guilt. *See, e.g.*, *United States v. DeJesus*, 160 F. App'x 15, 17-18 (2d Cir. 2005) (district court did not abuse discretion in excluding evidence of witnesses' religious beliefs under Rule 403); *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy whom defendant had devoted his life to care for); *United States v. Battaglia*, No. S9 05 Cr. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as "not . . . relevant to the issue of whether Defendant committed the crimes charged"); *United States v. St. Rose*, No. 11 Cr. 349 (SJ), 2012 WL 1107659, at *1 (E.D.N.Y. Apr.

---

[8] The Indictment of course alleges, and the Government will prove at trial, that the defendant campaigned for the Republican Party nomination for New York's first congressional district, and thus the trial proof will reference political activity to the limited extent necessary to prove those allegations. But the Government does not intend to present evidence regarding the defendant's political opinions or activity beyond that limited extent, and the Government is unaware of any legitimate basis for the defendant to do so either.

2, 2012) (precluding evidence of the defendant's immigration status because it does "not bear on the Defendant's innocence or guilt"); *see also United States v. Harris*, 491 F.3d 440, 447-48 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man"). For example, the defendant has referenced in filings that she is the mother of three young children, that she suffered a miscarriage in 2022, that she had a contentious divorce from her ex-husband, and that there was a custody dispute concerning her children. (*See, e.g.*, Dkt. 39 at 4-5; Dkt. 96 at 3). Such evidence is irrelevant to the jury's determination of guilt and is precisely the kind of irrelevant evidence that seeks to unfairly generate sympathy for the defendant. It therefore should be precluded.

To the extent there is any minimal relevance to such evidence, its probative value is substantially outweighed by an unacceptable danger of unfair prejudice, confusing the issues, and misleading the jury. *See* Fed R. Evid. 403. Indeed, as discussed in greater detail in the Government's opposition to the defendant's motions *in limine*, any reference to the defendant's involvement in a contentious divorce proceeding or custody dispute, for example, risks improperly inflaming the jury's emotions. *See, e.g.*, *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) (unfair prejudice exists when there is "the tendency of the evidence to prove some adverse fact not properly in issue . . . to unfairly excite emotions"); *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006) (unfair prejudice is to "unduly inflame the passion of the jury"); *Sowers v. R.J. Reynolds Tobacco Co.*, 975 F.3d 1112, 1121-22 (11th Cir. 2020) (information regarding a couple's marital disputes and husband's infidelity would be prejudicial and was appropriately excluded under Rule 403).

*Second*, to the extent the defendant seeks to offer evidence or argument concerning her prior commission of any alleged "good acts"—for example, instances where she complied with

the campaign finance laws—or to offer evidence of her non-criminal activities, she should be precluded from doing so. *See United States v. Washington*, No. 21 Cr. 603 (VEC), 2023 WL 6219203, at *10 (S.D.N.Y. Sept. 22, 2023) (precluding admission of "legitimate submissions" to healthcare plan as defense to healthcare fraud charges concerning other submissions). Propensity evidence regarding specific acts is no more admissible to refute a criminal charge than to establish one. Indeed, it is settled law that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions." *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990); *see also United States v. Fazio*, No. S2 11 Cr. 873 (KBF), 2012 WL 1203943, at *5 (S.D.N.Y. Apr. 11, 2012) ("As many courts have made clear, a defendant may not affirmatively try to prove his innocence by reference to specific instances of good conduct . . . ."), *aff'd*, 770 F.3d 160 (2d Cir. 2014). As the Second Circuit has explained, "[t]he reasoning behind this rule is straightforward: A single occurrence of lawful conduct is 'simply irrelevant' to other occurrences of unlawful conduct." *United States v. Chambers*, 800 F. App'x 43, 46 (2d Cir. 2020) (quoting *United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999)).

