**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHELLE BOND,<br><br>Defendant. | Docket No. 1:24-cr-000494-GBD |

# DEFENDANT MICHELLE BOND'S RESPONSE TO THE GOVERNMENT'S MOTIONS *IN LIMINE*


Edward C. O'Callaghan
James D. Mandolfo
**CAHILL GORDON & REINDEL LLP**
900 16th Street, N.W. Suite 500
Washington, DC 20006
Telephone: 202-862-8900
EOcallaghan@cahill.com
JMandolfo@cahill.com

Kiersten A. Fletcher
Louis A. Capizzi III
**CAHILL GORDON & REINDEL LLP**
32 Old Slip
New York, NY 10005
Telephone: 212-701-3000
KFletcher@cahill.com
LCapizzi@cahill.com

*Attorneys for Defendant Michelle Bond*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................ 1

ARGUMENT ........................................................ 2

I. THE GOVERNMENT'S REQUEST FOR A GENERAL PRETRIAL RULING ADMITTING UNSPECIFIED AGENT AND CO-CONSPIRATOR STATEMENTS IS PREMATURE ........................ 2

II. THE GOVERNMENT'S MOTION TO INTRODUCE LIMITED FTX BACKGROUND EVIDENCE SHOULD BE DENIED AS MOOT ........................ 5

III. THE GOVERNMENT'S MOTION TO PRECLUDE MS. BOND FROM RELYING ON THE PRESENCE OF ATTORNEYS SHOULD BE DENIED ........................ 6

IV. THE COURT SHOULD DENY AS MOOT THE GOVERNMENT'S MOTION TO PRECLUDE EVIDENCE REGARDING ITS CHARGING DECISIONS ........................ 10

V. THE GOVERNMENT'S MOTION TO PRECLUDE EVIDENCE CONCERNING CONSEQUENCES TO MS. BOND IS OVERBROAD ........................ 11

VI. MS. BOND'S FAMILY CIRCUMSTANCES AND GENERAL REPUTATION ARE RELEVANT TO WHETHER SHE HAD THE NECESSARY CRIMINAL INTENT ........................ 12

VII. THE GOVERNMENT'S MOTION REGARDING MS. BOND'S OUT-OF-COURT STATEMENTS IS PREMATURE AND OTHERWISE OVERBROAD ........................ 13

VIII. THE GOVERNMENT'S UNILATERAL EFFORT TO IMPOSE DISCLOSURE DEADLINES ON MS. BOND IS UNNECESSARY AND SHOULD OTHERWISE BE DENIED ........................ 14

CONCLUSION ........................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bourjaily* v. *United States*,
483 U.S. 171 (1987) ... 3, 4

*Brady* v. *Maryland*,
373 U.S. 83 (1963) ... 6

*Bryan* v. *United States*,
524 U.S. 184 (1998) ... 7

*Old Chief* v. *United States*,
519 U.S. 172 (1997) ... 6

*SEC* v. *Collector's Coffee Inc.*,
2023 WL 8280531 (S.D.N.Y. Nov. 30, 2023) ... 6

*United States* v. *Atias*,
2017 WL 563978 (E.D.N.Y. Feb. 10, 2017) ... 9

*United States* v. *Bankman-Fried*,
2024 WL 477043 (S.D.N.Y. Feb. 7, 2024) ... 8

*United States* v. *Bendelstein*,
2023 WL 2457842 (E.D.N.Y. Mar. 10, 2023) ... 10

*United States* v. *Blackwell*,
853 F.2d 86 (2d Cir. 1988) ... 13

*United States* v. *Certified Envtl. Servs., Inc.*,
753 F.3d 72 (2d Cir. 2014) ... 14

*United States* v. *Evangelista*,
122 F.3d 112 (2d Cir. 1997) ... 9

*United States* v. *Geaney*,
417 F.2d 1116 (2d Cir. 1969) ... 4

*United States* v. *George*,
386 F.3d 383 (2d Cir. 2004) ... 7

*United States* v. *Gigante*,
94 F.3d 53 (2d Cir. 1996) ... 4

*United States* v. *Goldstein*,
2023 WL 3662971 (E.D.N.Y. May 25, 2023) ..........3

