CAHILL GORDON & REINDEL LLP

900 16th Street, N.W. Suite 500
Washington, D.C. 20006
TELEPHONE: (202) 862-8900
WWW.CAHILL.COM

32 OLD SLIP, NEW YORK, NY 10005 • 221 W. 10th STREET, WILMINGTON, DE 19801 • 20 FENCHURCH STREET, LONDON EC3M 3BY

October 16, 2026

**VIA ECF**
The Honorable George B. Daniels
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: ***United States* v. *Michelle Bond*, 24 Cr. 494 (GBD)**

Dear Judge Daniels:

On behalf of Defendant Michelle Bond, and pursuant to the Court's order at the September 16, 2026 conference, we respectfully submit this letter to update the Court on several motions discussed at that conference and to advise the Court as to which motions the defense anticipates supplementing the record before trial. Specifically, as set forth below, we write with respect to (1) the government's motion to offer unidentified statements by Ms. Bond's campaign staff; (2) evidence of Ms. Bond's *mens rea* at the time of the alleged conduct, and how that evidence is distinct from reference to punishment; (3) admissibility of Ms. Bond's family law matter and legal fees; and (4) the omissions from the search warrant affidavits. Additionally, just yesterday the government informed Ms. Bond's counsel of an additional production of responsive data from those same search warrants, which were executed more than three years ago, and today represented that the responsiveness review for those warrants extended approximately 18 months after the warrants were executed. The documents have not yet been provided to Ms. Bond, but this delay on its own provides a new and independent basis for suppression on which Ms. Bond respectfully seeks leave to submit further briefing as set forth in greater detail below.

## 1. Statements by Campaign Staff as Potential Statements of Agents

The government has moved *in limine* to admit unspecified "messages, emails, and other statements" by Ms. Bond's campaign staff as agent or employee statements under Federal Rule of Evidence 801(d)(2)(D), and by Ryan Salame as co-conspirator statements under Rule 801(d)(2)(E). Dkt. 133 at 4–13. The government seeks a "general pretrial ruling confirming that such statements will generally be admitted." Dkt. 133 at 8 n.3. Ms. Bond opposes the motion as premature because the government has not identified the specific statements it seeks to offer, and because Ms. Bond cannot assess whether an unidentified declarant was her agent, or the scope of any such agency relationship, without the declarants' 18 U.S.C. § 3500 material. Dkt. 136 at 2–4; Sept. 16, 2026 Conf. Tr. ("Tr.") 18:3–27:4, Dkt. 138. At the September 16 conference, the Court indicated that it would reserve decision pending more specific information regarding the

statements. Tr. 25:8–18. Once the government identifies the statements it seeks to offer, Ms. Bond respectfully requests the opportunity to respond—including on the grounds that such statements fall outside the scope of any agency relationship, are inadmissible under Rule 403, or implicate Ms. Bond's confrontation rights—and to seek leave to submit further briefing as appropriate.

In addition, Ms. Bond may also seek to introduce statements made by her or Mr. Salame to her campaign staff regarding how the campaign should be conducted. *See* Tr. 44:11–25, 48:15–51:17. For example, the government recently produced an FBI 302 report of an interview of Patrick Jordan, who worked on Ms. Bond's campaign, reflecting that either Ms. Bond or Mr. Salame directed the campaign during a weekly call that the campaign team should make sure that everything they were doing was legally proper. Tr. 50:12–16. In response, the government argued that this related to a "separate issue" but did not specify what that issue was or why it should not apply to the charged conduct at issue. Tr. 51:18–23. The Court indicated that it needed more specifics before ruling. Tr. 52:12–53:8.

Ms. Bond likewise requires a further proffer from the government as to whether, and which, campaign officials were her agents, who communicated the direction to campaign staff to comply with the law, and who was on the call when the statement was made. Depending on the additional context the government has yet to provide, Ms. Bond anticipates moving to admit any such statements either as evidence of her then-existing state of mind, intent, or plan, under Federal Rule of Evidence 803(3), or as non-hearsay statements because they are not offered for their truth but as directions to the campaign staff. *See United States* v. *Bellomo*, 176 F.3d 580, 586 (2d Cir. 1999) ("Statements offered as evidence of commands or threats or rules directed to the witness, rather than for the truth of the matter asserted therein, are not hearsay."). In addition, only after the government provides additional context and makes a complete production of § 3500 material for these campaign staff can Ms. Bond determine whether any statements made by those staff were within or outside the scope of any agency relationship. *See* Dkt. 136 at 2–3.