Similarly, while a defendant may offer general testimony from a character witness about her reputation for a "pertinent trait," or the witness's opinion of the defendant as regards that trait, *see* Fed. R. Evid. 404(a)(2)(A), 405(a), a defendant can neither testify nor offer other proof to establish specific acts in conformity with that trait that are not an element of the offense. *See, e.g.*, *United States v. Benedetto*, 571 F.2d 1246, 1249-50 (2d Cir. 1978) (finding evidence of defendant's specific acts improperly admitted because "character evidence has long been admissible only in the form of reputation and not in the form of a recitation of good or bad acts"). As such, the defendant should be precluded from offering evidence or argument—including in opening statements—concerning any charitable work, philanthropy, civic activism, other specific

instances of prior alleged good or public-oriented service, irrelevant aspects of her family or personal status, lack of prior criminal history, or the lack of prior commissions of other similar or dissimilar bad acts. *See, e.g.*, *United States v. Rivera*, No. 13 Cr. 149 (KAM), 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015) (precluding evidence of charitable giving); *Battaglia*, 2008 WL 144826, at *3 (precluding "any evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged").

In sum, should the defendant seek to offer evidence or argument about these or other similarly irrelevant matters, she should be precluded from doing so. The jury's sole focus is making "a determination of whether the elements of the offense charged had been proved beyond a reasonable doubt," and trial permitting evidence or argument on these topics would transform this case into "a wide-ranging inquiry into matters far beyond the scope of legitimate issues in a criminal trial." *United States v. Rosado*, 728 F.2d 89, 93 (2d Cir. 1984).

## VII. The Defendant's Out-Of-Court Statements May Be Offered by the Government but Not by the Defendant, Subject to the Rule of Completeness

The Government anticipates offering evidence of certain of the defendant's out-of-court statements, including in written communications. The Government also anticipates eliciting testimony from witnesses and third parties regarding the defendant's statements. The Government will confer with defense counsel prior to trial and endeavor to resolve any rule-of-completeness issues without the need for Court resolution. To the extent the parties are unable to come to an agreement on their own, under the legal framework set forth below, the defendant should be precluded from offering additional portions of out-of-court statements, and from eliciting testimony regarding the defendant's statements.

Pursuant to Rule 801(d)(2)(A) of the Federal Rules of Evidence, a defendant's out-of-court statement is not hearsay when offered by the Government. Fed. R. Evid. 801(d)(2)(A) ("A

statement is not hearsay if . . . [it] is offered against a party and is the party's own statement."); *see also*, *e.g.*, *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("[U]nder Rule 801(d)(2)(A)," a defendant's statement offered by the Government "is not hearsay, because it is simply a statement of the opposing party."). The defendant, however, does not have a parallel ability to offer her own statement into evidence. "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *Marin*, 669 F.2d at 84; *see also United States v. Yousef*, 327 F.3d 56, 153 (2d Cir. 2003) (holding that defendant "could have testified to everything asserted in his statement, [but] he could not offer the document itself for the truth of the matter asserted"); *United States v. Davidson*, 308 F. Supp. 2d 461, 480 (S.D.N.Y. 2004) (in general, a defendant may not "attempt to get his side of the . . . story in front of the jury without himself testifying and opening himself up to cross-examination.").

Notwithstanding the hearsay bar,[9] a defendant may in some limited circumstances invoke the "rule of completeness" to require the introduction of additional portions of her own out-of-court statement when the Government offers excerpts of it. *See* Fed. R. Evid. 106. "Under this principle, even though a statement may be hearsay, an 'omitted portion of [the] statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.'" *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007) (quoting *United States v. Castro*, 813 F.2d 571, 575-76 (2d Cir. 1987)); *see also United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 1999) (same).

[9] A 2023 amendment to the Federal Rules of Evidence clarified that the rule of completeness trumps the hearsay rules, though the defendant must still demonstrate that the statement is required under the rule of completeness. Fed. R. Evid. 106 ("The adverse party may do so over a hearsay objection.").

The Government is under no obligation to offer all portions of a statement when it offers inculpatory admissions. *See United States v. Branch*, 91 F.3d 699, 728 (5th Cir. 1996) (finding that a "self-serving [exculpatory] statement that does not contradict, explain, or qualify the rest of the statement" did not need to be offered by Government under rule of completeness when Government offered inculpatory statements); *United States v. Smith*, 794 F.2d 1333, 1335-36 (8th Cir. 1986) (district court did not err in precluding cross-examination on portions of post-arrest statement describing relationship to co-defendant and implicating co-defendant when Government offered admission that defendant had been present at the time of co-defendant's arrest).