*United States* v. *Han*,
230 F.3d 560 (2d Cir. 2000)..........13

*United States* v. *Johnson*,
469 F.Supp. 3d 193 (S.D.N.Y. 2019)..........5

*United States* v. *Juwa*,
508 F.3d 694 (2d Cir. 2007)..........1

*United States* v. *Kukushkin*,
61 F.4th 327 (2d Cir. 2023) ..........7

*United States* v. *Pilitz*,
2022 WL 14763150 (E.D.N.Y. Oct. 25, 2022)..........7

*United States* v. *Ramsey*,
2023 WL 2523193 (E.D.N.Y. Mar. 15, 2023)..........10

*United States* v. *Russo*,
302 F.3d 37 (2d Cir. 2002)..........4

*United States* v. *Saldarriaga*,
204 F.3d 50 (2d Cir. 2000)..........10

*United States* v. *Stewart*,
433 F.3d 273 (2d Cir. 2006)..........5

*United States* v. *Thomas*,
2010 WL 4553570 (S.D. Miss. Nov. 3, 2010)..........11

**Constitution, Statutes, and Rules**

U.S. Const. amend. VI ..........5

18 U.S.C. §3500..........3

52 U.S.C. §30109..........7

Federal Rules of Evidence
106..........14
403..........5
404..........13
801..........2, 13
803..........14

## PRELIMINARY STATEMENT

Defendant Michelle Bond respectfully submits this response to the government's motions *in limine*, Dkt. 133 ("Mot."). In its filing, the government seeks eight evidentiary rulings, all of which are premature; seek relief Ms. Bond does not oppose; or sweep more broadly than permissible under governing law. This is particularly so because—as this Court is aware—the government has over the course of the last two months belatedly provided Ms. Bond with some (but not all) of the important discovery it had not previously produced. The government's most recent productions include roughly 4 terabytes of data, amounting to approximately *ten million pages*, that the government transferred to Ms. Bond just last Friday. While working as expeditiously as possible to begin reviewing these materials, the size of this latest production has meant that the underlying documents are not yet even accessible to defense counsel.

As defense counsel continues to review the government's dilatory productions, including a heavy volume of what the government itself has acknowledged is being produced under Federal Rule of Criminal Procedure 16, it is likely inevitable that several of the government's evidentiary arguments will fall by the wayside, and additional motions *in limine* practice will be necessary. While Ms. Bond maintains her right to object to evidence the government may seek to admit in the future, the Court should dispose of the eight motions the government has raised as set forth herein.[1]

[1] The government begins its filing with a lengthy recitation of the allegations in the Indictment. For avoidance of doubt, Ms. Bond vehemently disputes these allegations, and intends to rebut them forcefully at trial. At present, it suffices to note that the government's reliance on the Indictment for its factual propositions is improper in light of the "axiomatic" rule "that in a criminal trial 'an indictment is not evidence of guilt.'" *United States* v. *Juwa*, 508 F.3d 694, 701 (2d Cir. 2007).

## ARGUMENT

### I. THE GOVERNMENT'S REQUEST FOR A GENERAL PRETRIAL RULING ADMITTING UNSPECIFIED AGENT AND CO-CONSPIRATOR STATEMENTS IS PREMATURE

The government's first motion *in limine* asks (Mot. 4–5) that "certain messages, emails, and other statements made by staff of [Ms. Bond's] campaign" and by Ryan Salame, Ms. Bond's then-partner and now-husband, be ruled admissible at trial. The purported bases for admissibility are Federal Rules of Evidence 801(d)(2)(D)—which allows out-of-court statements "by the party's agent or employee on a matter within the scope of that relationship and while it existed" to be admitted for their truth—and 801(d)(2)(E)—which allows out-of-court statements "made by the party's coconspirator during and in furtherance of the conspiracy" to be admitted for their truth—respectively. Because the government has not identified the specific statements it seeks to offer, the government's motion is premature.

To start, as the government argued in its opposition to the motions *in limine* Ms. Bond filed, "motions *in limine* 'are meant for disputes over the admissibility of discrete items of evidence, not whole topics and sources of prospective evidence.'" Dkt. 132 at 3 (quoting *Dunham* v. *Lobello*, 2023 WL 3004623, at *1 (S.D.N.Y. Apr. 19, 2023)). That position is directly at odds with the "general pretrial ruling" the government requests (Mot. 8 n.3) here. As the government knows, Ms. Bond is not in a position to know what statements may or may not be admissible, for their truth or otherwise, under either the agent or the co-conspirator exceptions unless and until the government identifies those statements and proffers a basis for their admissibility.