**2. <u>Evidence Bearing on Ms. Bond's State of Mind at the Time of the Alleged Conduct</u>**

The government has also moved *in limine* to preclude Ms. Bond from offering evidence or argument concerning the punishment or collateral consequences she might face if convicted, as well as any consequences she has already faced from having been investigated or charged. Dkt. 133 at 22–23. The government further seeks to preclude evidence of Ms. Bond's personal attributes and family circumstances, citing Rules 403, 404(a)(2)(A), and 405(a). Dkt. 133 at 24–27. Ms. Bond opposes both motions as overbroad: evidence of her circumstances and what she stood to lose is probative of whether she acted with the requisite *mens rea*. Dkt. 136 at 11–14. At the September 16 conference, the Court sought clarification as to the distinction Ms. Bond draws between punishment and consequences, and about the testimony she would offer to negate an element of the charged offenses. Tr. 29:21–41:14. The Court also expressed concern about other witnesses testifying as to what Ms. Bond's intent was or what she would or would not have risked. Tr. 36:10–37:17.

To be clear, Ms. Bond does not intend to offer evidence of any sentence she might face if convicted, to offer evidence of consequences she has faced as a result of this prosecution, or to ask

the jury to rule in her favor as a means of generating sympathy and avoiding particular consequences. *See* Dkt. 136 at 11. Nor does Ms. Bond intend to call any witness to testify that she "would not have done this," or to offer any other witness's opinion about Ms. Bond's intent or what Ms. Bond would or would not have been willing to risk.

Ms. Bond's point is far narrower: she intends, through permissible character testimony in the form of reputation or opinion under Rules 404(a)(2)(A) and 405(a), to introduce evidence of pertinent character traits—such as her law-abidingness and honesty—that bear on whether she knowingly and willfully violated the law. *See* Dkt. 136 at 13–14; Tr. 41:17–43:14; *see also United States* v. *Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988) (holding that the district court erred in refusing to admit evidence that a testifying defendant had never previously been arrested); *United States* v. *Han*, 230 F.3d 560, 563–64 (2d Cir. 2000) (holding that the district court erred in refusing to admit testimony of the defendant's reputation as law abiding and unwilling to exploit others). Such evidence is distinct from punishment related to a conviction, which Ms. Bond does not intend to raise.

Ms. Bond's lack of motive is a proper consideration for the jury on the issue of intent. In *United States* v. *Simon*, the Second Circuit recognized that defendants "properly make much of the alleged absence of proof of motivation," and acknowledged the defendants' argument that they would not have concealed the company's true condition when they knew its collapse and a full investigation were likely to follow as a matter the jury could consider. 425 F.2d 796, 808–09 (2d Cir. 1969). Consistent with that principle, Ms. Bond anticipates offering evidence that during the relevant period (1) she held law licenses; (2) she was litigating divorce and custody proceedings; and (3) she had an established reputation as a well-regarded professional and community member. Tr. 32:13–34:11, 36:3–8. These circumstances were naturally known to Ms. Bond and informed her decision-making at the time of the alleged conduct. Ms. Bond may elect to address these subjects herself should she testify. But even in the absence of her own testimony, her counsel at trial should be permitted to argue that, weighed against the comparatively modest amounts of money at issue, her reputation and character are probative of her state of mind and undermine the government's contention that she acted knowingly and willfully, and thus bear directly on whether the government can establish the requisite *mens rea*.

Because defense counsel's review of the government's discovery productions continues, and in anticipation of the government's response, Ms. Bond respectfully seeks to supplement or modify her position on this issue in advance of trial.

### 3. <u>Evidence of Ms. Bond's Divorce and Custody Proceedings and Associated Legal Costs</u>

Ms. Bond moved *in limine* to admit evidence of her contemporaneous divorce and custody proceedings under Rules 401 and 403 to show the legitimate, non-campaign purpose of the transfers from Mr. Salame that the government alleges were unlawful campaign contributions, and Ms. Bond's understanding of those transfers. Dkt. 121 at 5–8. The government opposes the motion under Rules 401 and 403 and has separately moved to preclude references to the divorce and custody dispute. Dkt. 132 at 3–7; Dkt. 133 at 24–25.