Indeed, "'[t]he completeness doctrine does not . . . require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages.'" *Johnson*, 507 F.3d at 796 (quoting *Jackson*, 180 F.3d at 73). This rule is strictly applied, leading the Second Circuit to hold that a defendant could not introduce a portion of his confession relating "to the execution of a robbery," where the portion introduced by the Government concerned only "plans to execute the robbery." *Johnson*, 507 F.3d at 796; *United States v. Lumiere*, No. 16 Cr. 483 (JSR) (S.D.N.Y.), ECF No. 62 (Jan. 6, 2017 Tr.) at 6 (describing the rule of completeness as a "narrowly drawn rule" and granting Government motion to preclude prior defendant out-of-court statements). Ultimately, the burden rests with the defendant to demonstrate that the portions of the statement she seeks to offer are necessary to clarify or explain the portions the Government intends to offer. *United States v. Glover*, 101 F.3d 1183, 1190 (7th Cir. 1996) ("[T]he proponent of the additional evidence sought to be admitted must demonstrate its relevance to the issues in the case, and must show that it clarifies or explains the portion offered by the opponent.").

Put another way, a defendant is not entitled to introduce the exculpatory portions of an interview in order to "complete" the story simply because the Government offered an incriminating

portion of the statement. *See United States v. Terry*, 702 F.2d 299, 314 (2d Cir. 1983) (Rule 106 "does not render admissible evidence that is otherwise inadmissible"); *United States v. Gonzalez*, 399 F. App'x 641, 646 (2d Cir. 2010) ("[T]he rule of completeness is not a mechanism to bypass hearsay rules for any self-serving testimony."); *Jackson*, 180 F.3d at 73 (affirming district court's ruling that Rule 106 did not justify admission of defendant's "own self-serving statements"); *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) (court properly excluded redacted portions offered to show the jury the "flavor of the interview," to "humanize" the defendant, to prove his "character," and to convey to the jury the voluntariness of the statement); *United States v. Liera-Morales*, 759 F.3d 1105, 1111 (9th Cir. 2014) (agent testified about incriminating statements made by defendant in interview; court properly precluded defense from introducing exculpatory statements from the same interview); *United States v. Dorrell*, 758 F.2d 427, 435 (9th Cir. 1985) ("Removing [defendant's] explanation of the religious and political motivations for his actions did not change the meaning of the portions of his confession submitted to the jury. The redaction did not alter the fact that he admitted committing the acts with which he was charged."). In particular, defendants are not entitled to introduce statements that are merely "post-hoc explanations for prior conduct, which [do] not alter the meaning" of the admitted statements. *United States v. Lange*, 834 F.3d 58, 79 (2d Cir. 2016).

Again, the Government will endeavor to resolve any rule of completeness issues with counsel prior to trial without the need for Court resolution. To the extent the parties are unable to do so, we will identify the issues requiring the Court's review.

## VIII. The Court Should Order the Defendant to Comply with Her Rule 16 and Rule 17 Discovery Obligations

### A. Rule 16(a) Reciprocal Discovery

Pursuant to Rule 16(b)(1)(A), if a defendant "requests disclosure under Rule 16(a)(1)(E) and the government complies," then the defendant must permit the Government to inspect any documents in the defendant's "possession, custody, or control," which the defendant intends to use in her "case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A). On or about October 18, 2024, at the time of the Government's first production of discovery to the defendant in this matter, the Government requested, in writing, reciprocal disclosure from the defendant pursuant to Rule 16(b). Since then, the Government has reiterated its request, in connection with subsequent discovery productions. The defendant has not thus far produced any reciprocal discovery to the Government.

The Government accordingly requests that the Court enter an order, pursuant to Federal Rule of Criminal Procedure 16(b), directing the defendant to identify any exhibits she intends to introduce at trial, whether through cross-examination or during the defense case, by October 26, 2026, which is two weeks before trial.