The question of whether a given statement by a campaign staffer might be admissible under the agent exception is premature for three additional reasons. First, whether a particular statement was made "within the scope of that relationship," FED. R. EVID. 801(d)(2)(D), depends, of course, on the actual statement. Second, in order to ascertain whether a given individual was an agent of

Ms. Bond and what the scope of any agency relationship might have been, Ms. Bond needs access to these witnesses' prior statements, including material the government is required to produce pursuant to the Jencks Act, 18 U.S.C. §3500. To date, the government has produced only a limited set of §3500 material, which does not include the §3500 material of the individuals the government argues are Ms. Bond's agents. And third, the government's ability to satisfy the agent exception may also be undermined by evidence found in the millions of pages of documents it recently produced to Ms. Bond, which defense counsel have not yet been able to access. This Court should therefore defer ruling on the agency exception until the government identifies the specific statements it will seek to introduce at trial and completes its §3500 productions, and defense counsel has sufficient time to review the government's latest productions. *See United States* v. *Goldstein*, 2023 WL 3662971, at *7 (E.D.N.Y. May 25, 2023) ("The Court has insufficient information to determine whether the other individuals the Government regards as agents within the scope of Rule 801(d)(2)(D) were sufficiently responsible to the Defendants. Therefore, the Court reserves judgment about the admissibility of such statements until trial.").

The admissibility of certain statements from Mr. Salame under the co-conspirator exception is also not ready for this Court's review. To admit a statement under Rule 801(d)(2)(E), the government must show by a preponderance of the evidence that 1) a conspiracy existed, 2) the conspiracy included both Ms. Bond and Mr. Salame, and 3) the statement was made during the course of and in furtherance of that conspiracy. *Bourjaily* v. *United States*, 483 U.S. 171, 175 (1987). Ms. Bond disputes that the government's evidence shows "a conspiracy between [Ms. Bond and Mr. Salame] to illegally fund her campaign" (Mot. 10); to the contrary, the evidence will show that Ms. Bond and her now husband worked tirelessly to run a congressional campaign that abided by Federal Election Commission ("FEC") rules and regulations. *See United States* v.

*Russo*, 302 F.3d 37, 44 (2d Cir. 2002) (association in "some other venture" does not support admissibility under Rule 801(d)(2)(E)). Much of what the government points to in suggesting otherwise uses circular logic.

One particularly notable example of the government assuming the conclusion it seeks is its reference (Mot. 10) to what it calls the "patently collusive terms" of Ms. Bond's consulting agreement with FTX. Ms. Bond anticipates that the evidence at trial will show that the consulting agreement is not the "sham" the government says it is, but rather reflects compensation for work performed by Ms. Bond. *See* Dkt. 123 at 18–19. Similarly, the government contends (Mot. 10–11) that Ms. Bond's allegedly "conflicting series of representations to third parties" regarding her consulting payment from FTX "powerfully support[] the inference that a conspiracy existed." Embedded in that argument is the incorrect assumption that Ms. Bond's representation in her FEC financial disclosure form that the money was backpay for services provided was false when in fact it was true. Allowing the government to admit co-conspirator statements based on this limited proffer of disputed evidence would be premature and improper. *See United States* v. *Gigante*, 94 F.3d 53, 55 (2d Cir. 1996) (when a party must prove a fact by a preponderance of the evidence, that party "loses" "when the evidence on an issue is evenly balanced").[2]

Finally, because the government has not identified what statements it seeks to introduce under Rules 801(d)(2)(D) and (E), Ms. Bond should be permitted to challenge such statements as

[2] Ms. Bond preserves for subsequent appellate review the argument that the Second Circuit's endorsement of a procedure whereby the district court may conditionally admit alleged co-conspirator statements before trial subject to the government establishing evidence of a conspiracy based on evidence introduced at trial, *see United States* v. *Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969), is no longer good law following the Supreme Court's admonition that "*[b]efore* admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule," *Bourjaily*, 483 U.S. at 175 (emphasis added).

inadmissible under either Federal Rule of Evidence 403's prohibition against evidence that is "substantially more prejudicial than probative" or the Sixth Amendment's guarantee of a defendant's right "to be confronted with the witnesses against h[er]." Courts recognize that Rule 403 and the Confrontation Clause are each independent bases to exclude evidence from trial, even if the statement satisfies a hearsay exception. *See United States* v. *Johnson*, 469 F.Supp. 3d 193, 217 (S.D.N.Y. 2019) (conducting Rule 403 balancing as an independent inquiry after resolving admissibility under Rule 801(d)(2)(E)); *United States* v. *Stewart*, 433 F.3d 273, 290–294 (2d Cir. 2006) (similar, for the Confrontation Clause).