As represented to the Court during the September 16 conference, Ms. Bond does not seek to admit detailed evidence of the contested nature of the divorce and custody proceedings or the merits of her positions in those proceedings. Rather, the purpose of any such evidence is to rebut the government's allegation that the August 31, 2022 transfer from Mr. Salame was an unlawful campaign contribution, when in fact it was a permissible transfer to cover Ms. Bond's legal fees in her divorce and custody matters. Counsel continues to assess the specific testimony and exhibits Ms. Bond will seek to offer at trial, but anticipates calling a witness to describe generally that Ms. Bond retained a law firm to represent her in her divorce and custody matters and the relevant legal costs that she would need to pay as part of the engagement. Ms. Bond will likely also introduce other financial records, either through stipulation or a summary witness, outlining the payments she made to satisfy her legal costs. Ms. Bond respectfully requests that the Court allow her to supplement the record on this issue in advance of trial.

**4. <u>Motion to Suppress the Fruits of Search Warrants</u>**

Ms. Bond moved, pursuant to the Fourth Amendment and *Franks* v. *Delaware*, 438 U.S. 154 (1978), for a hearing to determine whether evidence obtained from the searches of her iCloud accounts and iPhones should be suppressed. Dkt. 123 at 26–31. The government opposed, arguing, in part, that the omissions were immaterial and not made with intent to mislead or reckless disregard for the truth. Dkt. 134 at 28–46. The parties addressed the motion at the September 16 conference and the Court indicated that it would decide the motion within 60 days. Tr. 56:9–68:5.

Ms. Bond maintains that the FBI affidavits supporting the warrants to search her iCloud accounts and iPhones knowingly or recklessly omitted exculpatory information known to the government about each of the challenged payments, and that, had that information been included, the affidavits would not have established probable cause. Dkt. 123 at 4–5, 26–31; Tr. 56:20–60:4. Ms. Bond stands on the arguments advanced in Defendant's Omnibus Motion to Compel Discovery in Support of Constitutional Defenses, Dkt. 123, and at the September 16 conference regarding these issues.

However, Ms. Bond became aware only yesterday of an entirely new basis to suppress the fruits of those same warrants. Specifically, yesterday the government informed Ms. Bond's counsel of an impending production of approximately 128 gigabytes of additional discovery material, including responsive materials obtained from the searches of Ms. Bond's and Mr. Salame's iCloud accounts as well as Ms. Bond's iPhone.

Since at least August 2026, Ms. Bond's counsel has asked the government to identify the sets of data it deemed responsive to the warrants authorizing the searches of Ms. Bond's iCloud account and iPhone. The government did not respond to those requests until October 15, 2026—the day before this letter was due to the Court—and in that letter explained for the first time the scope of its responsiveness review and re-produced what it represented to be narrower responsive sets of data from those searches. Further, this morning, the government informed Ms. Bond for the first time that its responsiveness review did not close until October 2024, roughly 18 months after the search warrants were authorized. This delay gives rise to a new basis to suppress the fruits of the search warrant, separate from the omissions addressed above. *See United States* v. *Wey*, 256 F. Supp. 3d 355, 382–84 (S.D.N.Y. 2017) (holding that when executing a warrant

targeting electronically stored information, the government must execute the warrant and review the information within a reasonable period of time). Where the government fails to do so, suppression may be warranted. In *United States* v. *Metter*, the court held that the government's delay of about fifteen months in reviewing seized electronic data rendered the seizure unreasonable, and it suppressed all of the electronic evidence. 860 F. Supp. 2d 205, 211–12, 215–16 (E.D.N.Y. 2012). Given Ms. Bond was provided notice of this impending production only yesterday and provided with the details of the government's responsiveness review only today, good cause exists for Ms. Bond to seek leave to file a motion to suppress on this ground. *See* Fed. R. Crim. P. 12(c)(3). Accordingly, Ms. Bond respectfully requests leave of the Court to file a motion to suppress, on a briefing schedule to be set by the Court.

Finally, in light of all of the recent voluminous discovery produced by the government—and the foreshadowed production that has not yet been provided—Ms. Bond further seeks leave of the Court to file additional motions on bases other than those set forth in this letter as needed. Ms. Bond will raise any such motions as far in advance of trial as possible.

Respectfully submitted,

*/s/ Edward C. O'Callaghan*
Edward C. O'Callaghan
James D. Mandolfo
**Cahill Gordon & Reindel LLP**
900 16th Street, N.W. Suite 500
Washington, D.C. 20006
Telephone: 202-862-8900
EOCallaghan@cahill.com
JMandolfo@cahill.com

Kiersten A. Fletcher
Louis A. Capizzi III
**Cahill Gordon & Reindel LLP**
32 Old Slip
New York, NY 10005
Telephone: 212-701-3000
KFletcher@cahill.com
LCapizzi@cahill.com

*Attorneys for Defendant Michelle Bond*

cc: All counsel of record (via ECF)