Consistent with Rule 16(b), courts in this District regularly require disclosure of defense exhibits in advance of trial, including over a defendant's objection.[10] In ordering pre-trial

[10] *See*, *e.g.*, *United States v. Ortega*, No. 22 Cr. 91 (RA) (S.D.N.Y.), ECF No. 93 (Jan. 10, 2023) (approximately one week before trial); *United States v. Shah*, No. 19 Cr. 833 (SHS) (S.D.N.Y.), ECF No. 583 (July 5, 2022 Tr.) at 7-8 (11 days before trial over objection); *United States v. Melzer*, No. 20 Cr. 314 (GHW) (S.D.N.Y.), ECF No. 131 (June 16, 2022) (11 days before trial over objection); *United States v. Liu*, No. 19 Cr. 804 (VEC) (S.D.N.Y.), ECF No. 177 (Feb. 28, 2022) (12 days before trial over objection); *United States v. Gillier*, No. 11 Cr. 409 (PAE) (S.D.N.Y.), ECF No. 75 (Feb. 1, 2022) (approximately three weeks before trial); *Avenatti*, No. 19 Cr. 374 (JMF), ECF No. 213 (Jan. 7, 2022) (approximately two weeks before trial over objection); *United States v. Maxwell*, No. 20 Cr. 330 (AJN) (S.D.N.Y.), ECF No. 297 (June 2, 2021) (three weeks before trial over objection); *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y.), ECF No. 206 (May 4, 2022) (14 days before trial over objection); *United States v. Brennerman*, No. 17 Cr. 337 (RJS) (S.D.N.Y.), ECF No. 24 (Aug. 3, 2017) (18 days before trial); *United States v. Percoco*, No.

disclosure of defense exhibits, courts have made clear that, while defendants may "delay the decision as to whether or not to testify until the end of the presentation of the Government's case, 'the trial strategy determination is not so protected.'" *Shea*, No. 20 Cr. 412 (AT), ECF No. 206, at 1 (quoting *United States v. Ryan*, 448 F. Supp. 810, 811 (S.D.N.Y. 1978), *aff'd*, 594 F.2d 853, 811 (2d Cir. 1978)). Accordingly, where "the defendant has availed himself of the strategy to obtain discovery of the government, he must comply with the requirement for reciprocal discovery." *Id.*; *see also United States v. Rajaratnam*, No. S2 09 Cr. 1184 (RJH), 2011 WL 723530, at *5 (S.D.N.Y. Feb. 25, 2011) ("A defendant would always like more information about the government's case before revealing anything about his or her own, but Rule 16 conditions a defendant's disclosure obligations on the government's having made certain specified disclosures, not on the government's laying open its entire case or the defendant's satisfaction."). Such production of defense exhibits is required under Rule 16(b) and promotes fairness and trial efficiencies.[11]

---

16 Cr. 776 (VEC) (S.D.N.Y.), ECF No. 396 (Dec. 15, 2017) (more than a month before trial over objection); *United States v. Grant*, No. 16 Cr. 468 (GHW) (S.D.N.Y.), ECF No. 283 (May 21, 2018) (three weeks before trial); *United States v. Calk*, No. 19 Cr. 366 (LGS) (S.D.N.Y.), ECF No. 180 (Mar. 25, 2021) (six weeks before trial); *id*. ECF No. 262, at 341 (June 29, 2021) (mid-trial order to defense to produce any unmarked exhibits for cross-examination at least one business day in advance of testimony); *United States v. Madonna*, No. 17 Cr. 89 (CS) (S.D.N.Y.), ECF No. 655 (Mar. 1, 2019) (approximately one month before trial); *United States v. Stewart*, No. 15 Cr. 287 (LTS) (S.D.N.Y.), Minute Entry (Jan. 29, 2016) (18 days before trial); *United States v. Ulbricht*, No. 14 Cr. 68 (KBF) (S.D.N.Y.), ECF No. 93 (Oct. 17, 2014) (approximately one month before trial).

[11] *See Melzer*, No. 20 Cr. 314 (GHW), ECF No. 150, at 14 (noting that pretrial disclosure of defense exhibits "will aid in the efficient and orderly presentation of the government's and the defendant's respective cases at trial" and "allow the parties to raise any evidentiary issues with the Court in advance and, therefore, reduce the need for delay and disruption at trial and for the parties to brief and the Court to resolve any disputed issues"); *see also United States v. Weiss*, 930 F.2d 185, 199 (2d Cir. 1991) (affirming preclusion of evidence defendant had failed to produce and explaining that permitting defendant to use documents the prosecution had not timely seen "would have given