## II. THE GOVERNMENT'S MOTION TO INTRODUCE LIMITED FTX BACKGROUND EVIDENCE SHOULD BE DENIED AS MOOT

The government next seeks (Mot. 14) permission to introduce "certain limited evidence about FTX and its subsidiary FTX Digital Markets." According to the government (*id.*), this evidence includes, but is not limited to, evidence of the following facts:

> (1) until in or about November 2022, FTX was a global cryptocurrency exchange; (2) FTX Digital Markets was a subsidiary of FTX based in the Bahamas; (3) Salame was the CEO of FTX Digital Markets; (4) FTX and its subsidiaries' internal controls; (5) FTX was a member of ADAM and certain FTX employees sat on ADAM's board; and (6) ADAM employees, including but not limited to the defendant, did work for and relating to FTX in their capacity as ADAM employees.

While it is not immediately clear what (4) will entail, especially given that the government just last week produced 10 million pages of Rule 16 discovery that the defense has not yet been able to access, Ms. Bond is prepared to confer with the government and does not anticipate opposing introduction of evidence in the six categories above. As such, this motion should be denied as moot.

Ms. Bond's consent to the introduction of evidence related to these specific facts does not extend, however, to evidence related to purported criminal activity involving FTX and its

personnel. Because FTX is among the most widely publicized financial collapses in recent memory, even a passing suggestion that Ms. Bond was connected to the fraud that engulfed it risks "lur[ing] the factfinder into declaring guilt on a ground different from proof specific to the offense charged," *Old Chief* v. *United States*, 519 U.S. 172, 180 (1997). To the extent the government introduces evidence or testimony about FTX that goes beyond the six facts enumerated above, Ms. Bond will likely challenge the admissibility of that particular evidence and seek a curative jury instruction emphasizing that she is not on trial for anything related to any FTX fraud or associated criminal conduct, and that the jury must only consider the evidence that the government has presented against her in determining its verdict. Such an instruction would be essential to "mitigate . . . any risks that [such evidence] will prejudice the jury, including the risk[] . . . that they will create a prejudicial association in jurors' minds between" Ms. Bond and FTX's criminal activity, *see SEC* v. *Collector's Coffee Inc.*, 2023 WL 8280531, at *7 (S.D.N.Y. Nov. 30, 2023).

## III. THE GOVERNMENT'S MOTION TO PRECLUDE MS. BOND FROM RELYING ON THE PRESENCE OF ATTORNEYS SHOULD BE DENIED

The government's request (Mot. 15) that the Court bar Ms. Bond "from suggesting to the jury that the involvement of attorneys in certain decision-making suggests that she lacked criminal intent" should be denied as moot, premature and, in any event, lacking merit.

To start, Ms. Bond does not at present intend to raise an advice-of-counsel defense, *i.e.*, that she took certain actions because lawyers told her to do so. Without waiving any potential argument or theory of defense based on further review of the millions of pages of documents that the government has recently produced, and/or any additional materials the government will produce in the future in order to comply with its obligations under §3500 and/or *Brady* v. *Maryland*, 373 U.S. 83 (1963), this motion can be denied as moot.

Ms. Bond currently intends to argue that a critical piece of evidence showing she lacked the necessary criminal intent is that she hired consultants for her campaign with several experienced advisors, and relied on these individuals for guidance on how to conduct various aspects of her campaign. In order to convict Ms. Bond, the jury must find that the government has proven, beyond a reasonable doubt, that she "knowingly and willfully commit[ted] a violation of" the Federal Election Campaign Act ("FECA"). 52 U.S.C. §30109(d)(1)(A); *see also* Dkt. 1. A willful state of mind requires proof beyond a reasonable doubt "that the defendant acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was unlawful." *Bryan* v. *United States*, 524 U.S. 184, 193 (1998); *accord United States* v. *Kukushkin*, 61 F.4th 327, 333 (2d Cir. 2023) (applying *Bryan* to FECA charges). Ms. Bond's extensive consultations are irreconcilable with her being indifferent to (let alone deliberately breaking) the law. *See United States* v. *George*, 386 F.3d 383, 400 n.15 (2d Cir. 2004) (Sotomayor, J.) ("A claim of good faith can be offered in a jury instruction as a defense to willful criminal conduct."). Given the elements the government must prove, and the importance of Ms. Bond's retaining and paying campaign-finance professionals, Ms. Bond's communications with her advisors regarding FEC compliance, and her consultations with campaign staff regarding specific ways to legally fund her campaign, are directly relevant in assessing her (lack of) willfulness. It would be error to deny Ms. Bond the ability to introduce evidence of these consultations. *See United States* v. *Pilitz*, 2022 WL 14763150, at *7 (E.D.N.Y. Oct. 25, 2022) (denying the government's motion to preclude defendant from introducing evidence of reliance on professional advice to support her good faith defense).