The disclosure deadline should apply to any exhibits the defense intends to introduce at trial—including on cross examination for non-impeachment purposes. "The term 'case-in-chief' has been interpreted to encompass 'all non-impeachment exhibits they intend to use in their defense at trial, whether the exhibits will be introduced through a government witness or a witness called by a defendant.'" *Melzer*, No. 20 Cr. 314 (GHW), ECF No. 150, at 13 (quoting *United States v. Napout*, No. 15 Cr. 252 (PKC), 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017)). "Nearly every court to consider the issue has concluded the same." *United States v. Crowder*, 325 F. Supp. 3d 131, 136 (D.D.C. 2018) (collecting cases). "[T]o permit defendants to evade pretrial disclosure simply by presenting much (or all) of their case-in-chief before the government rests would frustrate the practical intentions behind Rule 16: to avoid unfair surprise and unwarranted delay by providing both the government and the defense with a broad, reciprocal, right to discovery." *Id.* (citing Fed. R. Crim. P. 16 advisory committee's note to 1974 amendment). Therefore, "where a defendant cross-examines a government witness to buttress[] her theory of the case, rather than to impeach the testimony given by the witness on direct examination, the cross-examination . . . is properly seen as part of the defendant's case-in-chief." *Napout*, 2017 WL 6375729, at *7).

**B. Rule 17(c) Materials**

Federal Rule of Criminal Procedure 17(c) grants parties the right to subpoena certain "books, papers, documents, data, or other objects" to be introduced as evidence at trial. While

---

the defense an unfair advantage"); *Ortega*, No. 22 Cr. 91 (RA), ECF No. 93, at 2 ("Should Defendant fail to produce material subject to his disclosure obligations under Rule 16, he will be precluded from using such evidence during his case-in-chief."); *Shea*, No. 20 Cr. 412 (AT), ECF No. 206, at 1 ("Defendant is also reminded that the Court has 'broad discretion in fashioning a remedy' to address any instances of a party's non-compliance with their Rule 16 obligations, including 'ordering the exclusion of evidence' where it finds that Defendant could have timely disclosed such evidence under Rule 16, but chose not to do so." (quoting *United States v. Lee*, 834 F.3d 145, 158 (2d Cir. 2016))).

Rule 17(c) subpoenas may be served *ex parte*, where appropriate, in order to maintain confidentiality over the requesting party's trial-preparation strategy, the law requires that materials produced in response to such subpoenas be shared with opposing counsel, absent express authorization from the Court. To the extent that the defendant has in her possession, or comes into possession of, any material obtained pursuant to a Rule 17(c) subpoena that she has not yet provided to the Government, the Court should order the defendant promptly to produce such materials to the Government, or to do so promptly upon receipt. *See, e.g.*, *United States v. St. Lawrence*, No. 16 Cr. 259 (CS) (S.D.N.Y.), ECF No. 66 (Dec. 22, 2016 Tr.) at 6 ("[B]ecause Rule 17(c) subpoenas are intended to obtain specific materials that the party expects to offer into evidence, Rule 16 would oblige the party to make the materials available to the other side anyway."); *United States v. Litos*, No. 12 Cr. 175 (APR), 2014 WL 806022, at *5 (N.D. Ind. Feb. 24, 2014) ("It is the majority view of the courts that the structure of Rule 17 requires the court to allow both parties to view the documents returned under the subpoena." (collecting cases)); *United States v. Jenkins*, 895 F. Supp. 1389, 1394 (D. Haw. 1995) (finding the magistrate erred in "failing to permit both the Government and the Defendant to examine" the Rule 17(c) materials because "Rule 17(c) makes no provision for allowing only one party access to the documents"); *United States v. Hart*, 826 F. Supp. 380, 381 (D. Colo. 1993) (noting that the plain language of Rule 17(c) "negates any assumption" that materials should be returned *ex parte*).

**CONCLUSION**

For the foregoing reasons, the Court should grant the Government's motions *in limine*.

Dated: New York, New York
August 21, 2026

Respectfully submitted,

SEAN S. BUCKLEY
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515

By: ______s/______________________
David R. Felton
Paul M. Monteleoni
Stephanie Simon
Assistant United States Attorneys
(212) 637-2299 / 2219 / 2581

cc: All Counsel of Record