The government has not offered any basis to exclude the defense Ms. Bond currently intends to raise. To the extent the government suggests that such a defense "indirectly" falls under

the advice-of-counsel rubric (Mot. 16), that suggestion is wrong. As *United States* v. *Bankman-Fried*, 2024 WL 477043 (S.D.N.Y. Feb. 7, 2024), *quoted in* Mot. 16, explained, the reason courts hesitate to allow defendants to reference involvement of attorneys unless they can satisfy the advice-of-counsel prerequisites is because "such evidence risks suggesting to the jury that, because lawyers were involved to some degree with one aspect of events, the defendant was entitled to conclude that he was acting within the law with respect to some *other* aspect of events," *id.* at *3 (emphasis added). In *Bankman-Fried*, the defendant unsuccessfully sought to admit evidence that he consulted with lawyers in structuring and documenting loans that he and other executives of a corporate entity he was running received from a different corporate entity run by the defendant. *Id.* The court excluded this evidence because the allegedly unlawful conduct was not "the loans, in and of themselves, or their structuring or documentation," but rather the fact that the loans originated from customer deposits, a separate issue about which lawyers were uninvolved. *Id.* Here, by contrast, Ms. Bond would seek to introduce evidence that she sought advice on the very topic at the heart of the case, i.e., how lawfully to raise money to fund her campaign.

Even if the Court is inclined to require Ms. Bond to satisfy the advice-of-counsel prerequisites before she may raise her defense, it is too soon to say that she has not done so. For one, the government has only just produced *millions of pages* of additional documents which (once defense counsel has a chance to review them) will likely bolster Ms. Bond's ability to satisfy any necessary factual prerequisites. At the same time, the government has not yet produced significant §3500 material, including material involving at least some of the advisors with whom Ms. Bond consulted. Given the significant evidentiary handicaps Ms. Bond is facing as a result of the government's belated productions, the government's *ipse dixit* that Ms. Bond "cannot establish

any advice-of-counsel prerequisites" (Mot. 18) does not justify an order preventing Ms. Bond from the chance to make the showing necessary to support one of her most important defenses.

Nothing the government has cited suggests that cutting this defense off at the pass is proper. To the contrary, the government largely cites to cases involving the defendant's entitlement to an *instruction* involving receipt of advice. *E.g.*, *United States* v. *Evangelista*, 122 F.3d 112, 116 (2d Cir. 1997) ("The Evangelistas argue that the district court erroneously refused to instruct the jury as to their four theories of defense, each of which (they contend) had an ample basis in the evidence[.]"). The government itself appears to at least implicitly recognize the gun-jumping nature of this motion, as it characterized (Mot. 16) the relevant legal rule as providing that a defendant "is not entitled to a jury instruction" if she "fails to meet one or more requirements." And even the case law the government cites that arose in a pre-trial posture involved a case in which the defendants had already filed their request to charge, *see United States* v. *Atias*, 2017 WL 563978, at *2 (E.D.N.Y. Feb. 10, 2017), and rather than barring the defense entirely, the court ordered the defendant to provide the necessary proffer "at least twenty-four hours before calling the [relevant] witness to the stand," *id.* at *3; *see also id.* at *4 (similarly requiring advanced notice with respect to a different witness); *cf. id.* at *3 (precluding an advice-of-counsel defense involving a third witness after that defense "ha[d] been the subject of numerous in-court discussions and written submissions during the pendency of the case"). As reflected in these precedents, there is no basis to hold, months before trial, with mountains of discovery still inaccessible to defense counsel, that Ms. Bond cannot introduce evidence of her reliance on advice from campaign professionals due to a lack of either an adequate factual foundation or notice to the government.

## IV. THE COURT SHOULD DENY AS MOOT THE GOVERNMENT'S MOTION TO PRECLUDE EVIDENCE REGARDING ITS CHARGING DECISIONS

The government's request (Mot. 19–22) that the Court bar Ms. Bond from arguing to the jury any aspect of her motion for discovery to determine whether the government had an improper motivation in charging her, *see* Dkt. 123 at 23–26, should be denied as moot because Ms. Bond has no intention of raising such issues before the jury. To the extent the government attempts to leverage this motion to preclude any examination whatsoever of its "conduct" (*see* Mot. 19 (stylizing this motion as one to "Preclude Evidence and Argument Concerning the Government's Motives, Charging Decisions, or *Conduct*" (emphasis added))), that goes too far.

A fundamental maxim of our criminal-justice system is that the government must prove every element of the charged offenses beyond a reasonable doubt, and the jury must "base its decision on the evidence or lack of evidence . . . presented at trial." *United States* v. *Saldarriaga*, 204 F.3d 50, 52 (2d Cir. 2000). Courts recognize, for example, that juries may consider "testimony of witnesses and argument by counsel that the government did not exhaust all possible investigative techniques . . . in determining whether the government has met its burden of proof" because guilt must be decided "based on the evidence or lack of evidence." *United States* v. *Ramsey*, 2023 WL 2523193, at *23 (E.D.N.Y. Mar. 15, 2023). And in order to guide the jury's consideration of these issues, defendants may call law-enforcement officers "to examine [them] about the manner in which [they] conducted [their] interviews." *United States* v. *Bendelstein*, 2023 WL 2457842, at *8 (E.D.N.Y. Mar. 10, 2023). Ms. Bond should be permitted to introduce evidence and elicit testimony that shows the inadequacy of the government's investigation, even if that evidence, broadly speaking, implicates the government's "conduct."

## V. THE GOVERNMENT'S MOTION TO PRECLUDE EVIDENCE CONCERNING CONSEQUENCES TO MS. BOND IS OVERBROAD

The government also overreaches with its effort (Mot. 22–23) to bar Ms. Bond from offering evidence or argument regarding consequences she either has faced or might face in the future as a result of this prosecution. To be clear, Ms. Bond does not intend to introduce evidence of the former. She likewise lacks any intention to reference before the jury any potential sentence she might face if convicted of the charges set forth in the Indictment, or otherwise ask, either explicitly or implicitly, the jury to rule in her favor as a means of avoiding particular consequences. To the extent the government's motion is limited to these respects, it should be denied as moot. What Ms. Bond does intend to argue at trial, however, is that the risk of facing particular consequences, if caught, coupled with her awareness of those risks and her efforts to avoid those risks, suggests that she lacked the necessary criminal intent. Foreclosing her from either raising this argument or introducing evidence to support it would be error.

As explained above, each of the charges Ms. Bond faces requires the government to prove that she "knowingly and willfully" violated the law, *i.e.*, she was aware the alleged conduct was prohibited. *Supra* p.7. In order to undermine the government's contention that Ms. Bond recognized her actions were illegal but nonetheless went forward with them, Ms. Bond will show the jury that she had a lot to lose—*e.g.*, the fruits of her high-paying career, her law license, her family—and that she would not risk these consequences solely to procure less than $1 million in unlawful donations to her campaign. Evidence that a defendant would not risk particular significant and damaging consequences "for the amounts involved in the alleged crime[] . . . is probative of [the defendant's] intent—a key issue in this case." *United States* v. *Thomas*, 2010 WL 4553570, at *4 (S.D. Miss. Nov. 3, 2010). The government's motion and its supporting case law ignore entirely this interaction between consequences and a willful state of mind, and its

motion should be denied to the extent it would preclude Ms. Bond from offering this highly probative evidence.

## VI. Ms. Bond's Family Circumstances And General Reputation Are Relevant To Whether She Had The Necessary Criminal Intent

Somewhat overlapping with the previous motion, the government next asks (Mot. 24–27) that the Court prevent Ms. Bond from addressing either "her family background, parents, children, health, age, religion, politics, or other personal attributes, absent a showing that such factors bear on the question of guilt," or examples of specific good acts or lack of prior bad acts. Once again, the government's motion goes too far.

With respect to the first category of evidence the government seeks to exclude through this motion, it bears emphasis that evidence pertaining to several of these enumerated categories *does* speak to Ms. Bond's guilt. For example, as just explained, the fact that Ms. Bond increasing her campaign coffers by less than $1 million through illegal campaign donations would jeopardize custody of her kids undermines the notion that she knowingly and willfully violated the FECA, an essential element of the charged crimes. Moreover, the fact that Ms. Bond was embroiled in family-law litigation with her ex-husband in 2022 is pivotal to explaining the legitimate purpose behind one of the transfers of money between Ms. Bond and Mr. Salame that the government contends was an unlawful campaign donation, as well as Ms. Bond's understanding and intent with respect to that transfer. *See* Dkt. 121 at 5–8. A blanket ruling that this sort of evidence has no bearing on Ms. Bond's guilt would be improper.

As to prior good acts and a lack of prior bad acts, the government's motion can be denied as moot with respect to that sort of evidence because Ms. Bond has no intention of introducing specific examples of her engaging in good conduct or specific examples of her not violating the law. Should she testify, however, Ms. Bond is entitled to introduce evidence of her "prior clean

record," because that evidence is "something that the trier of fact has a right to know in gauging the credibility of a witness." *United States* v. *Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988) (holding that the district court abused its discretion in refusing to admit evidence that a testifying defendant had never previously been arrested). Moreover, the government acknowledges (Mot. 26) that Ms. Bond "may offer general testimony from a character witness about her reputation for a 'pertinent trait' or the witness's opinion of the defendant as regards that trait." That acknowledgment is well-taken; evidence of good character is squarely relevant to criminal intent, particularly when the requisite intent is (as it is here) knowing and willful. *See United States* v. *Han*, 230 F.3d 560, 561, 563–564 (2d Cir. 2000). Ms. Bond should be permitted to introduce evidence of any "pertinent trait" that undermines the government's contention that she knowingly and willfully committed any of the charged crimes, FED. R. EVID. 404(a)(2)(A).

## VII. THE GOVERNMENT'S MOTION REGARDING MS. BOND'S OUT-OF-COURT STATEMENTS IS PREMATURE AND OTHERWISE OVERBROAD

The government's penultimate motion is centered (Mot. 27–28) around the rule that although out-of-court statements made by a party opponent are not hearsay even if introduced for the truth of the matter asserted, FED. R. EVID. 801(d)(2)(A), a declarant may not introduce her own statements for the truth of the matter asserted. Ms. Bond does not dispute this basic evidentiary principle. To the extent this motion seeks to exclude Ms. Bond from introducing only her own out-of-court statements for their own truth, that motion can be denied as moot.

The government again goes too far, however, when it requests (Mot. 27) that Ms. Bond be wholly "precluded from … eliciting testimony regarding [her] statements." An out-of-court statement by Ms. Bond that is introduced for a *different* purpose beyond the truth of the matter asserted is not hearsay, and thus may be introduced by the defense. Such alternative purposes include "to show that a statement was made, to demonstrate the statement's effect on the listener,

or to show the circumstances under which subsequent events occurred." *See United States* v. *Certified Envtl. Servs., Inc.*, 753 F.3d 72, 89 (2d Cir. 2014) (internal citations omitted). Additionally, and particularly relevant here given the importance of Ms. Bond's understanding of campaign-finance laws, *supra* p.7, Rule 803(3) expressly provides that statements regarding "the defendant's then-existing state of mind (such as motive, intent, or plan)" "are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness." Because the government does not specify the particular out-of-court statements it seeks to prevent Ms. Bond from introducing, it is premature to say which alternative purposes might render those statements admissible. A blanket ban on Ms. Bond introducing those statements should accordingly be denied.

Finally, the government spends considerable time (Mot. 28–30) discussing a party's ability under Federal Rule of Evidence 106 "to require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time," even if "over a hearsay objection," when that party's adversary "introduces all or part of a statement" into evidence. Because the government has not identified which out-of-court statements it intends to introduce, any decision from this Court on a Rule 106 issue would be premature. The government appears to recognize as much at the end of its motion, when it asserts (Mot. 30) an intent to "identify the issues requiring the Court's review" if the parties cannot "resolve any rule of completeness issues . . . prior to trial."

## VIII. THE GOVERNMENT'S UNILATERAL EFFORT TO IMPOSE DISCLOSURE DEADLINES ON MS. BOND IS UNNECESSARY AND SHOULD OTHERWISE BE DENIED

The last motion the government makes (Mot. 31–34) is for an order that Ms. Bond 1) identify exhibits she plans to use at trial by October 26, 2026; and 2) promptly produce to the government any materials she has obtained pursuant to subpoenas under Federal Rule of Criminal

Procedure 17(c). The latter can be disposed of quickly; Ms. Bond has not served any Rule 17 subpoenas, so there are no documents for her to produce. Should she serve any such subpoenas at a later date, she will promptly share with the government any materials disclosed to her in response, as required.

As for the exhibit-disclosure deadline, Ms. Bond is aware of, and intends to abide by, Federal Rule of Criminal Procedure 16(b)(1)'s requirement that she disclose to the government materials in her possession that she intends to use at trial. Rule 16(b) does not, however, specify *when* a defendant must make these disclosures. Forcing Ms. Bond to designate her exhibits (if indeed she chooses to designate any) by October 26 is not feasible. Again, the government only one week ago produced 4 terabytes of data, totaling approximately *ten million pages*. It is likely that Ms. Bond will seek to introduce at least some of this material at trial. Reviewing these several million pages in the next six-plus weeks, however, is not feasible, particularly given that defense counsel cannot even access the documents yet.

Even setting aside this recent voluminous production, Ms. Bond cannot reasonably be expected to know what exhibits she intends to designate until she knows what exhibits the government will introduce and whom the government intends to call as a witness. Ms. Bond's exhibit decisions are also dependent on the Government's §3500 disclosures. To this point, the government has not disclosed its exhibit list, its witness list, or the entirety of its §3500 materials.

This Court should refrain from imposing an October 26 deadline for Ms. Bond to designate her exhibits because the parties are currently conferring on the case schedule, and the government has given no reason why those discussions should be short-circuited. Ms. Bond had previously raised with the government the possibility of conferring on a case schedule, including exhibit-identification deadlines. Until this filing, the government never informed Ms. Bond that it wished

to receive her exhibit list on October 26 (or at any date in particular). Five days after it filed these motions *in limine*, the government emailed counsel for Ms. Bond with a proposed detailed schedule, and suggested the parties confer. Those discussions are ongoing. This Court should not unnecessarily cut short the parties' conferral process and impose this single deadline.

If the Court nonetheless wishes to set a case schedule, it should, at minimum, not set a date for Ms. Bond to disclose her exhibits without also 1) setting a date by which the government must disclose its exhibit list and witness list, and complete its §3500 disclosures; 2) setting the deadline for these government disclosures sufficiently in advance of the deadline it sets for Ms. Bond to disclose her exhibits; and 3) allowing Ms. Bond and her counsel sufficient time to review the government's recent, approximately ten-million-page production before requiring Ms. Bond to identify her defense exhibits. A scheduling order containing the solitary deadline of October 26, 2026, for Ms. Bond to identify her exhibits does not satisfy any of these requirements.

**CONCLUSION**

For the foregoing reasons, this Court should:

1) Defer ruling on the government's first motion *in limine* until the government produces all §3500 materials;
2) Deny as moot the government's second motion *in limine*;
3) Deny as moot the government's third motion *in limine* or otherwise defer ruling on the motion;
4) Deny as moot the government's fourth motion *in limine*;
5) Deny the government's fifth motion *in limine*;
6) Deny the government's sixth motion *in limine*;

7) Defer ruling on the government's seventh motion in *limine* pending the parties conferring on the admissibility of particular statements and any related issues under the rule of completeness; and

8) Deny as moot the government's eighth motion *in limine* with respect to Rule 17 subpoenas, and otherwise defer ruling on the motion pending the parties conferring on a proposed case schedule.

Dated: September 11, 2026

Respectfully submitted,

*_/s/ Edward C. O'Callaghan_*
Edward C. O'Callaghan
James D. Mandolfo
**CAHILL GORDON & REINDEL LLP**
900 16th Street, N.W. Suite 500
Washington, DC 20006
Telephone: 202-862-8900
EOcallaghan@cahill.com
JMandolfo@cahill.com

Kiersten A. Fletcher
Louis A. Capizzi III
**CAHILL GORDON & REINDEL LLP**
32 Old Slip
New York, NY 10005
Telephone: 212-701-3000
KFletcher@cahill.com
LCapizzi@cahill.com

*Attorneys for Defendant Michelle Bond*